TRUEBLOOD LAW FIRM
ALEXANDER B. TRUEBLOOD (Cal. Bar No. 150897)
10940 Wilshire Boulevard, Suite 1600
Los Angeles, California 90024
Telephone: (310) 443-4139
Facsimile: (310) 943-2255

LAW OFFICES OF BRANDON A. BLOCK
A PROFESSIONAL CORPORATION
BRANDON A. BLOCK (Cal. Bar No. 215888)
433 North Camden Drive, Suite 600
Beverly Hills, CA 90210
Telephone: (310) 887-1440
Facsimile: (310) 496-1420

Attorneys for Plaintiff
BARBARA A. CLARK

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| BARBARA A. CLARK,<br><br>Plaintiff,<br><br>vs.<br><br>PAR, INC. dba PAR NORTH AMERICA, <u>et</u> <u>al.</u>,<br><br>Defendants. | Case No. 2:15-CV-02322 MWF (FFMx)<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT PAR, INC.'S MOTION TO DISMISS COMPLAINT**<br><br>Date: June 22, 2015<br>Time: 10:00 a.m.<br>Room: 1600 |

# TABLE OF CONTENTS


I. INTRODUCTION……………………………………………………………1

II. ARGUMENT……………………………………………………………..3

A. Plaintiff's Complaint States A Claim For Relief Against Par North For Violations Of The FDCPA……………………………………………………3

1. Par North Is A "Debt Collector" Under § 1692a(6)………………………..4

2. Par North Violated § 1692f(6)(A) In Two Ways…………………………..6

a. Par North Violated § 1692f(6)(A) By Repossessing Plaintiff's Vehicle In Breach Of The Peace……………………………………………...6

b. Par North Violated § 1692f(6)(A) By Taking Nonjudicial Acts To Effect Repossession Of Plaintiff's Car, Without The Present Right To Do So, Because It Was Unlicensed…………………………………………..9

3. Section 1692f(6) Cannot Reasonably Be Interpreted To Apply Only To The Lender's Conduct……………………………………………………9

B. The Complaint States A Claim Against Par North For Violations Of The Rosenthal Act……………………………………………………………13

1. By Violating The FDCPA, Par North Violated The Rosenthal Act………...13

2. Par North Is A "Debt Collector" Under The Rosenthal Act………………...14

C. Par North Is A Repossession Agency Required To Be Licensed Under The CRA……………………………………………………………16

1. The CRA's Definition Of "Repossession Agency" Is Sweeping, and Repossession Forwarders Are Not Exempt……………………………………17

2. Par North "Accepted Employment" To *Recover* Collateral, For Consideration……………………………………………………………...17

3. Par North "Accepted Employment" To *Locate* Collateral, For Consideration……………………………………………………………...18

4. Par North "Engaged In Business" To Locate Or Recover Collateral, For Consideration……………………………………………………………19

5. The CRA Specifically Contemplates The Licensing Of Repossession "Forwarders"……………………………………………...20

D. Plaintiff Has Express Standing To Sue Under The Collateral Recovery Act, For She Is A "Member Of The General Public"……………………………….20

E. The CRA Licensing Requirement Does Not Implicate The "Dormant Commerce Clause"……………………………………………….24

F. Plaintiff's Fifth Cause of Action Under The Unfair Competition Law States A Valid Claim……………………………………………………………….25

III. CONCLUSION…………………………………………………………………..25

# TABLE OF AUTHORITIES

## Cases

Akerlund v. TCF National Bank of Minnesota, 2001 WL 1631440 (D. Minn. 2001)……………………………………………………….......11-12

Alexander v. Blackhawk Recovery & Investigation, LLC, 731 F.Supp.2d 674 (E.D. Mich. 2010)……………………………………………………………7-8

Arizona State Bd. For Charter Schools v. U.S. Dept. of Educ., 464 F.3d 1003 (9th Cir. 2006)……………………………………………………………………...22

Baker v. G.C. Servs. Corp., 677 F.2d 775, 777 (9th Cir. 1982)…………………3, 10

Birbower, Montalbano, Condon & Frank v. Superior Court, 17 Cal.4th 119 (1998)……………………………………………………………………………..19

Bradshaw v. Hilco Receivables, 765 F.Supp.2d 719 (D. Md. 2011)…………..……12

Buzzell v. Citizens Automobile Fin., Inc., 802 F.Supp.2d 1014 (D. Minn. 2011)…..5

Clark v. Auto Recovery Bureau, Inc., 889 F.Supp. 543, 546 (D. Conn. 1994)….6, 11

Consumer Prod. Safety Comm. v. GTE Sylvania, Inc., 447 U.S. 102, 108 (1980)…23

Corley v. United States, 556 U.S. 303, 129 S. Ct. 1558, 1566 (2009)……………..10

Cornette v. Dept. of Transp., 26 Cal.4th 63, 73-74 (2001)…………………………22

Daugherty v. American Honda Motor Co., Inc., 144 Cal.App.3d 824 (2006)..........25

Donohue v. Quick Collect, Inc., 592 F.3d 1027, 1033-34 (9th Cir. 2010)….10, 15, 17

Duncan v. Walker, 533 U.S. 167 (2001)……………………………………..11, 14

Fleming-Dudley v. Legal Investigations, Inc., 2007 WL 952026 (N.D. Ill. 2007)…..7

Fox v. Citicorp Credit Servs., Inc., 15 F.3d 1507 (9th Cir. 1994)………………..9, 13

Gaetano v. Payco of Wisconsin, Inc., 774 F. Supp. 1404 (D. Conn. 1990)……………………………………………………………………..12

Henderson v. Security Nat'l Bank, 72 Cal.App.3d 764, 770 (1977)…………………8

Imperial Merchant Services, Inc. v. Hunt, 47 Cal.4th 381(2009)………………14, 17

James v. Ford Motor Credit Co., 842 F.Supp. 1202 (D. Minn. 1994)…………passim

Jordan v. Kent Recovery Serv., Inc., 731 F.Supp. 652, 656-658 (D. Del. 1990)…….3

Kuhn v. Account Control Technology, Inc., 865 F. Supp. 1443 (D. Nev. 1994)…...12

LeBlanc v. Unifund CCR Partners, 601 F.3d 1185 (11th Cir. 2010)………………12

Loughan v. Harger-Haldeman, 184 Cal.App.2d 495 (1960)…………………………8

Oehrlein v. Western Funding, Inc., 1999 U.S. Dist. LEXIS 17919 (D. Minn. Jan. 26, 1999)……11-12

Osborne v. Minnesota Recovery Bureau Inc., 2006 WL 1314420 (D. Minn. 2006)..12

Pflueger v. Auto Fin. Group, Inc., 1999 WL 33740813 (C.D. Cal. 1999)……7, 15

Pitney Bowes, Inc. v. State of California, 108 Cal.App.3d 307, 324 (1980)……15

Purkett v. Key Bank USA, N.A., 2001 WL 503050 (N.D. Ill. May 10, 2001)……7

Romine v. Diversified Collection Servs., Inc., 155 F.3d 1142 (9th Cir. 1998)……6

Russey v. Rankin, 911 F. Supp. 1449, 1459 (D. N.M. 1995)……12

Shannon v. Windsor Equity Group, Inc., 2014 U.S. Dist. LEXIS 32259 (Mar. 12, 2014)……6, 15, 16

Sibley v. Firstcollect, Inc., 913 F. Supp. 469, 471-72 (M.D. La. 1995)……12

Sikwa v. Smart Recovery Serv., 2010 WL 3719897 (E.D. Mich. 2010)……12

Tiernan v. Trustees of Cal. State University & Colleges, 33 Cal.3d 211(1982)……23

Townsend v. National Arbitration Forum, Inc., 2012 WL 12736 (C.D. Cal. Jan. 04, 2012)……13

Vantu v. Echo Recovery LLC, 2015 WL 571102 (N.D. Ohio 2015)……7

Vitale v. First Fidelity Leasing Group, 35 F.Supp.2d 78 (D. Conn. 1998)……7

Williams v. Republic Recovery Servs., Inc., 2010 U.S. Dist. LEXIS 54827 (N.D. Ill. May 27, 2010)……7, 11

Withers v. H.R. Eveland, 988 F. Supp. 942 (E.D. Va. 1997)……12

## Federal Statutes

15 U.S.C. § 1692(a)……3

15 U.S.C. § 1692a……passim

15 U.S.C. § 1692e……13

15 U.S.C. § 1692f(6)……passim

15 U.S.C. § 1692f……passim

## State Statutes

Bus. & Prof. Code § 7500.1(q)……17

Bus. & Prof. Code §§ 7502.1(a)……10, 16, 22

Bus. & Prof. Code §§ 7502……10, 17, 20

Bus. & Prof. Code § 7502.6……………………………………………………passim
Bus. & Prof. Code § 7507.13(b)…………………………………………………15
Bus. & Prof. Code § 7508.2(a)…………………………………………………...20
Civ. Code § 1788.1………………………………………………………………15
Civ. Code § 1788.2………………………………………………………………14
Civil Code § 1788.17……………………………………………………...passim

# I. INTRODUCTION

This is a class action brought by a consumer, Barbara Clark, against defendant Par North America, an out-of-state repossession agency. Par North accepts employment from national lenders to conduct thousands of repossessions in California, and profits from those California repossessions. However, Par North has no California repossession license, thereby violating various consumer protection laws and California's Collateral Recovery Act, which strictly regulates the repossession business. Par North's unfair competition evades California's carefully crafted laws and regulations, and takes away significant fees from the licensed California repossession agencies who do obey those laws.

Although it controls the entire repossession process from start to finish (Complaint, ¶ 1), enters into its own contracts with the lienholders (Complaint, ¶ 1, 15), is paid repossession fees (Complaint, ¶ 5), and even interacts with the California consumers whose vehicles are repossessed (Complaint, ¶4), Par North claims that it can ignore California law by the artifice of hiring licensed subagents in California to accomplish the physical repossessions. However, the Collateral Recovery Act is not so narrow. The CRA requires that any entity which "engages in business," *or* "accepts employment to recover collateral" *or* "accepts employment to locate collateral," is subject to the Act. Par North undoubtedly does all three. Complaint, ¶ 15. Therefore, Par North had to be licensed, and is operating an illegal business.

Par North's conduct violates not only the CRA, but also the federal Fair Debt Collection Practices Act, and California's Rosenthal Fair Debt Collection Practices Act. The FDCPA and the RFDCPA include repossession businesses in their broad definitions of a regulated "debt collector." The definition of "debt collector" in the FDCPA specifically includes "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests." 15 U.S.C. § 1692a(6). Par has to concede that it

falls within this definition, and so attempts to evade the FDCPA by making a strained interpretation of the law's liability provisions -- one never accepted by any court.

Plaintiff alleges that Par North violated the FDCPA by "taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if there is no present right of possession of the property claimed as collateral through an enforceable security interest." 15 U.S.C. § 1692f(6)(A). Par North avers that the "present right" refers only to the *lender's* conduct: i.e. a lack of a default or a proper security interest. Under Par North's odd reading, Congress specifically named repossession agencies as *subject* to the Act in the definitions section, but then left them free to commit any kind of barbarity during a repossession, as long as the lender didn't make a mistake in assigning the account. This is not only contrary to a long line of precedent applying this section to repossessors who commit breaches of the peace, but would read repossessors completely out of the coverage of the FDCPA, and leave consumers with no federal remedy. Thus, plaintiff submits that the phrase "present right" does, not surprisingly, refer to the repossessors themselves, and prohibits them from taking any act to repossess collateral without that "present right." In this case, Par North lacked a "present right" because (1) it was not licensed; and (2) it breached the peace during the repossession.

By violating the FDCPA, Par North also violated the Rosenthal Act, which incorporates by reference virtually all violations of the FDCPA, as violations of state law. Moreover, the RFDCPA contains an even broader definition of "debt collector" than the FDCPA, encompassing any entity which takes any act to recover "property."

Finally, plaintiff has standing to bring her claim for licensing violations under the CRA, by virtue of the Legislature's express grant of standing to "any member of the general public." Based on a supposedly missing comma, Par North claims that the Legislature's reference to "any member of the general public" was actually a grant of standing only to an "association representing any member of the general public." But there is no such thing as an "association representing any member of

the general public." Par North has also failed to explain why the Legislature would grant standing to an "association representing any member of the general public," but not the general public itself. Plaintiff avers that the CRA is rather more simple and straightforward. Its plain language grants standing to four separate classes of persons, each separated by an "or," including any member of the general public.

Accordingly, defendant's motion to dismiss should be denied in its entirety.

## II. ARGUMENT

### A. Plaintiff's Complaint States A Claim For Relief Against Par North For Violations Of The FDCPA.

The FDCPA is Congress's response to "the abusive, deceptive, and unfair debt collection practices [used] by many debt collectors." 15 U.S.C. § 1692(a). The FDCPA serves to protect consumers who have been victimized by debt collectors, regardless of whether a valid debt exists. Baker v. G.C. Servs. Corp., 677 F.2d 775, 777 (9th Cir. 1982); see 15 U.S.C. § 1692(e).

Plaintiff alleges in her First Claim for Relief that Par North violated 15 U.S.C. § 1692f(6)(A). That section provides as follows:

> A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:...
>
> (6) Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if –
>
> (A) there is no present right of possession of the property claimed as collateral through an enforceable security interest.

Congress specifically included repossession companies within the definition of "debt collector" for purposes of 15 U.S.C. § 1692f(6). 15 U.S.C. § 1692a(6); James v. Ford Motor Credit Co., 842 F.Supp. 1202, 1207 (D. Minn. 1994); Clark v. Auto Recovery Bureau, Inc., 889 F.Supp. 543, 546 (D. Conn. 1994); Jordan v. Kent Recovery Serv., Inc., 731 F.Supp. 652, 656-658 (D. Del. 1990). In other words, repossession companies are subject to the provisions of § 1692f(6), even if, as Par

North points out, some courts have interpreted them as not subject to other provisions of the FDCPA. Id.

Par North raises two challenges to plaintiff's FDCPA claim: That is it not a debt collector under § 1692a(6) because it is only a repossession "middleman," and that it is not alleged to have engaged in any conduct which violates § 1692f(6)(A). Neither contention has merit.

**1. Par North Is A "Debt Collector" Under § 1692a(6).**

The FDCPA defines a "debt collector" as follows:

> Any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.... ***For the purpose of section 1692f(6) of this title, such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests***[.]

15 U.S.C. § 1692a(6) (emphasis added). The FDCPA lists six categories of actors that are specifically excluded from the classification as a debt collector. Id., § 1692a(6)(A)-(F). Skip tracers, repossession-remarketing services and repossession agencies are ***not*** among the six categories. See id.

Plaintiff's Complaint alleges that Par North is a debt collector as defined in § 1692a. Complaint, ¶ 22. The Complaint further alleges that Par North falls within the expanded definition of a debt collector under § 1692a(6) in that it is a repossession agency whose principal purpose of its business is the enforcement of security interests, and who uses instrumentalities of interstate commerce or the mails in its business. Id., ¶¶ 22, 25. The latter averment is bolstered by the allegations that Par North is located in Indiana (id., ¶ 10), but it accepts employment from California-based secured creditors, like Wilshire Consumer Credit, to locate and/or recover collateral in California (id., ¶¶ 1, 5, 6, 15); that Par North uses various means, including skip-tracing, to locate and recover collateral in California (id., ¶ 15); that Par North hires California-based repossession agencies, like Reliable, to

conduct the physical taking of the collateral in California (id., ¶¶ 1, 6, 15); that Par North, in the normal course of its business, receives money from California-based secured creditors for its repossession efforts; and that Par North shares the money with the California-based repossession agencies it hires to repossess the vehicles on Par North's behalf (id., ¶¶ 1, 6, 15).

The Court should reject Par North's argument that it is not a debt collector under § 1692a(6) merely because it is a repossession "forwarder" who hires others to do the physical repossessions. Motion, 5:1-4. The Complaint plainly alleges that Par North's principal business is the enforcement of security interests, bringing it solidly under § 1692a(6). See Complaint, ¶¶ 22, 25.

There is no authority for the proposition that repossession forwarders are not "debt collectors" under § 1692a(6). They are not exempt from the FDCPA, which Congress could have easily accomplished by adding them to the list of exempt entities. Indeed, at least one district court has held that repossession "forwarders" ***are*** enforcers of security interests and debt collectors under § 1692a(6). In Buzzell v. Citizens Automobile Fin., Inc., 802 F.Supp.2d 1014, 2011 WL 2728299 (D. Minn. 2011), the court held that a "repossession forwarder," defendant Remarketing Solutions, LLC, was covered by the FDCPA:

> Courts in this district have plainly held that § 1692f(6) of the FDCPA does apply to repossession companies. E.g., Revering v. Norwest Bank Minn., N.A., Civ. No. 99–480, 1999 WL 33911360, at *5 (D. Minn. Nov. 30, 1999) (Kyle, J.) ("[R]epossession companies may be liable for violations of § 1692f(6)"); James v. Ford Motor Credit Co., 842 F.Supp. 1202, 1207 (D. Minn.1994) (Doty, J.) ("[T]he [FDCPA] does explicitly extend to repossession companies when they act in 'the enforcement of security interests' of others." (citing 15 U.S.C. §§ 1692a(6), 1692f(6))). Hence, there can be no serious question that § 1692f(6) applies to PRSC [the local repossession agency], and Defendants' arguments to the contrary are misplaced.
>
> In this Court's view, the FDCPA also applies to Remarketing as well even though Remarketing is a "middle man" between the creditor and the repossession company. The FDCPA explicitly provides that "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests" may be held liable under §1692f(6) of the FDCPA.

See 15 U.S.C. § 1692a(6). This encompasses Remarketing just as it does repossession companies. Id. at * 7.

Moreover, in Shannon v. Windsor Equity Group, Inc., 2014 U.S. Dist. LEXIS 32259 (Mar. 12, 2014), Judge Whelan of the Southern District of California held that a repossession company which provided skip tracing, remarketing and repossession services to aid or facilitate the collections process of automobile finance companies – just as Par North is alleged to do in this case (see Complaint, ¶ 15) – fell within the ***general*** definition of a debt collector under § 1692a(6) (i.e., as being in business the principal purpose of which is debt collection). See id., 14-21. Relying on Romine v. Diversified Collection Servs., Inc., 155 F.3d 1142 (9th Cir. 1998), Judge Whelan noted that courts must ignore "disingenuous organizational labels" and look to the substance of the defendant's alleged conduct, in order to foster the consumer protection purpose of the FDCPA. See id. Thus, under Shannon, repossession forwarders like Par North are subject to ***all*** of the provisions of the FDCPA. Whether the Court looks to § 1692a(6)'s general definition of "debt collector," or its specific language naming repossessors as debt collectors, Par North is a debt collector.

**2. Par North Violated § 1692f(6)(A) In Two Ways.**

The Complaint alleges that Par North violated § 1692f(6)(A) because it did not have a "present right" to repossess plaintiff's car, for two independent reasons. First, Par North did not have a "present right" of possession due to the breach of the peace by its agent, Reliable. Even if Par North ***had been*** properly licensed, it is ***vicariously*** liable for Reliable's conduct, an issue which Par North ignores. Secondly, since it is admittedly not licensed to conduct repossession activities in California, Par North legally lacked a present right to repossess ***anyone's*** vehicle in this State.

**a. Par North Violated § 1692f(6)(A) By Repossessing Plaintiff's Vehicle In Breach Of The Peace.**

Par North's Motion simply ignores the plethora of cases holding that a breach of the peace terminates the "present right" of possession of collateral. See, e.g., Clark

v. Auto Recovery Bureau, supra, 889 F.Supp. 543 (if a breach of the peace occurs under state law, there is no present right of possession to the collateral under § 1692f(6)(A)); Vantu v. Echo Recovery LLC, 2015 WL 571102 (N.D. Ohio 2015) (denying a repossession agency's motion to dismiss because, where there was an alleged breach of the peace, the agency "had no right to present possession of the collateral, and its conduct (if true) violated the FDCPA"); Alexander v. Blackhawk Recovery & Investigation, LLC, 731 F.Supp.2d 674 (E.D. Mich. 2010) (denying a repossessor's motion for summary judgment based on its alleged breach of the peace, which "is the type of abusive practice Congress sought to prevent in enacting FDCPA and specifically § 1692f(6)"); Williams v. Republic Recovery Servs., Inc., 2010 U.S. Dist. LEXIS 54827 (N.D. Ill. May 27, 2010) (denying a repossession agency's motion to dismiss plaintiff's claim under § 1692f(6) because the plaintiff alleged that the agency breached the peace in attempting to repossess his car); Fleming-Dudley v. Legal Investigations, Inc., 2007 WL 952026 (N.D. Ill. March 22, 2007) (denying a repossession company's motion to dismiss the plaintiffs' § 1692f(6) claim because they alleged a breach of the peace, and therefore that the repossessor did not have a "present right" of possession of the collateral); Purkett v. Key Bank USA, N.A., 2001 WL 503050 (N.D. Ill. May 10, 2001) (holding that the plaintiff stated a claim under § 1692f(6) by alleging a repossession company breached the peace in taking the collateral); Pflueger v. Auto Fin. Group, Inc., 1999 WL 33740813 (C.D. Cal. April 26, 1999) (denying a repossession agency's summary judgment motion on plaintiff's § 1692f(6) claim because there were material issues of disputed fact concerning whether a breach of the peace occurred); Vitale v. First Fidelity Leasing Group, 35 F.Supp.2d 78 (D. Conn. 1998) (holding that a repossession company violates § 1692f(6) when the repossession is in breach of the peace); James v. Ford Motor Credit Co., 842 F.Supp. 1202 (D. Minn. 1994) (same).

Whether a repossession agency breached the peace depends on state law (the UCC). Alexander, 731 F.Supp.2d at 679; Fleming-Dudley, 2007 WL 952026, at *5;

Purkett, 2001 WL 503050, at *2-3. The UCC permits self-help repossession ***only if*** the repossession agency "proceeds without breach of the peace." Cal. Comm. Code § 9609(b)(2). Thus, the right to take possession of collateral outside of the judicial process terminates upon a breach of the peace. Id. The rule is simple: "If the mortgagee finds that he cannot get possession without committing a breach of the peace, he must stay his hand, ***and resort to the law*** [i.e., file a lawsuit for possession], for the preservation of the public peace is of more importance to society than the right of the owner of a chattel to get possession of it." Henderson v. Security Nat'l Bank, 72 Cal.App.3d 764, 770 (1977) (emphasis added).

A breach of the peace includes entry onto property by any unlawful means. Henderson, 72 Cal.App.3d at 770 (breaking into a locked garage constituted a breach of the peace); Alexander, 731 F.Supp.2d at 679 (one attempt to break into a locked garage held to be a breach of the peace). The CRA codifies this rule by prohibiting any unlawful entry into a secured area or dwelling, without consent of the owner. Bus. & Prof. Code § 7508.2(g).

Plaintiff alleges that Reliable, acting as Par North's agent, breached the peace in repossessing plaintiff's vehicle by entering private property which was secured by a locked gate and fence, without permission. Complaint, ¶¶ 1-2, 13. This was a breach of the peace under Bus. & Prof. Code § 7508.2(g) and longstanding California common law. Under the "nondelegable duty" doctrine, Par North is vicariously liable for Reliable's breach of the peace, even if it did not physically take part in that specific conduct. See Evard v. Southern Cal. Edison, 153 Cal.App.4th 137, 143 (2007) ("One who by statute or by administrative regulation is under a duty to provide specified safeguards or precautions for the safety of others is subject to liability to the others for whose protection the duty is imposed for harm caused by the failure of a contractor employed by him to provide such safeguards or precautions.") (quoting Restatement 2d of Torts § 424); Henderson, 72 Cal.App.3d at 770 (applying nondelegable duty doctrine in the context of a repossession); Loughan

v. Harger-Haldeman, 184 Cal.App.2d 495, 506 (1960) (same); see also Fox v. Citicorp Credit Servs., Inc., 15 F.3d 1507, 1516 (9th Cir. 1994) (applying nondelegable duty doctrine to FDCPA claims); James v. Ford Motor Credit, supra, 842 F.Supp. at 1207 (noting that the duty to collect debts is nondelegable).

**b. Par North Violated § 1692f(6)(A) By Taking Nonjudicial Acts To Effect Repossession Of Plaintiff's Car, Without The Present Right To Do So, Because It Was Unlicensed**

The Complaint alleges a second basis for violating 15 U.S.C. § 1692f(6)(A): Par North was unlicensed, and therefore lacked a "present right" to take "any nonjudicial act" to effect repossession of plaintiff's property. Only a licensed repossession agency is permitted to engage in the repossession business under California law. The alleged nonjudicial acts by Par North were, inter alia, (1) accepting employment to repossess plaintiff's car in California, and controlling the entire repossession process; (2) hiring Reliable as its agent to effect the physical repossession of plaintiff's car; (3) assisting Reliable in the repossession by confirming the identity and location of plaintiff's vehicle. Complaint, ¶¶ 1, 15. Par North lacked the "present right" to perform any of these acts, because it was required to be licensed as a repossession agency, as detailed in Section II-C below.

**3. Section 1692f(6) Cannot Reasonably Be Interpreted To Apply Only To The Lender's Conduct.**

Par North argues that its unlicensed activity and breach of the peace cannot be predicates for an FDCPA violation, by adopting an extraordinarily narrow interpretation of § 1692f(6), which essentially renders the provision a nullity. Par North avers that the only cognizable violation of § 1692f(6)(A) occurs when the ***creditor*** lacks a right to the vehicle, either because the consumer was not in default, or due to lack of a security interest. See Motion, 5:12-6:6. This strained interpretation of § 1692f(6) is illogical, and would effectively immunize repossession agencies from the FDCPA, despite Congress' express inclusion of them under the definition of

"debt collector" in § 1692a. Under Par North's odd analysis, Congress, in § 1692a(6), made repossession companies subject to § 1692f(6), but then limited their liability in § 1692f(6) itself to be only derivative of the ***lender's*** conduct.

Whether there is an underlying default under the creditor's security agreement is irrelevant to the application of § 1692f(6)(A). The FDCPA applies ***regardless*** of whether a valid debt exists. Baker v. G.C. Servs., supra, 677 F.2d at 777. Congress enacted § 1692f(6)(A) to specifically regulate repossession agencies (as enforcers of security interests), ***not*** the secured creditors, who are by definition exempt from the FDCPA. See 15 U.S.C. § 1692a(6); James, 842 F.Supp. 1206-07 (noting that automobile finance companies are not subject to the FDCPA because they "do not have as their principal business purpose the collection of debts and they do not generally collect debts due to others") (citations omitted).

Congress would not have enlarged the definition of debt collectors under § 1692a(6) to explicitly cover repossessors for purposes of § 1692f(6)(A), but then premised their liability under that section solely on the conduct of creditors, who are not subject to the FDCPA. Such an interpretation is nonsensical, and would permit repossessors to use any unlawful means they wanted while repossessing vehicle (even violence), as long as there was a valid security interest and borrower default (the case in 99% of repossessions). An injured consumer would have no recourse against the repossessor for even violent acts, and none against the lender, which is exempt from the FDCPA. The fact that Par North's unlicensed repossession activity was a crime under California law also warrants rejecting Par North's unreasonable interpretation. See Bus. & Prof. Code §§ 7502.1(a) & 7502.

The FDCPA cannot be read Par North's way. The statute is a consumer protection law, entitled to a liberal construction to accomplish its remedial purposes. See Donohue v. Quick Collect, Inc., 592 F.3d 1027, 1033-34 (9th Cir. 2010). Moreover, each provision of the FDCPA must be harmonized and give effect to all provisions. See Corley v. United States, 556 U.S. 303, 129 S. Ct. 1558, 1566 (2009);

Duncan v. Walker, 533 U.S. 167, 174 (2001) ("It is our duty to give effect, if possible, to every clause and word of a statute."). Interpreted appropriately, the application of § 1692f(6)(A) must be based upon whether the ***repossession company*** had a present right to possession of the collateral. Otherwise, § 1692f(6)(A) – and § 1692a(6)'s expanded definition of debt collector – are rendered idle acts by Congress, and consumers would be left exposed to dangerous repossession activity with no recourse -- except existing common law claims, which Congress determined were "inadequate to protect consumers." 15 U.S.C. § 1692(b).

It is not surprising that courts routinely have disagreed with Par North's position, holding that a repossessor can violate § 1692f(6) through a breach of the peace, even if the lender has a valid security interest and the loan is delinquent. See, e.g., Clark v. Auto Recovery Bureau, supra, 889 F.Supp. 543 (D. Conn. 1994) (analyzing whether a repossession agency violated § 1692f(6) even though "there [was] no dispute that the Credit Union had a valid and enforceable security interest in the Saab" and plaintiff did not "contest the fact that she was in default on her loan payments to the Credit Union"); James, 842 F.Supp. 1202 (analyzing whether a repossession agency violated § 1692f(6) even though the plaintiffs did not deny that they were in default on their loan or that the loan contract authorized repossession upon default); Williams v. Republic Recovery Servs., supra, 2010 U.S. Dist. LEXIS 54827 (analyzing whether a repossession agency violated § 1692f(6) even though there was no dispute that plaintiff was in default on her loan). These cases – and the other cases cited herein which have focused on the repossession company's present right of possession, not those of the creditor – obliterate Par North's argument.

The few decisions cited by Par North in support of its position are unavailing. In Oehrlein v. Western Funding, Inc., 1999 U.S. Dist. LEXIS 17919 (D. Minn. Jan. 26, 1999), the court merely found no violation of a present right to repossess under § 1692f(6)(A) because ***there was no*** breach of the peace. Id., at 12-13. Likewise, in Akerlund v. TCF National Bank of Minnesota, 2001 WL 1631440 (D. Minn. 2001),

the court found no breach of the peace under Minnesota law (and, thus, no violation of § 1692f(6)(A)) when the defendant repossession agency took the plaintiff's car. In Osborne v. Minnesota Recovery Bureau Inc., 2006 WL 1314420 (D. Minn. 2006), the court erroneously misinterpreted Oehrlein and Akerlund as establishing a bright-line rule that under Minnesota law, a breach of the peace does not terminate the repossession agency's present right to possession of the property. Par North makes the same error in its Motion.[1]

Although no reported case has addressed one way or another whether lack of a repossession agency license triggers a "present right" violation, the plain language of the FDCPA should be followed. In analogous circumstances, several district courts have held that lack of licensing can be a predicate for FDCPA violations. These courts held that out-of-state collection agencies violated the FDCPA, including § 1692f, by engaging in unlicensed collection activities in states with licensing requirements. Sibley v. Firstcollect, Inc., 913 F. Supp. 469, 471-72 (M.D. La. 1995); Russey v. Rankin, 911 F. Supp. 1449, 1459 (D. N.M. 1995); Kuhn v. Account Control Technology, Inc., 865 F. Supp. 1443, 1451-52 (D. Nev. 1994) ("The Court further finds that [the defendant]'s actions were 'unfair or unconscionable' in violation of § 1692f because the failure to obtain a license deprived [the plaintiff] of her right as a consumer debtor residing within the state to have the defendant's qualifications as a collection agency reviewed by state authorities.") (citations and internal quotation marks omitted); Gaetano v. Payco of Wisconsin, Inc., 774 F. Supp. 1404, 1414-15 (D. Conn. 1990); see also Withers v. H.R. Eveland, 988 F. Supp. 942 (E.D. Va. 1997) (threatening to sue without a state law license violates FDCPA); Bradshaw v. Hilco Receivables, 765 F.Supp.2d 719, 728-29 (D. Md. 2011) (same). LeBlanc v. Unifund CCR Partners, 601 F.3d 1185, 1197-98 (11th Cir. 2010)

[1] Additionally, in Sikwa v. Smart Recovery Serv., 2010 WL 3719897 (E.D. Mich. 2010), the Magistrate Judge apparently was unaware of even one of the many cases

(unlicensed debt collection agency's threats of suit against consumer violated state licensing requirements for collection agencies, and therefore FDCPA).[2]

## B. The Complaint States A Claim Against Par North For Violations Of The Rosenthal Act.

### 1. By Violating The FDCPA, Par North Violated The Rosenthal Act.

Par North feigns ignorance of the concrete allegations against it under the Rosenthal Act claim. California Civil Code § 1788.17 provides that "every debt collector collecting or attempting to collect a consumer debt shall comply with the provisions of Sections 1692b to 1692j, inclusive, of, and shall be subject to the remedies in Section 1692k of, Title 15 of the United States Code." Thus, "conduct by a debt collector that violates the FDCPA violates [the Rosenthal Act] as well." Townsend v. National Arbitration Forum, Inc., 2012 WL 12736, at *9 (C.D. Cal. Jan. 04, 2012) (citation omitted).

The Complaint incorporates all of its preceding factual allegations into the Rosenthal Act count. Complaint, ¶ 31. Plaintiff has expressly alleged the following violations of the Rosenthal Act by Par North:

- Par North is directly liable under Civil Code § 1788.17 for its own unlicensed repossession activity, in violation of 15 U.S.C. § 1692f. Complaint, ¶¶ 1, 6, 23, 25, 31, 36.
- Par North is vicariously liable for Reliable's breach of the peace under Civil Code § 1788.17, due to Reliable's violations of § 1692f. Complaint, ¶ 2, 13, 24, 31, 36; see also, e.g., Fox v. Citicorp Credit Servs., supra, 15 F.3d at 1516 (debt collectors are liable for agent's conduct under FDCPA).
- Par North is directly liable under Civil Code § 1788.17 for making the false statement to plaintiff that it had a right to commit a breach of the peace, in violation of 15 U.S.C. § 1692e. Complaint, ¶¶ 4, 31, 35.

[2] These cases also support plaintiff's claim under the Rosenthal Act (see below), which requires a repossession agency to comply with the entirety of section 1692f (not just 1692f(6)), and incorporates FDCPA violations as Rosenthal Act violations.

These allegations are more than sufficient to put Par North on notice of the claims against it, which is all that is required at this stage. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

**2. Par North Is A "Debt Collector" Under The Rosenthal Act.**

In a footnote, Par North questions whether it is covered by the Rosenthal Act. Motion, p. 9, n. 4. If this footnote is taken as argument rather than dicta, Par North is incorrect. The Rosenthal Act uses a sweeping definition of "debt collector," even broader than the FDCPA: "Any person who, in the ordinary course of business, regularly, on behalf of himself or others, engages in debt collection." Civ. Code § 1788.2(c). The Act then defines "debt collection" as "***any*** act or practice in connection with the collection of consumer debts." Id. § 1788.2(b) (emphasis added). In turn, the term "consumer debt" means "money, ***property***, or their equivalent which is due or owing or alleged to be due or owing from a natural person by reason of a consumer credit transaction." Id. § 1788.2(f) (emphasis added).

The Complaint alleges that Par North performed "any act or practice in connection with" the collection of collateral ("property"). Par North enters into contracts with lenders such as Wilshire Consumer Credit to accomplish repossessions; Par North uses various means, including skip-tracing, to locate and recover collateral; Par North hires local repossession agencies, like Reliable, to conduct the physical taking of the collateral. See Complaint, ¶¶ 1, 5, 6, 15. Par North therefore is clearly a "debt collector." The definition of "debt" is not limited to money, but includes "property." The word "property" in the definition cannot be ignored. Duncan, supra, 533 U.S. at 174.

Furthermore, the Rosenthal Act exempts only attorneys. See Cal. Civ. Code § 1788.2(c). There are no other exemptions, and certainly none for entities engaged in the repossession business. Imperial Merchant Services, Inc. v. Hunt, 47 Cal.4th 381, 389 (2009) ("[I]f exemptions are specified in a statute, [courts] may not imply additional exemptions unless there is a clear legislative intent to the contrary."

The Rosenthal Act is consumer protection legislation, and was specifically intended to provide a shield against unfair debt collection practices. Civ. Code § 1788.1(b). The Legislature found that "unfair or deceptive debt collection practices undermine the public confidence which is essential to the continued functioning of the banking and credit system and sound extensions of credit to consumers." Id. § 1788.1(a)(2). The Rosenthal Act must be liberally construed to effect its purposes. See Donohue v. Quick Collect, supra, 592 F.3d at 1033-34; Pitney Bowes, Inc. v. State of California, 108 Cal.App.3d 307, 324 (1980). Arbitrarily exempting an entire class of debt collectors from the Act's coverage – so-called repossession "forwarders," who earn money from repossession work that inherently presents a risk to consumers – would be totally contrary to the Rosenthal Act's purpose and intent, and its legislatively enumerated list of exempt entities.

Moreover, as noted, the Rosenthal Act incorporates most of the FDCPA as a violation of state law, including 15 U.S.C. § 1692f(6). See Cal. Civ. Code § 1788.17. Since § 1692f(6) applies ***only*** to repossessions, there can be no doubt that the repossession business is covered by the Rosenthal Act. Otherwise, the Legislature's specific adoption of § 1692f(6) as a violation of state law, would be mere surplusage and an idle act, because the creditor lienholders are already immune under the CRA for their repossessors' misconduct. See Bus. & Prof. Code § 7507.13(b).

Finally, the lone case cited by Par North – Pflueger v. Auto Finance Group, supra, 1999 WL 33740813 –is poorly reasoned, and has been criticized for its holdings on the Rosenthal Act. The case summarily concludes that repossession agencies are not debt collectors under the Rosenthal Act, without ever analyzing the statute's broad definition of that term. The case instead conflates the definition of "debt" under the FDCPA with the definition of "debt" under the Rosenthal Act, when the Rosenthal Act's definition is far broader. These flaws were recently acknowledged in Shannon v. Windsor Equity Group, supra, 2014 U.S. Dist. LEXIS 32259, where the court declined to follow Pflueger, and held that the Rosenthal Act

covered a repossession agency. Id., at 24-26. The Shannon court emphasized that the Rosenthal Act defines a "debt" to include "property", and thus repossession agencies (which attempt to collect property) are within its purview. Id., at 26.

### C. Par North Is A Repossession Agency Required To Be Licensed Under The CRA.

Plaintiff's third cause of action is brought under the CRA, a comprehensive consumer protection statute regulating the licensing and conduct of the repossession business. Although Par North clearly meets the definition of a "repossession agency" under the CRA, it has failed to get a license, and has been unlawfully competing against legitimately licensed California repossessors and other so-called repossession "forwarders".[3] Complaint, ¶ 1. Plaintiff therefore seeks an injunction, civil fines, and disgorgement of Par North's unlawful profits. Complaint, ¶¶ 44, 59. Like many California consumer protection statutes, the CRA is enforceable both by any consumer as a private attorney general (Bus. & Prof. Code § 7502.6), and by the Bureau of Security and Investigative Services ("BSIS"), a division of the Department of Consumer Affairs. Bus. & Prof. Code § 7501.

There is good reason for the strict regulation of repossessors like Par North. "Self-help" (nonjudicial) repossessions – the overwhelming bulk of repossessions – are inherently dangerous, and carry a high risk of violence and property damage. The Legislature deemed the licensing of persons who engage in this business so vital to the protection of Californians that it made unlicensed activity a crime. Bus. & Prof. Code §§ 7502.1. The Legislature also expressly stated that the central purpose of the CRA and BSIS is consumer protection: "Protection of the public shall be the highest priority for the Bureau of Security and Investigative Services in exercising its licensing, regulatory, and disciplinary functions. Whenever the protection of the public is inconsistent with other interests sought to be promoted, the protection of the

[3] For example, two repossession forwarders who are major competitors of Par North, Renaissance Recovery Solutions and Patrick K. Willis Company, have complied with the law and obtained California repossession agency licenses. Request for Judicial Notice, Exh.___.

public shall be paramount." Id., at § 7501.05. As a consumer protection law, the Court must liberally construe the CRA to accomplish its purpose. Donohue v. Quick Collect, supra, 592 F.3d at 1033-34

**1. The CRA's Definition Of "Repossession Agency" Is Sweeping, and Repossession Forwarders Are Not Exempt**

The CRA prohibits any person from engaging in the activities of a "repossession agency" in California, without a license. Bus. & Prof. Code § 7502. The CRA employs an extremely broad definition of "repossession agency":

> A repossession agency means and includes ***any person*** who, ***for any consideration whatsoever***, ***engages in business or accepts employment*** to locate or recover collateral, whether voluntarily or involuntarily.... Id., § 7500.2 (emphasis added).

The CRA defines the term "person" expansively, to include "any individual, partnership, limited liability company, or corporation." Bus. & Prof. Code § 7500.1(q). Par North is a corporation, and thus a "person" under the CRA. "Repossession forwarders" are ***not*** listed among those few persons exempt from licensing (see id., § 7500.3). See Imperial Merchant Services, supra, 47 Cal.4th at 389 (court should not imply exemptions that are not present).

**2. Par North "Accepted Employment" To *Recover* Collateral, For Consideration.**

Plaintiff has alleged all the elements of the first alternative prong of the definition of "repossession agency" in the CRA – i.e., that Par North "accepted employment" to recover collateral, for consideration. First, plaintiff alleges that "Defendant Par North is a repossession agency within the meaning of Bus. & Prof. Code § 7500.2, in that it engages in business and/or ***accepts employment*** to locate or ***recover*** collateral, for consideration." Complaint, ¶ 43 (emphasis added). As to her own vehicle, plaintiff alleges that "Wilshire Consumer Credit hired defendant Par North, as an independent contractor, to repossess plaintiff's vehicle." Id., ¶ 1. Plaintiff further alleges that Par North collected $390 in repossession fees from

Wilshire Credit for its services in repossessing plaintiff's vehicle, and kept all or part of this amount as its profit. Id., ¶ 5. Plaintiff also alleges that "[o]ver at least the last four years, Par North has orchestrated, managed and profited from the repossessions of hundreds or thousands of vehicles in California, without ever obtaining a California repossession license." Id., ¶ 6. Finally, plaintiff alleges that "Defendants have engaged in business and systematically accepted employment to locate and/or recover collateral in California, pursuant to written agreements with secured creditors under security agreements." Id., ¶ 15.

Thus, plaintiff has properly alleged that Par North "accepted employment" to recover collateral for consideration, not only in plaintiff's case, but as to thousands of other California consumers. It is immaterial that Par North carried out part of its employment through a hireling, Reliable, or that the hireling was licensed. Under the plain language of the CRA, Par North had to be licensed too.

**3. Par North "Accepted Employment" To *Locate* Collateral, For Consideration**

Plaintiff has alleged all the elements of the second alternative prong of the definition of "repossession agency" in the CRA – i.e., that the entity "accepted employment" to ***locate*** collateral, for consideration. First, plaintiff alleges that "Defendant Par North is a repossession agency within the meaning of Bus. & Prof. Code § 7500.2, in that it engages in business and/or accepts employment to ***locate*** or recover collateral, for consideration." Complaint, ¶ 43 (emphasis added). Plaintiff further alleges "In connection with their employment, defendants have, among other things, ***located*** (through skip-tracing and other means available to defendants) collateral in California ... Defendants have engaged in these activities for consideration, and such consideration is an illegal profit which must be disgorged." Id., ¶ 15. As to herself, plaintiff alleges that Par North located her vehicle, and gave this location to Reliable: "Par North in turn hired defendant Reliable Recovery Solutions as its agent to conduct the physical taking of plaintiff's vehicle at the location provided by Par North." Id., ¶ 1.

### 4. <u>Par North "Engaged In Business" To Locate Or Recover Collateral, For Consideration</u>

Par North obligates itself under contracts with lenders to locate and repossess automobiles. Complaint, ¶ 15. It then enters into secondary contracts with towing agencies to conduct the physical repossession of the lenders' vehicles. <u>Id</u>. The subagent towing agencies do not have any contacts with the lender, and Par North "controls the entire repossession process." <u>Id.</u>, ¶ 1, line 14. Thus, in plaintiff's case, the lender Wilshire Credit had no dealings with Reliable at all. <u>Id.</u>, ¶ 1, line 13. Plaintiff had to call Par North regarding her complaints about the repossession, and Par North told her (falsely) that it had every legal right to enter her private property to conduct the repossession. <u>Id.</u>, ¶ 4. Plaintiff had to pay repossession fees, which were paid to Par North. <u>Id.</u>, ¶ 5. As plaintiff has alleged, Par North "orchestrates, manages, and profits" from the thousands of repossessions it handles. <u>Id.</u>, ¶¶ 5-6.

Thus, Par North's clearly is "engaging in business" to locate and repossess collateral. The fact that Par North hires others to do the *physical* repossessions does not mean it is not "engaging in business" to repossess collateral. The definition of "repossession agency" in Business and Professions Code § 7500.2 is not limited to those doing physical repossessions, but includes "any person" who "engages in business" to recover or locate collateral. The Legislature put no limits on the phrase "engages in business", and neither should the Court.

The situation is analogous to a non-licensed, out-of-state lawyer who accepts employment and money for performing legal services in California, but claims to be exempt because he hired licensed California lawyers to do some of the legal work. The unlicensed lawyer is engaged in the unauthorized practice of law, even if he is physically out of state. <u>Birbower, Montalbano, Condon & Frank v. Superior Court</u>, 17 Cal.4th 119, 128-29 (1998). Similarly, Par North cannot evade the licensing laws through the artifice of having a licensed repossession agency doing the physical repossession, when it is controlling, managing and profiting from the entire repossession process ***it alone*** was hired to complete.

### 5. **The CRA Specifically Contemplates The Licensing Of Repossession "Forwarders".**

In addition to the broad definition of "repossession agency," other sections of the CRA evidence the Legislature's intent to license repossession forwarders. For example, the CRA prohibits any recovery of collateral "before a signed or telegraphic authorization has been received from the legal owner, debtor, lienholder, lessor, ***or repossession agency*** acting on behalf of the legal owner, debtor, lienholder, or lessor of the collateral." Bus. & Prof. Code § 7508.2(a) (emphasis added). This provision declares that any entity issuing an assignment "on behalf of the legal owner" must be a "repossession agency," i.e., that it must be licensed. Id. § 7502. Par North is exactly such an entity, acting on behalf of the lienholder.

The CRA also prohibits the subcontracting of a physical repossession, as Par North regularly does, unless both parties are licensed: "Referrals of assignments ***from one licensee to another licensee*** are acceptable. The referral of an assignment shall be made under the same terms and conditions as in the original assignment." Bus. & Prof. Code § 7508.2(a) (emphasis added). The Legislature was aware of "repossession forwarders," and required that they be licensed in § 7508.2.

## D. **Plaintiff Has Express Standing To Sue Under The Collateral Recovery Act, For She Is A "Member Of The General Public".**

The CRA grants standing to plaintiff to enforce its provisions, by virtue of Business and Professions Code § 7502.6(a), which provides as follows:

> The superior court in and for the county wherein any person carries on, or attempts to carry on, business as a repossession agency without first having obtained a license pursuant to this chapter, or carries on that business after the revocation or expiration of any license or during the period of suspension of any license, may, on application of the director [of the Bureau of Security and Investigative Services], ***or*** any person licensed under this act ***or*** association representing those licensees ***or any member of the general public***, issue an injunction or other appropriate order restraining that conduct and may impose civil fines not exceeding ten thousand dollars ($10,000). (Emphasis added.)

Based on an alleged "missing comma," Par North would read this express grant of standing to "any member of the general public" entirely out of the CRA,

leaving consumers with no remedy to enforce licensing violations. Par North's interpretation is contrary to the Legislature's statement that "Whenever the protection of the public is inconsistent with other interests sought to be promoted, the protection of the public shall be paramount." It also is contrary to the rule that consumer protection laws must be interpreted broadly to effectuate their purpose.

The language of § 7502.6(a) is clear: four separate classes of persons can bring suit to enjoin unlicensed repossession activities. Each group of authorized persons is separated by an "or." The groups are: (1) the BSIS; (2) licensees; (3) associations representing "those licensees"; and (4) any member of the general public.

Par North's interpretation of the statute is not supported by its plain language. Par North contends that two independent clauses, separated by an "or," should be read together as a single adjectival clause. Thus, Par North argues that the phrase "or association representing those licensees or any member of the general public" should be interpreted to mean "associations representing licensees" and "associations representing members of the general public."

Par North's interpretation is nonsensical. There is no such thing as an "association representing members of the general public." The term "association" plainly refers only to an association of ***licensees*** under the CRA. The party granted standing in the third "or" clause is an "association representing ***those licensees***…." (Emphasis added.) The party granted standing in the final "or" clause is "any member of the general public." Par North's interpretation ignores the Legislature's use of "or" to denote each separate group that is being granted standing, ignores the Legislature's use of "those licensees," and creates out of thin air the concept of "an association of members of the general public." Par North has failed to define what an "association of members of the general public" is, or why the Legislature would grant standing to an "association representing members of the general public," but not the general public itself. Moreover, if standing was granted to an association representing basically anyone, as Par North contends, the words "members of the general public" and "licensees" become superfluous.

A statute cannot be rewritten in a manner that is contrary to clear legislative intent. Arizona State Bd. For Charter Schools v. U.S. Dept. of Educ., 464 F.3d 1003, 1007 (9th Cir. 2006) ("[Courts] are not vested with the power to rewrite the statutes, but rather must construe what Congress has written. It is for [the courts] to ascertain – neither to add nor to subtract, neither to delete nor to distort."); Cornette v. Dept. of Transp., 26 Cal.4th 63, 73-74 (2001) ("A court may not rewrite a statute, either by inserting or omitting language, to make it conform to a presumed intent that is not expressed."). If the Legislature intended for standing under § 7502.6(a) to be limited to "associations representing members of the general public" (whatever that may be, since this odd phrase is not found in any other California statute), it knew how to make that intent clear by simply saying it. But the Legislature did not. The proper interpretation of § 7502.6(a) is that it used the words "association representing" with respect to "licensees" only. The Legislature separated all the different clauses (each clause referring to a type of entity/person with standing) with an "or," thereby granting broad standing to "any member of the general public," and vitiating the need to use commas.

The granting of standing to members of the general public is not unusual under California law, especially in the consumer protection context. For example, the Unfair Competition Law grants standing to "any person" for the violation of any other statute. Bus. & Prof. Code § 17204. The grant of standing to the general public in the CRA is entirely consistent with the obvious physical dangers to the general public presented by unlicensed repossessions. The Legislature recognized these elevated dangers by including many enhanced enforcement provisions, including making unlicensed activity a crime (B&P § 7502.1), imposing attorneys fees on the losing repossession agency (CCP § 1029.8), and authorizing treble damages against the unlicensed repossessor (CCP § 1029.8). The grant of standing to the general public is consistent with this enhanced statutory scheme, which attempts to deter unlicensed activity in various ways.

Par North next argues that Business & Professions Code § 7502.6(b) "circumscribes the parties entitled to bring an action for the fine or injunction described in Section 7502.6(a)" (allegedly limiting enforcement to district attorneys and the Attorney General). This is obviously incorrect, because subsection (b) merely ***grants*** the same powers to these governmental agencies, who were not mentioned in subsection (a), and therefore would otherwise lack standing. In the case of attorney generals, subsection (b) also directs where the civil fines will be spent. Thus, subsection (b) does not "circumscribe" subsection (a), but is an independent subsection granting similar powers to the attorney generals and regulating their fines. Par North does not explain why the Legislature would grant various entities the power to recover fines and seek an injunction in subsection (a), only to take away those remedies in subsection (b).

Finally, the Legislative History of the CRA is irrelevant because the statute is clear and unambiguous on its face. Consumer Prod. Safety Comm. v. GTE Sylvania, Inc., 447 U.S. 102, 108 (1980) ("We begin with the familiar canon of statutory construction that the starting point for interpreting a statute is the language of the statute itself. Absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive."); Tiernan v. Trustees of Cal. State University & Colleges, 33 Cal.3d 211, 218 (1982) ("If statutory language is clear and unambiguous there is no need for construction, and courts should not indulge in it.").[4] In any event, the Legislative History does not advance Par North's cause, but is actually consistent with plaintiff's interpretation. The history states that "the superior court may issue an injunction or other appropriate order restraining unlicensed repossessor activity and impose civil fines not to exceed $10,000." There is no limitation as to the parties granted standing in this quote, and no mention that such powers are limited to attorney generals. The next clause states "the State Attorney General, district attorney or city attorney are empowered to bring actions before the court seeking fines and enjoining unlicensed repossessor operations."

---

[4] Nor is there any need to "imply" a cause of action, when one is expressly granted.

Again, the fact that government attorneys are also "empowered" to bring actions, does not negate that other persons and entities are also empowered. The Legislative History thus appears consistent with the final wording of the statute, which used different subsections for the attorney generals and the other entities granted standing, because it wished to direct how the civil fines would be spent with regard to the attorney generals. Otherwise, one has to interpret the second subsection as taking away the powers just granted in the first subsection – which is unreasonable.

**E. The CRA Licensing Requirement Does Not Implicate The "Dormant Commerce Clause".**

In a footnote, Par North claims that, because it is an out-of-state company, the CRA's licensing requirement "likely" (but not definitively) would violate the "dormant" Commerce Clause if applied to Par North. Motion, p. 20, n. 9. Par North has not complied with Federal Rule of Civil Procedure 5.1, which requires Par North to notify the California Attorney General of its constitutional challenge, and the Court to certify to the Attorney General that there is a challenge. Fed. R. Civ. P. 5.1(a) and (b). The Attorney General then has 60 days after the filing of notice to intervene. Fed. R. Civ P. 5.1(c). The court may not enter a final judgment holding the statute unconstitutional during this interim period. Id.

Accordingly, plaintiff will not argue the merits of the Commerce Clause in this brief, but requests an opportunity to do so if Par North complies with FRCP 5.1. Plaintiff does note that "[A] statute that treats all private companies exactly the same does not discriminate against interstate commerce." Assn. des Eleveurs de Canards et d'Oies du Quebec v. Harris, 729 F.3d 937, 948 (9th Cir. 2013). The CRA's licensing requirement does not directly regulate or discriminate against interstate commerce; to the contrary, it applies with equal force to in-state and out-of-state repossession agencies, all of whom are free to engage in repossession activities in California so long as they are licensed.

**F. Plaintiff's Fifth Cause of Action Under The Unfair Competition Law States A Valid Claim**

For the reasons stated above, plaintiff has adequately pleaded violations of several consumer protection statutes, each of which also triggers liability under the "unlawful" prong of the UCL.

Plaintiff also states a claim under the alternative "fraudulent" prong of Bus. & Prof. Code § 17200. Plaintiff need not show the elements of "common law fraud" under this prong, as defendant claims, but only that the practice is "likely to deceive." Daugherty v. American Honda Motor Co., Inc., 144 Cal.App.3d 824, 838 (2006). Plaintiff has pled specific misrepresentations by Par North, who falsely told plaintiff that it had every right to enter her private property to repossess the vehicle, when it did not. Complaint, ¶ 4.

Finally, Par North does not address the third, "unfair" prong of the UCL (Complaint, ¶ 55), and therefore has not attacked the entire cause of action. Par North committed "unfair" conduct by failing to be licensed. Par North is also vicariously liable for the unfair breach of the peace of its agent, Reliable. Complaint, ¶¶ 1, 13.

## III. CONCLUSION

For all of the foregoing reasons, the Court should deny Par North's motion.

Dated: June 1, 2015

Respectfully submitted,

LAW OFFICES OF BRANDON A. BLOCK
A PROFESSIONAL CORPORATION

By: /s/
Brandon Block

TRUEBLOOD LAW FIRM

By: /s/
Alexander B. Trueblood

Attorneys for Plaintiff
BARBARA A. CLARK