VEDDER PRICE (CA), LLP
CHRISTOPHER R. RAMOS (SB# 301556)
cramos@vedderprice.com
1925 Century Park East, Suite 1900
Los Angeles, California 90067
T: +1 424 204 7700
F: +1 424 204 7702

VEDDER PRICE P.C.
BLAINE C. KIMREY *(Pro hac vice pending)*
bkimrey@vedderprice.com
JEANAH PARK *(Pro hac vice pending)*
jpark@vedderprice.com
222 North LaSalle Street
Chicago, Illinois 60601
T: +1 312 609 7500
F: +1 312 609 5005

*Attorneys for Defendant PAR, Inc.*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

BARBARA A. CLARK,

Plaintiff,

v.

PAR, INC. dba PAR NORTH AMERICA, COUNTRYWIDE TOWING, INC. dba RELIABLE RECOVERY SOLUTIONS, and DOES 1 through 10, inclusive,

Defendants.

Case No. 2:15-cv-02322-MWF-FFM

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PAR, INC. DBA PAR NORTH AMERICA'S MOTION TO COMPEL ARBITRATION AND TO STAY ACTION**

Hon. Michael W. Fitzgerald

Date: February 27, 2017
Time: 10:00 a.m.
Courtroom: 5A

Trial Date: September 26, 2017
Action Filed: March 28, 2015

# TABLE OF CONTENTS

Page

I. INTRODUCTION ........ 1
II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY ........ 3
- A. The allegations of the Complaint ........ 3
- B. The arbitration agreement ........ 4
- C. PAR's contract with Wilshire ........ 6

III. LEGAL STANDARD ........ 7
IV. ARGUMENT ........ 8
- A. The arbitration agreement is valid ........ 8
- B. PAR can enforce the arbitration agreement because it is Wilshire's agent ........ 9
- C. PAR can enforce the arbitration agreement under the doctrine of equitable estoppel ........ 12
- D. The dispute between Plaintiff and PAR falls within the scope of the arbitration agreement ........ 14
- E. PAR has not waived its right to arbitrate ........ 15
- F. Plaintiff's claims must be arbitrated on an individual basis and not as a class action ........ 23
- G. This action should be stayed pending arbitration ........ 24

V. CONCLUSION ........ 24

## TABLE OF AUTHORITIES

**Page(s)**

### Federal Cases

*Adams v. AT&T Mobility, LLC*,
524 Fed. App'x 322 (9th Cir. 2013) .......... 2

*Allianz Glob. Risk U.S. Ins. Co. v. Gen. Elec. Co.*,
2010 WL 749876 (C.D. Cal. Mar. 1, 2010) .......... 12, 14

*Allied-Bruce Terminix Cos. v. Dobson*,
513 U.S. 265 (1995) .......... 7

*Am. Express Co. v. Italian Colors Rest.*,
570 U.S. __, 133 S. Ct. 2304 (2013) .......... 2

*Amisil Holdings Ltd. v. Clarium Cap. Mgmt.*,
622 F. Supp. 2d 825 (N.D. Cal. 2007) .......... 10

*AT&T Mobility v. Concepcion*,
131 S. Ct. 1746 (2011) .......... 23

*AT&T Techs., Inc. v. Comm's Workers of Am.*,
475 U.S. 643 (1986) .......... 5

*AZ Holding, L.L.C. v. Frederick*,
2010 WL 500443 (D. Ariz. Feb. 10, 2010) .......... 18

*Big Picture Grp. LLC v. Pate*,
2014 WL 12561617 (C.D. Cal. Sept. 10, 2014) .......... 20

*Bischoff v. DirecTV, Inc.*,
180 F. Supp. 2d 1097 (C.D. Cal. 2002) .......... 9

*Boston Telecomm'ns Group, Inc. v. Deloitte Touche Tohmatsu*,
278 F. Supp. 2d 1041 (N.D. Cal. 2003) .......... 9

*Britton v. Co-op Banking Grp.*,
916 F.2d 1405 (9th Cir. 1990) .......... 20

*Brown v. Dillard's, Inc.*,
430 F.3d 1004 (9th Cir. 2005) .......... 21

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Brownstone Invest. Group, LLC v. Levy*,
514 F. Supp. 2d 536 (S.D.N.Y. 2007) .......... 21

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
207 F.3d 1126 (9th Cir. 2000) .......... 7

*Clyde Bergemann, Inc. v. Sullivan, Higgins & Brion*,
2008 WL 4279632 (D. Or. Sept. 18, 2008) .......... 16

*Collins v. Burlington N.R. Co.*,
867 F.2d 542 (9th Cir. 1989) .......... 24

*Comer v. Micor, Inc.*,
436 F.3d 1098 (9th Cir. 2006) .......... 3

*Cox v. Ocean View Hotel Corp.*,
533 F.3d 1114 (9th Cir. 2008) .......... 22

*Dean Witter Reynolds, Inc. v. Byrd*,
470 U.S. 213 (1985) .......... 7

*FDIC v. Alshuler (In re: Imperial Corp. of Am.)*,
92 F.3d 1503 (9th Cir. 1996) .......... 10

*Ferguson v. Corinthian Colls., Inc.*,
733 F.3d 928 (9th Cir. 2013) .......... 23

*First Options of Chicago, Inc. v. Kaplan*,
514 U.S. 938 (1995) .......... 8

*Fisher v. A.G. Becker Paribas Inc.*,
791 F.2d 691 (9th Cir. 1986) .......... 16, 20, 22

*Green Tree Fin. Corp.-Ala. v. Randolph*,
531 U.S. 79 (2000) .......... 7

*Herrera v. CarMax Auto Superstores California, LLC*,
2014 WL 3398363 (July 2, 2014) .......... 8, 11, 12

*Jorgens v. Janke*,
77 F. App'x 420 (9th Cir. 2003) .......... 9

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Kilgore v. KeyBank, Nat. Ass'n*,
718 F.3d 1052 (9th Cir. 2013) ........ 7

*Kramer v. Toyota Motor Corp.*,
705 F.3d 1122 (9th Cir. 2013) ........ 12

*Labajo v. First Int'l Bank & Trust*,
2014 WL 4090527 (C.D. Cal. July 9, 2014) ........ 14

*Lake Comm'ns., Inc. v. ICC Corp.*,
738 F.2d 1473 (9th Cir. 1984), *overruled on other grounds* ........ 16, 18

*Letizia v. Prudential Bache Sec., Inc.*,
802 F.2d 1185 (9th Cir. 1986) ........ 2, 10, 11, 12

*Lucas v. Gund, Inc.*,
450 F. Supp. 2d 1125 (C.D. Cal. 2006) ........ 8

*Madrigal v. New Cingular Wireless Servs., Inc.*,
2009 WL 2513478 (E.D. Cal. Aug. 17, 2009) ........ 20

*Martin v. Yasuda*,
829 F.3d 1118 (9th Cir. 2016) ........ 16

*Molina v. Scandinavian Designs, Inc.*,
2014 WL 1615177 (N.D. Cal. Apr. 21, 2014) ........ 8

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983) ........ 7,8

*Murphy v. DirecTV, Inc.*,
724 F.3d 1218 (9th Cir. 2013) ........ 13

*Nw. Aluminum Co. v. Hydro Aluminium Deutschland*,
2004 WL 1149366 (D. Or. May 20, 2004) ........ 18

*Olson v. Harland Clark Corp.*,
2012 WL 1821390 (W.D. Wash. May 18, 2012) ........ 22

*Republic of Nicaragua v. Standard Fruit Co.*,
937 F.2d 469 (9th Cir. 1991) ........ 7

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Robinson v. Delicious Vinyl Records Inc.*,
2014 WL 5332837 (C.D. Cal. Oct. 20, 2014) .............................................. 18, 21

*Rodriguez v. Shen Zhen New World I LLC*,
2014 WL 908464 (C.D. Cal. Mar. 6, 2014) .................................................. 14

*Shepard v. Cohen*,
2015 WL 2380810 (E.D. Cal. May 18, 2015) ................................................ 18

*Shinto Shipping Co., Ltd. v. Fibrex & Shipping Co.*,
572 F.2d 1328 (9th Cir. 1978) ..................................................................... 16

*Simula, Inc. v. Autoliv, Inc.*,
175 F.3d 716 (9th Cir. 1999) ............................................................... 7, 14, 15

*Sovak v. Chugai Pharm. Co.*,
280 F.3d 1266 (9th Cir. 2002) ................................................................ 18, 21

*Stolt-Nielson S.A. v. AnimalFeeds Int'l Corp.*,
559 U.S. 662 (2010) ...................................................................................... 3

*United States v. Park Place Assocs., Ltd.*,
563 F.3d 907 (9th Cir. 2009) ........................................................................ 16

*Van Ness Townhouses v. Mar Indus. Corp.*,
862 F.2d 754 (9th Cir. 1988) ........................................................................ 16

*Walker v. J.C. Bradford & Co.*,
938 F.2d 575 (5th Cir. 1991) ........................................................................ 20

*Wash. Mut. Fin. Group, LLC v. Bailey*,
364 F.3d 260 (5th Cir. 2004) .......................................................................... 3

*Willick v. Napoli Bern Ripka & Assocs., LLP*,
2015 WL 12765469 (C.D. Cal. Aug. 20, 2015) ............................................ 20

**California Cases**

*Deleon v. Verizon Wireless, LLC*,
207 Cal. App. 4th 800 (2012) ......................................................................... 8

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Goldman v. KPMG LLP*,
173 Cal. App. 4th 209, 92 Cal. Rptr. 3d 534 (2009) .......... 13

*Matthau v. Superior Court*,
151 Cal. App. 4th 593 (2007) .......... 12

*Sanchez v. Valencia Holding Co., LLC*,
61 Cal. 4th 890 (2015) .......... 9

*St. Agnes Med. Ctr. v. PacifiCare of Cal.*,
31 Cal.4th 1187 (Cal. 2003) .......... 20, 21

*Windsor Mills, Inc. v. Collins & Aikman Corp.*,
25 Cal. App. 3d 987 (1972) .......... 8

**Federal Statutes**

Fair Debt Collection Practices Act, 15 U.S.C. .......... 13

Fair Debt Collection Practices Act, 15 U.S.C.
§ 1692f(6) .......... 1

Federal Arbitration Act, 9 U.S.C.
§§ 1-16 .......... *passim*
§ 1 *et seq.* .......... i, 2
§ 2 .......... 7
§ 3 .......... 23
§ 4 .......... 7

**California Statutes**

California Collateral Recovery Act, Cal. Bus. & Prof. Code
§ 7500.1(e) .......... 13
§ 7500.2 .......... 13
§ 7502.6 .......... 2, 13

California Unfair Competition Law, Cal. Bus. & Prof. Code
§ 17200 .......... 2

Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code
§ 1788 *et seq.* .......... 1, 13

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

**Other Authorities**

Local Rule 7-3 .......... i

Local Rule 37-1 .......... 1, 17, 19

Rule 26(a)(1) .......... 22

Rule 26(c) .......... 1

Rule 30(b)(6) .......... 19

# I. INTRODUCTION

This case involves allegations of wrongful repossession of a vehicle that was secured by a Promissory Note and Security Agreement ("SA") plaintiff Barbara A. Clark ("Plaintiff") entered into with Wilshire Consumer Credit ("Wilshire"). The SA — which Plaintiff waited **11 months** to produce in response to defense document requests — contains an arbitration and class waiver provision that applies to Plaintiff's claims. Even though Plaintiff knew she was required to arbitrate her claims and that she agreed to waive her right to assert a class action, she nevertheless filed suit and litigated her claims for the next 22 months. Having now learned of its right to arbitrate, defendant PAR, Inc. dba PAR North America ("PAR") seeks to compel arbitration and stay all proceedings pending a decision on PAR's motion to compel.[1]

In this case, Plaintiff alleges that when she defaulted on her loan payments to Wilshire, it exercised its right to self-help and to seek repossession of the vehicle. Wilshire hired PAR, which acts as an intermediary, or "forwarder," to connect lenders such as Wilshire to a local repossession agent. Defendant Countrywide Towing dba Reliable Recovery Services ("Reliable") conducted the actual repossession.

Based on these allegations, Plaintiff brings claims individually and on behalf of a proposed class of California consumers who, as to PAR, were subject to

[1] PAR intends to file a motion to stay all proceedings pending a decision on PAR's motion to compel. Because PAR will be requesting to modify the existing discovery schedule under Rule 26(c), PAR must comply with Local Rule 37-1, which requires PAR to confer with opposing counsel to attempt to resolve the issue with opposing counsel. *See* C.D. Cal. L.R. 37-1. Counsel for defendant Reliable and intervenor the State of California have already informed PAR's counsel that Reliable and the State of California will not oppose PAR's motion to compel arbitration or motion to stay proceedings. (Decl. of Blaine Kimrey ("Kimrey Decl.") ¶¶ 6, 14.) PAR presently is engaging in efforts to resolve the matter with Plaintiff's counsel. If a resolution is not achieved, PAR intends to file its motion to stay as soon as possible under L.R. 37-1, likely on or around February 3, 2017.

automobile repossessions involving PAR from the date she filed suit to four years prior. Plaintiff asserts claims against PAR for violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692f(6) ("FDCPA"); the Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code § 1788, *et seq.* ("RFDCPA"); the California Collateral Recovery Act ("CRA"), Cal. Bus. & Prof. Code § 7502.6; and the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 ("UCL"). (*See* Complaint ("Compl."), Dkt. 1.) Regardless of the merits of Plaintiff's claims, which PAR vigorously disputes, the claims all must be arbitrated on an individual basis pursuant to the arbitration agreement in the SA signed by Plaintiff, which is the agreement documenting the automobile loan at issue.

The Supreme Court and the Ninth Circuit in numerous recent decisions have held that consumer arbitration agreements such as the one between Plaintiff and Wilshire are valid and enforceable under the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* *See, e.g., Am. Express Co. v. Italian Colors Rest.*, 570 U.S. __, 133 S. Ct. 2304, 2312 (2013); *Adams v. AT&T Mobility, LLC*, 524 Fed. App'x 322, 324 (9th Cir. 2013); *Letizia v. Prudential Bache Sec., Inc.*, 802 F.2d 1185, 1188 (9th Cir. 1986). Because PAR is Wilshire's agent under the express terms of the agreement and the express terms of its own agreement with Wilshire, PAR can stand in the shoes of Wilshire to invoke the arbitration provision. Moreover, under the doctrine of equitable estoppel, PAR may compel arbitration because Plaintiff refers to, and relies upon, the Wilshire contract in asserting her claims against PAR.

Finally, PAR has not waived its right to seek arbitration because to the extent PAR has participated in this litigation, PAR did so before it learned of and assessed its right to arbitrate, and any conduct PAR engaged in is not inconsistent with its right to arbitrate. Moreover, Plaintiff cannot demonstrate that she has been prejudiced because she withheld the contract containing the arbitration and class waiver provision until shortly before the previously-scheduled close of fact

discovery. Numerous courts in this Circuit and in other jurisdictions are reluctant to find prejudice to a plaintiff who has chosen to litigate a dispute that clearly is arbitrable.

Given the strong federal policy favoring arbitration, this Court should grant PAR's Motion, order Plaintiff to submit this dispute to individual, non-class arbitration pursuant to the binding arbitration agreement, and stay this litigation pending arbitration.

## II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A. The allegations of the Complaint.

Plaintiff alleges she obtained a "title" loan with Wilshire. (Compl. ¶ 1.) Wilshire provided a loan to Plaintiff pursuant to a California Promissory Note and Security Agreement [the SA] secured by a 2004 Chrysler Town and Country. (Compl. ¶ 1; Decl. of John Schwartz ("Schwartz Decl."), Ex. A ("SA").) The SA states in pertinent part:

> **J. YOUR RIGHTS IF I AM IN DEFAULT OF THIS AGREEMENT.** If I am in Default of this Agreement, you may enforce your rights according to law. . . . Some of the things you may do are the following. . . .
>
> Repossession. You can repossess the Vehicle, unless prohibited by law. You can do this yourself, have a qualified person do it for you, or have a government official (by replevin) do it for you. . . .

(SA § J(2), attached to Schwartz Decl. as Ex. A.)

Plaintiff alleges that Wilshire hired PAR to repossess Plaintiff's vehicle.[2] (Compl. ¶ 1.) Plaintiff further alleges that defendant Reliable, at Wilshire's and PAR's direction, repossessed Plaintiff's vehicle and that during the repossession,

---

[2] Plaintiff testified at her deposition, which is incomplete because she lost her glasses during the deposition and could not read exhibits, that she fell behind in her payments to Wilshire, which caused Wilshire to order repossession of the vehicle. (Decl. of Donald Bradley ("Bradley Decl.") ¶ 17, Ex. L.)

Reliable impermissibly entered private property that was secured by a locked gate and fence, in breach of the peace (*Id.* ¶ 2.) Plaintiff also alleges that Reliable failed to notify her of the seizure within 48 hours and failed to mail her a written inventory of the items in her vehicle. (*Id.* ¶ 3.) Plaintiff alleges that Reliable would not return the property until Wilshire approved. (*Id.*) The vehicle was allegedly returned after Plaintiff paid Wilshire $1,290.52 to "reinstate" the SA. (*Id.* ¶ 5.)

### B. The arbitration agreement.

The SA contains an express arbitration provision that prohibits class actions by Plaintiff and requires the use of binding arbitration to resolve all disputes when arbitration is elected. (SA p. 3, attached to Schwartz Decl. as Ex. A.)

Page three of the SA states in pertinent part:

> **MANDATORY ARBITRATION AGREEMENT**
>
> **1. Mandatory Arbitration.** Unless otherwise stated in this Agreement, any "Dispute" between the Borrower, Co-Signer, Co-Owner, Lender or Lender's Assignee (the "Parties") shall be resolved by a neutral, binding arbitration, and not be a court of law. This procedure includes any Dispute over the interpretation, scope, or validity of this Agreement, the arbitration agreement or the arbitrability of any issue. . . . The arbitration agreement applies to the Parties, including their respective employees or agents, as to all matters which arise out of or are related to this Agreement or any resulting transaction or relationship.
>
> **2. Dispute:** The term "Dispute" means any action, dispute, claim, or controversy of any kind arising out of, in connection with or in any way related to the Agreement, financing, contracts, origination, servicing, collection, reporting or any other aspect whatsoever of the past, present or future relationship or conduct of the Parties. The term "Dispute" includes without limitation: claims under federal or state consumer protection laws, claims in tort or contract, claims under statute or common law, claims at law or in equity; any other past, present or future claims, counterclaims, cross-claims, third party claims, interpleaders or otherwise.

* * *

> **5. Standards and Law.** The Parties agree that the Agreement involves interstate commerce and that this arbitration agreement is governed by the Federal Arbitration Act, 9 U.S.C. Sections 1 through 16 as amended ("FAA"). The arbitrator shall strictly apply applicable substantive law and applicable statutes of limitation consistent with the FAA and shall honor claims of privilege recognized at law.
>
> * * *
>
> **7. Class Action Waiver:** The Parties agree to give up any rights they may have to bring a class action lawsuit or class arbitration, or to participate in either as a claimant. The Parties agree to give up any right to consolidate or join any arbitration proceeding with the arbitration of others. The Parties give up the right to serve as a private attorney general in any jurisdiction in which such procedure may be permitted. To the extent the Parties are permitted to file small claims under paragraph 11, the Parties agree that any small claim may only be brought on an individual basis and that no small claim may be brought on a class or representative basis.

(SA, p. 3.) (Emphasis in original.)

Plaintiff indicated her intent to be bound by the arbitration provision, including the class action waiver, by signing the first page of the SA and initialing the bottom of all pages of the SA and signing the last page of the SA. (*Id.* pp. 1-3.)

The SA also contains the following warning and acknowledgment in connection with Plaintiff's signing the agreement:

> **FOR ALL DISPUTES COVERED BY THIS ARBITRATION AGREEMENT, THE PARTIES HAVE AGREED TO WAIVE THEIR RIGHT TO A TRIAL BY JURY, THEIR RIGHT TO PARTICIPATE IN CLASS ACTIONS, AND THEIR RIGHT TO SEEK PUNITIVE DAMAGES, EXCEPT FOR DISPUTES AND CLAIMS NOT SUBJECT TO THIS ARBITRATION AGREEMENT. ARBITRATION SHALL BE IN PLACE OF ANY CIVIL LITIGATION IN ANY COURT AND IN PLACE OF ANY TRIAL BY JURY.**
>
> **THE TERMS OF THIS ARBITRATION AGREEMENT AFFECT MY LEGAL RIGHTS. IF I DO NOT UNDERSTAND**

> **ANY TERMS OF THIS ARBITRATION AGREEMENT OR THE COST, ADVANTAGES OR DISADVANTAGES OF ARBITRATION, I SHOULD SEEK INDEPENDENT ADVICE BEFORE SIGNING THIS AGREEMENT. BY SIGNING THIS AGREEMENT, I ACKNOWLEDGE THAT I HAVE READ, UNDERSTOOD AND AGREE TO BE BOUND BY EACH OF THE PROVISIONS, COVENANTS, STIPULATIONS AND AGREEMENTS SET FORTH ABOVE.**

(*Id.* p. 3.) (Emphasis in original.)

Wilshire provided a loan to Plaintiff in exchange for a security interest in the vehicle. (Compl. ¶ 1; SA p. 1.)

**C. PAR's contract with Wilshire.**

On August 22, 2013, PAR entered into a Client Repossession and Remarketing Services Agreement with Westlake Services, LLC d/b/a Westlake Financial Services, LLC[3] ("PAR Wilshire Agreement"), through which PAR agreed to provide certain services to Wilshire, including taking assignments from Wilshire to locate licensed repossession agents as needed by Wilshire. (*See* Decl. of Tim Massingale ("Massingale Decl.") ¶ 6, Ex. A.)

Paragraph 10(a) of the PAR Wilshire Agreement states, "For all purposes of this Agreement, PAR shall act as Client's [Wilshire's] agent and shall not be considered a bailee or consignee of [Wilshire]." (PAR Wilshire Agreement, attached as Ex. A to Massingale Decl., at ¶ 10(a).)

As alleged by Plaintiff, at some point after Plaintiff purchased the vehicle, Wilshire directed PAR and Reliable to repossess her vehicle. (Compl. ¶ 1.) Pursuant to the PAR Wilshire Agreement, PAR accepted the assignment and engaged Reliable to conduct the repossession. (*Id.* ¶ 1.)

---

[3] Wilshire Consumer Credit is a wholly-owned subsidiary of Westlake Financial Services, LLC. (*See* Schwartz Decl. ¶ 1.) For ease of reference, unless otherwise specified, PAR refers to Westlake and Wilshire collectively as "Wilshire."

PAR now seeks to compel arbitration based upon the arbitration provision in the SA.

## III. LEGAL STANDARD

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, governs enforceability of arbitration clauses in all contracts evidencing a transaction involving commerce. 9 U.S.C. § 2. The Supreme Court has repeatedly made clear that the FAA is extremely broad and applies to any transaction directly or indirectly affecting interstate commerce. *See, e.g., Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 277 (1995). The FAA promotes a "liberal federal policy favoring arbitration agreements," and "questions of arbitrability must be addressed with a healthy regard for the federal policy governing arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).

"The FAA 'mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.'" *Kilgore v. KeyBank, Nat. Ass'n*, 718 F.3d 1052, 1058 (9th Cir. 2013) (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985)) (emphasis in original). Under the FAA, arbitration must be compelled where, as in this case: (1) a valid, enforceable agreement to arbitrate exists; and (2) the claims at issue fall within the scope of that agreement. *See Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (citing 9 U.S.C. § 4); *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719–20 (9th Cir. 1999); *Republic of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 477–78 (9th Cir. 1991)). It is well-settled that the party resisting arbitration bears the burden of showing that the arbitration agreement is invalid or does not encompass the claims at issue, a burden that cannot be met by Plaintiff on the facts here. *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 92 (2000). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor

of arbitration." *Moses H. Cone*, 460 U.S. at 24–25; *see also Lucas v. Gund, Inc.*, 450 F. Supp. 2d 1125, 1130 (C.D. Cal. 2006).

## IV. ARGUMENT

### A. The arbitration agreement is valid.

While the FAA exclusively governs enforceability of the arbitration agreement according to its terms, state law governs determination of whether a valid agreement to arbitrate exists. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) ("When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts.") (citation omitted); *Herrera v. CarMax Auto Superstores California, LLC*, 2014 WL 3398363, at *3 (July 2, 2014) (Fitzgerald, J.) (applying California contract law and the FAA to enforce arbitration provision and noting that under both federal and California law, arbitration agreements are valid, irrevocable, and enforceable, except if grounds exist at law or in equity for the [rescission] of any contract) (internal citation and quotation marks omitted).

Under California law, there "is no contract until there is mutual consent of the parties." *Molina v. Scandinavian Designs, Inc.*, 2014 WL 1615177, at *3 (N.D. Cal. Apr. 21, 2014) (citing *Deleon v. Verizon Wireless, LLC*, 207 Cal. App. 4th 800, 813 (2012)). Mutual consent "is determined under an objective standard applied to the outward manifestations or expressions of the parties, i.e., the reasonable meaning of their words and acts, and not their unexpressed intentions or understanding." *Id.* (citations and internal quotations omitted). Importantly, an offeree, "knowing that an offer has been made to him but not knowing all of its terms, may be held to have accepted, by his conduct, whatever terms the offer contains." *Windsor Mills, Inc. v. Collins & Aikman Corp.*, 25 Cal. App. 3d 987, 993 (1972) (citations omitted).

Here, there is no question that Plaintiff accepted the terms of the SA, including the arbitration provision, and that the arbitration agreement is valid and enforceable under California law. Indeed, Plaintiff admits obtaining a loan from Wilshire that was secured by the vehicle. (Compl. ¶ 1.) There is no dispute that she signed and initialed the SA. (Wilshire Decl., Ex. A.) She testified that she entered into the SA with Wilshire and that she signed the SA and made payments under the SA. (Bradley Decl., Ex. 2, at ¶ 18 and Ex. L.)

Accordingly, under both the FAA and California law, Plaintiff entered into, and agreed to the terms of, the SA, including the arbitration agreement, and that agreement is binding on Plaintiff and must be enforced as written. *See, e.g.*, *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 890, 899 (2015); *see also Bischoff v. DirecTV, Inc.*, 180 F. Supp. 2d 1097, 1103-06 (C.D. Cal. 2002) (enforcing arbitration agreement in contract for satellite service that was provided after customer elected to receive, and activated, satellite service).

**B. PAR can enforce the arbitration agreement because it is Wilshire's agent.**

Under both California and federal law, "an agent may invoke the arbitration provision of his principal provided that the subject matter of the dispute falls within the scope of the arbitration agreement.'" *Jorgens v. Janke*, 77 F. App'x 420, 421 (9th Cir. 2003) (holding that non-signatory agent was entitled to seek arbitration even when arbitration agreement did not expressly extend to signatory principal's agents); *Boston Telecomm'ns Group, Inc. v. Deloitte Touche Tohmatsu*, 278 F. Supp. 2d 1041, 1048 (N.D. Cal. 2003) (holding that non-signatory can invoke the protections of an arbitration clause "when the signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract") (internal citation omitted).

The arbitration agreement states that it "applies to the Parties, including their respective employees or agents. . . ." (SA p. 3.) The SA defines "the Parties" as Plaintiff, any co-signer or co-owner, the lender, and the lender's assignees. (SA p. 3.) Wilshire, which is a party to the SA, is a wholly-owned subsidiary of Westlake. (Schwartz Decl. ¶ 1.) As a party to the SA, Wilshire, and its parent company, Westlake, can invoke the arbitration provision in the SA. *See FDIC v. Alshuler (In re: Imperial Corp. of Am.)*, 92 F.3d 1503, 1507 (9th Cir. 1996) (noting that privity exists between parent corporation and wholly-owned subsidiary). As Wilshire/Westlake's agent for purposes of forwarding the repossession, PAR may also enforce the arbitration agreement.

Given the "strong federal policy favoring arbitration," courts in the Ninth Circuit will not allow a signatory to avoid an arbitration clause by suing a non-signatory agent of a signatory. *Letizia*, 802 F.2d at 1188 (non-signatory defendants were entitled to enforce arbitration agreement between plaintiff and principal); *see also Amisil Holdings Ltd. v. Clarium Cap. Mgmt.*, 622 F. Supp. 2d 825, 833 (N.D. Cal. 2007) (noting that if non-signatory agents are not permitted to invoke arbitration provision, plaintiff could avoid the agreement to arbitrate simply by naming nonsignatories as defendants, thereby nullifying the rule requiring arbitration). Here, the arbitration provision specifically identifies Wilshire's "employees or agents," including PAR, as parties entitled to invoke the arbitration provision.

Moreover, the PAR Wilshire Agreement expressly identifies PAR as Wilshire's agent in connection with Plaintiff's loan with Wilshire and Wilshire's self-help remedies under the loan. The PAR Wilshire Agreement states: "[F]or all purposes of this Agreement, PAR shall act as [Wilshire]'s agent and shall not be considered a bailee or consignee of [Wilshire]." (PAR Wilshire Agreement p. 5.) Plaintiff alleges that PAR was hired solely to effectuate repossession of Plaintiff's

vehicle. (Compl. ¶ 1.) Plaintiff's claims against PAR relate only to PAR's role in forwarding the repossession of the vehicle. Plaintiff does not contend that PAR engaged in any acts outside of the scope of the PAR Wilshire Agreement. These facts — including the express language of the arbitration provision — compel the conclusion that PAR is entitled to enforce the arbitration agreement, even though it was not a signatory to the SA.

*Letizia v. Prudential Bache Securities, Inc.*, 802 F.2d 1185 (9th Cir. 1986), supports the conclusion that a non-signatory to an arbitration provision can compel arbitration when it acts as an agent of the signatory. In *Letizia*, the plaintiff executed a customer agreement that was administered by two individual defendants, who did not sign the agreement. *Id.* at 1186. As is the case here, the defendants were agents of a signatory to the agreement. *Id.* The defendant agents moved to compel arbitration, and the plaintiff argued the defendants could not invoke the arbitration provision because they did not sign the agreement. *Id.* at 1187. The district court granted defendants' motion to compel arbitration and the Ninth Circuit affirmed, holding that the defendants acted as one of the signatory's agents and that, because they acted within the scope of their agency in administering the agreement, they could invoke the arbitration provision, even as non-signatories. *Id.* at 1187-88.

Similarly, in *Herrera v. CarMax Auto Superstores California, LLC*, 2014 WL 3398363 (July 2, 2014) (Fitzgerald, J.), this Court granted a motion to compel arbitration filed by a non-signatory to the agreement, noting that the non-signatory had the legal right to enforce the agreement. In *Herrera*, the defendant moved to compel an arbitration agreement even though it was not the corporate entity that signed the agreement. The defendant contended that the signatory company transferred a number of agreements, including the arbitration agreement, to the defendant. This Court observed:

> Although an agreement to arbitrate may only be invoked by a party to the agreement, a number of exceptions allow a party to enforce an arbitration agreement made by a signatory with some legally significant relationship with the party seeking enforcement: "The common thread [in cases allowing nonsignatory enforcement] is the existence of an agency or similar relationship between the nonsignatory and one of the parties to an arbitration agreement. . . ."

*Herrera*, 2014 WL 3398363, at *3 (quoting *Matthau v. Superior Court*, 151 Cal. App. 4th 593, 599 (2007)) (internal citation omitted).

Here, PAR has a legally significant, agency relationship with the signatory, Wilshire. Although PAR did not sign the SA, Wilshire contracted with PAR as its agent to forward repossession of Plaintiff's vehicle. (Compl. ¶ 1.) Plaintiff's claims involving the repossession are claims "arising out of, in connection with or in any way related to" the SA. Indeed, the SA specifically gave Wilshire the right to assign the repossession of the vehicle to another entity. (SA § J(2).) Because PAR acted as Wilshire's agent in forwarding repossession of the vehicle, PAR, like the non-signatories in *Letizia* and *Herrera*, can invoke the arbitration agreement as Wilshire's agent.

**C. PAR can enforce the arbitration agreement under the doctrine of equitable estoppel.**

In addition to invoking the Wilshire arbitration agreement as its agent, PAR can also invoke the right to arbitrate under the doctrine of equitable estoppel. Where a nonsignatory seeks to enforce an arbitration clause, the doctrine of equitable estoppel applies "when a signatory must rely on the terms of the written agreement in asserting its claims against the nonsignatory or the claims are intimately founded in and intertwined with the underlying contract. . . ." *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1128 (9th Cir. 2013) (internal quotations and citations omitted); *see also Allianz Glob. Risk U.S. Ins. Co. v. Gen. Elec. Co.*, 2010 WL 749876, at *3 (C.D. Cal. Mar. 1, 2010).

"Equitable estoppel 'precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes.'" *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006) (quoting *Wash. Mut. Fin. Group, LLC v. Bailey*, 364 F.3d 260, 267 (5th Cir. 2004)). "This rule reflects the policy that a plaintiff may not, 'on the one hand, seek to hold the non-signatory liable pursuant to duties imposed by the agreement, which contains an arbitration provision, but, on the other hand, deny arbitration's applicability because the defendant is a non-signatory.'" *Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1229 (9th Cir. 2013) (quoting *Goldman v. KPMG LLP*, 173 Cal. App. 4th 209, 220, 92 Cal. Rptr. 3d 534, 543 (2009)).

Here, Plaintiff's claims against PAR would not exist without the SA. According to Plaintiff, PAR "engaged in business and systematically accepted employment to locate and/or recover collateral in California, pursuant to written agreements with secured creditors under security agreements." (Compl. ¶ 15.) (Emphasis added.) Plaintiff admits that she "obtained a 'title' loan" for the repossessed vehicle and that, in connection with the loan, PAR was hired to forward the repossession of the vehicle. (*Id.* ¶ 1.) Plaintiff further admits that, following repossession of the vehicle, she paid $1,290.52 to "reinstate the contract [the SA], which included Par North's illegal repossession fees in the amount of $390." (*Id.* ¶ 5.) In the absence of the SA, none of the wrongful acts alleged in the Complaint would have occurred.

Additionally, Plaintiff's claims against PAR presume the existence of the SA because they arise solely from PAR's conduct in forwarding repossession of Plaintiff's vehicle. Plaintiff alleges that PAR is required to be licensed as a "repossession agency" under the Collateral Recovery Act, Bus. & Prof. Code § 7502.6 ("CRA"), and that PAR's conduct in connection with the repossession violated the FDCPA and the RFDCPA. Section 7502.6 of the CRA applies to

repossession agencies, defined by Bus. & Prof. Code § 7500.2 as "any person who, for any consideration whatsoever, engages in business or accepts employment to locate or recover collateral. . . ." Section 7500.1(e) defines "collateral" as "any specific vehicle, trailer, boat, recreational vehicle, motor home, appliance, or other property that is subject to a security agreement."

Plaintiff contends that, because the vehicle was collateral subject to the SA, PAR was required to be licensed as a repossession agency. Plaintiff would have no cognizable claims against PAR without relying upon the SA, as her claims rest upon the assumption that the vehicle was collateral subject to a security agreement. Accordingly, Plaintiff is estopped from avoiding the arbitration provision contained within the very contract upon which her claims rest.

Courts in this district have applied the equitable estoppel doctrine under circumstances analogous to those in this case. *See, e.g.*, *Labajo v. First Int'l Bank & Trust*, 2014 WL 4090527, at *6 (C.D. Cal. July 9, 2014) (non-signatories are permitted to seek arbitration when signatories' claims against non-signatories arise from and relate to agreement containing arbitration provision); *Rodriguez v. Shen Zhen New World I LLC*, 2014 WL 908464, at *6 (C.D. Cal. Mar. 6, 2014) (same); *Allianz*, 2010 WL 749876, at *3 (signatory was equitably estopped from refusing to arbitrate under its own contractual arbitration clause when the nonsignatory's claims against the signatory were intertwined with contract containing arbitration clause).

**D. The dispute between Plaintiff and PAR falls within the scope of the arbitration agreement.**

"In deciding whether a particular claim comes within the scope of an arbitration agreement, allegations in a complaint 'need only "touch matters" covered by the contract containing the arbitration clause and all doubts are to be resolved in favor of arbitrability.'" *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721

(9th Cir. 1999). "[A]n order to arbitrate [a] particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs., Inc. v. Comm's Workers of Am.*, 475 U.S. 643, 650 (1986).

The arbitration provision of the SA states in pertinent part:

> The term "Dispute" means any action, dispute, claim, or controversy of any kind arising out of, in connection with or in any way related to the Agreement, financing, contracts, origination, **servicing, collection**, reporting or any other aspect whatsoever of the past, present, or future relationship or conduct of the Parties. The term "Dispute," includes without limitation: claims under **federal or state consumer protection laws**, claims in tort or contract, **claims under statutes or common law**, claims at law or in equity, any other past, present or future claims, counterclaims, cross-claims, third party claims, interpleaders or otherwise.

(SA p. 3.) (Emphasis added.)

The language "arising in connection with" a contract "reaches every dispute between the parties having a significant relationship to the contract and all disputes having their origin or genesis in the contract." *Simula*, 175 F.3d at 721. Plaintiff's claims against PAR concerning the vehicle repossession are claims "arising out of" the SA and concerning the "servicing" of and "collection" under the SA. Moreover, Plaintiff's claims constitute a dispute based on "federal or state consumer protection laws" and "statutes or common law." Accordingly, Plaintiff's claims against PAR fall within the scope of the arbitration provision.[4]

**E. PAR has not waived its right to arbitrate.**

A court may refuse to compel arbitration if a party has waived its right to arbitrate, but "[w]aiver of a contractual right to arbitration is not favored."

---

[4] To the extent there is any question about whether Plaintiff's claims fall within the scope of the arbitration provision (which there is not), the arbitration provision specifically mandates that the arbitrator shall determine the scope of the provision and resolve any questions of arbitrability. (SA p. 3.)

*Fisher v. A.G. Becker Paribas Inc.*, 791 F.2d 691, 694 (9th Cir. 1986) (quoting *Lake Communications, Inc. v. ICC Corp.*, 738 F.2d 1473, 1477 (9th Cir. 1984), *overruled on other grounds*; *Shinto Shipping Co., Ltd. v. Fibrex & Shipping Co.*, 572 F.2d 1328, 1330 (9th Cir. 1978)). "Any examination of whether the right to compel arbitration has been waived must be conducted in light of the strong federal policy favoring enforcement of arbitration agreements." *Id.* Because waiver of the right to arbitrate is disfavored, "any party arguing waiver of arbitration bears a heavy burden of proof." *United States v. Park Place Assocs., Ltd.*, 563 F.3d 907, 921 (9th Cir. 2009) (quoting *Van Ness Townhouses v. Mar Indus. Corp.*, 862 F.2d 754, 758 (9th Cir. 1988)). To demonstrate waiver, a party must show: "(1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts." *Martin v. Yasuda*, 829 F.3d 1118, 1124 (9th Cir. 2016) (quoting *Fisher*, 791 F.2d at 694).

Here, Plaintiff — who until recently was the only party in possession of the SA — waited 11 months after defense document requests to produce it. Accordingly, PAR did not know about its right to seek arbitration until recently. (Bradley Decl. ¶ 14.) Courts in this Circuit have held that a party does not waive its right to arbitrate when it does not know about the right to arbitrate. *See, e.g., Clyde Bergemann, Inc. v. Sullivan, Higgins & Brion*, 2008 WL 4279632, at *2 (D. Or. Sept. 18, 2008) (holding that where defendants moved to compel arbitration shortly after plaintiff produced contract containing agreement to arbitrate, defendants did not waive their right to arbitrate).

Plaintiff PAR issued written discovery requests to Plaintiff on January 4, 2016, in which PAR requested copies of all documents relating to her claim, which include the SA. (Bradley Decl. ¶ 3.) For the next **10 months**, PAR's counsel engaged in extensive meet and confer efforts to obtain documents and information

from Plaintiff. (*Id.* ¶¶ 4-11.) After PAR issued its initial discovery requests, Plaintiff waited until one day before they were due to request a 60-day extension on her time to respond. (*Id.* ¶ 4.) PAR agreed to a 30-day extension, to March 7, 2016. (*Id.*) Plaintiff then requested another 30-day extension. (*Id.* ¶ 5.) PAR agreed to a 15-day extension, to March 22, 2016. (*Id.*) On March 22, Plaintiff served her initial responses, which consisted of rote objections. (*Id.* ¶ 6.) Plaintiff produced no documents. (*Id.*)

Over the next several months, PAR's counsel exchanged meet and confer correspondence and held numerous conferences to fulfill their obligations under L.R. 37-1 and try to reach agreement on Plaintiff's production. (*Id.* ¶¶ 4-11.) Following these communications, on May 31, 2016, Plaintiff's counsel agreed to produce documents as soon as possible, yet no documents were produced. (*Id.* ¶ 9.) From June through August 2016, PAR's counsel continued to meet and confer with Plaintiff's counsel to try to get some documents or information relating to Plaintiff's claims. (*Id.* ¶ 10.) After multiple calls and correspondence, Plaintiff finally agreed to supplement her discovery responses by August 1, 2016. (*Id.* ¶ 11.) Plaintiff requested additional extensions, and because of the delays, PAR agreed to stipulate to a continuance on discovery. (*Id.*) Finally, after **11 months** of efforts by PAR's counsel, Plaintiff finally produced documents, including the SA, on **November 29, 2016**. (*Id.* ¶¶ 13-14.) Only thereafter did PAR discover that the SA contained an arbitration provision that encompassed Plaintiff's claims against PAR. (*Id.* ¶ 14.) Notably, Plaintiff has not named Wilshire as a defendant. In her Complaint, Plaintiff goes out of her way to avoid discussing the specific terms of the SA. (Compl. ¶ 1.) Plaintiff was likely aware of the implications of the arbitration agreement and class waiver provision contained in the SA and avoided producing the agreement for that reason. Despite PAR's best efforts, it did not

receive a copy of the SA containing the arbitration agreement and class waiver provision until just two months ago.

Second, the Court should compel arbitration because PAR has not taken any steps inconsistent with its right to arbitrate after it received and evaluated the SA. While PAR filed a motion to dismiss for failure to state a claim and has engaged in some discovery, nearly all of PAR's actions took place before Plaintiff produced the SA. Moreover, the Ninth Circuit has rejected the argument that the mere filing of a motion to dismiss or engaging in some discovery is sufficient to waive the right to arbitrate. *See Sovak v. Chugai Pharm. Co.*, 280 F.3d 1266, 1270 (9th Cir. 2002) (holding that filing of motion to dismiss does not waive right to arbitrate); *Lake Comm'ns.*, 738 F.2d at 1270 (9th Cir. 1984) (holding that engaging in limited discovery, including deposition of president of party opposing arbitration, does not waive right to arbitrate); *Robinson v. Delicious Vinyl Records Inc.*, 2014 WL 5332837, at *5 (C.D. Cal. Oct. 20, 2014) (holding that filing motion to dismiss and answer does not waive right to arbitrate). And although PAR has filed a motion for summary judgment, that filing preceded Plaintiff's production of the SA and PAR has now withdrawn the summary judgment motion without prejudice to its renewal after an arbitration decision and the close of fact and expert discovery.[5] (*See* Notice of Withdrawal, filed concurrently herewith.) *See also AZ Holding, L.L.C. v. Frederick*, 2010 WL 500443, at *7 (D. Ariz. Feb. 10, 2010) (granting

---

[5] Courts routinely grant parties' requests to withdraw motions for summary judgment without prejudice to their right to resubmit their motions pending the completion of discovery, settlement approval or some other intervening motion. *See, e.g.*, *Nw. Aluminum Co. v. Hydro Aluminium Deutschland*, 2004 WL 1149366, at *1 (D. Or. May 20, 2004) (granting a litigant's motion to withdraw its motion for summary judgment and preserving its right to resubmit the motion pending court approval of a settlement agreement); *Shepard v. Cohen*, 2015 WL 2380810, at *1 (E.D. Cal. May 18, 2015) (granting a litigant's motion to withdraw his opposition to the opposing parties' cross-motion for summary judgment and granting request for extension of time to file an amended opposition).

motion to compel arbitration after two years of litigation, where motion for summary judgment had been filed but not decided, and where new counsel for party seeking to compel arbitration learned of right to arbitrate and quickly moved to compel arbitration).

Here, with respect to discovery, nearly all of the depositions taken in the case were noticed and initiated by Plaintiff.[6] (Bradley Decl. ¶ 15.) Discovery is not yet complete, and the parties recently sought an extension of the discovery cut off and other deadlines, which the Court granted on December 20, 2016. [Dkt. 83.] PAR intends to file a motion to stay all discovery deadlines and proceedings pending the a decision on PAR's motion to compel.[7] PAR has chosen not to move forward with additional discovery, including Plaintiff's continued deposition, the deposition of the agent who conducted the repossession and the Rule 30(b)(6) deposition of Reliable.[8] Nearly all of PAR's pre-trial litigation activities, including filing

---

[6] While prior counsel for PAR began to take Plaintiff's deposition on December 14, 2016, PAR did so because the current discovery cut-off date of December 22 was imminent and PAR intended to ask Plaintiff to authenticate the SA during her deposition. (Bradley Decl. ¶ 16.) But in the middle of the deposition before PAR had a chance to go through documents with Plaintiff, Plaintiff lost her glasses and was unable to complete the deposition because she couldn't read small print. (*Id.* ¶ 17.) PAR thus obtained a Declaration from Wilshire to authenticate the SA. (*See* Schwartz Decl. ¶¶ 5, 6 and Ex. A.)

[7] With respect to a stay, Plaintiff's counsel so far has resisted a stipulation and PAR is engaging in meet and confer conferences with counsel for Plaintiff to fulfill PAR's obligations under L.R. 37-1. (Kimrey Decl. ¶¶ 7-13.) If PAR cannot resolve the parties' disputes, PAR will file its motion to stay as soon as allowable under the Local Rules, likely on or about February 3, 2017. Notably, PAR has been unable to find a published decision nationwide in which a stay was not granted while arbitrability was determined.

[8] PAR has taken this position because counsel for Plaintiff has informed counsel for PAR that if PAR continues Plaintiff's deposition and other depositions before the current February 3, 2017 discovery cut-off date, then Plaintiff will argue that continuing federal court discovery waives PAR's right to arbitrate. (Kimrey Decl.

dispositive motions and engaging in discovery, took place before Plaintiff revealed the right to arbitrate.[9] PAR's pre-trial activities do not amount to a waiver of its arbitration right. *See Britton v. Co-op Banking Grp.*, 916 F.2d 1405, 1413 (9th Cir. 1990) (defendant did not waive right to arbitration by engaging in litigation proceedings before moving to compel arbitration where plaintiff failed to show that defendant had knowledge of his right to compel arbitration before he moved to compel arbitration).

Third, the Court should compel arbitration because Plaintiff has not been prejudiced by any delay in seeking arbitration. Courts are reluctant to find prejudice particularly where, as here, Plaintiff filed and pursued litigation notwithstanding a clear obligation to arbitrate. *See, e.g. Fisher*, 791 F.2d at 698 (finding parties resisting arbitration cannot argue they were prejudiced by participating in discovery and other pre-trial proceedings because they knew they were obligated to arbitrate their claims). "[C]ourts will not find prejudice where the party opposing arbitration shows only that it incurred court costs and legal expenses, '[b]ecause merely participating in litigation, by itself, does not result in a waiver.'" *Willick v. Napoli Bern Ripka & Assocs., LLP*, 2015 WL 12765469 (C.D. Cal. Aug. 20, 2015) (quoting *St. Agnes Med. Ctr. v. PacifiCare of Cal.*, 31 Cal.4th 1187, 1203 (Cal. 2003)); *see also Big Picture Grp. LLC v. Pate*, 2014 WL 12561617, at *4 (C.D. Cal. Sept. 10, 2014) (attorney's fees incurred by non-

---

¶ 15.) In the unlikely event that Court denies PAR's motion to compel, the Court should allow PAR to complete written and oral discovery.

[9] PAR intends to move forward with mediation in good faith on February 22, 2017. (Kimrey Decl. ¶ 15.) An attempt to resolve litigation, however, does not constitute a waiver of the right to arbitrate. *See Madrigal v. New Cingular Wireless Servs., Inc.*, 2009 WL 2513478, at *9 (E.D. Cal. Aug. 17, 2009) (noting that agreeing to mediation does not waive party's right to arbitrate); *see also Walker v. J.C. Bradford & Co.*, 938 F.2d 575, 578 (5th Cir. 1991) "(Attempts at settlement . . . are not inconsistent with an inclination to arbitrate and do not preclude the exercise of a right to arbitration").

moving party were insufficient to show prejudice precluding future arbitration). Here, PAR has sought to compel arbitration only two months after Plaintiff produced the SA. From the time Plaintiff produced the SA to now (which included the intervening holidays and PAR's substitution of in-house and outside counsel), relatively nothing has happened in the case.

Further, the fact that a non-moving party has filed or responded to dispositive motions or participated in discovery is similarly insufficient to demonstrate prejudice. *See, e.g.*, *Brown v. Dillard's, Inc.*, 430 F.3d 1004, 1012 (9th Cir. 2005) (finding no prejudice to the non-moving party even after moving party filed a motion to dismiss and sought discovery); *Sovak*, 280 F. 3d at 1270 (plaintiff failed to prove prejudice resulting from defendant's filing of a motion to dismiss for failure to state a claim); *Robinson*, 2014 WL 5332837 at *5 (no prejudice to non-moving party, even though moving party filed responsive pleadings and a motion to dismiss, because moving party did not file counterclaim or seek arbitration on eve of trial).

Prejudice may exist "where the petitioning party used the judicial discovery processes to gain information about the other side's case that could not have been gained in arbitration; where a party unduly delayed and waited until the eve of trial to seek arbitration; or where the lengthy delays associated with the petitioning party's attempts to litigate resulted in lost evidence." *St. Agnes*, 82 P.3d at 738. But none of the prejudicial factors set forth in *St. Agnes* is present in this case. Here, the parties have participated equally in the discovery process. No party has gained an unfair evidentiary advantage, and there is no risk of lost evidence. Plaintiff cannot demonstrate how her legal position has been damaged by any delay in PAR's request for arbitration. *See, e.g.*, *Brownstone Invest. Group, LLC v. Levy*, 514 F. Supp. 2d 536, 551 (S.D.N.Y. 2007) (granting motion to compel arbitration and finding that pretrial expense and delay, without more, do not constitute

prejudice and noting prejudice is only found were, for example, a party's legal position is damaged by the opposing party's delay in moving for arbitration). In fact, Plaintiff may have benefitted from any delay in arbitration because she was able to obtain information on her putative class claims that she would not be entitled to in arbitration.[10]

Additionally, as discussed above, PAR was not aware of the arbitration provision because Plaintiff failed to produce the SA until just two months ago. Any "prejudice" Plaintiff may argue she will suffer if this Court orders arbitration was caused solely by her own refusal to produce the SA.[11] Moreover, Plaintiff — who was the only party who knew of the right to arbitrate — should have filed her claims in arbitration, not in litigation. To the extent she expended costs or time litigating her claims, she has only herself to blame. *See Fisher*, 791 F.2d at 698 (noting that to the extent parties resisting arbitration claim prejudice because they expended time and expense litigating her claims, that "wound was self-inflicted" because parties knew they were required to arbitrate their claims); *see also Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1126 (9th Cir. 2008) (noting that any alleged costs and delay suffered by party resisting arbitration is attributable to itself, because it could have avoided those costs by seeking arbitration rather than litigation); *Olson v. Harland Clark Corp.*, 2012 WL 1821390, at *2 (W.D. Wash. May 18, 2012 (holding plaintiff resisting arbitration was not prejudiced by

---

[10] Among other things, Plaintiff has requested and obtained information relating to the potential size of the class and class damages, including the number of repossessions forwarded by PAR from March 28, 2011 through March 28, 2015 and the financial information related to those repossessions. (Bradley Decl. ¶ 19.) Given the class waiver provision in the SA, Plaintiff would not have been entitled to this information in arbitration.

[11] While Plaintiff identified the existence of the SA in her January 2016 Rule 26(a)(1) disclosures (*see* Bradley Decl. ¶ 12), rather than listing the contract as a line item, Plaintiff should have produced the actual contract.

11 months of litigation because plaintiff could have requested arbitration at the outset, thereby avoiding waste of time and money).

As noted above, Plaintiff waited **11 months** to produce the SA in response to defense document requests, notwithstanding PAR's counsel's numerous efforts to obtain it. (Bradley Decl. ¶¶ 4-14.) Plaintiff cannot claim prejudice, because any delay in filing the instant motion was the result of her own actions.

**F. Plaintiff's claims must be arbitrated on an individual basis and not as a class action.**

The Court must enforce the arbitration agreement as written, including its explicit language requiring arbitration on an individual, non-class basis. *See Ferguson v. Corinthian Colls., Inc.*, 733 F.3d 928, 932 (9th Cir. 2013); *Stolt-Nielson S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 670 (2010) (holding that the FAA requires that class arbitration may only be ordered when the parties expressly agree to class arbitration). "[P]arties may agree to limit the issues subject to arbitration, to arbitrate according to specific rules, and to limit with whom a party will arbitrate its disputes." *AT&T Mobility v. Concepcion*, 131 S. Ct. 1746, 1748-49, 1753 (2011) (emphasis added) (citations omitted) (abrogating California law invalidating arbitration agreements that contain a class action waiver because the law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" in establishing the FAA) (internal quotations and citations omitted).

Here, the arbitration agreement requires arbitration on an individual, non-class, basis. (*See* SA p. 3.) Pursuant to the FAA and controlling Supreme Court authority, Plaintiff therefore must arbitrate her claims on an individual, non-class basis.

**G. This action should be stayed pending arbitration.**

Finally, Section 3 of the FAA provides that, where a valid arbitration agreement requires a dispute to be submitted to binding arbitration, the district court shall stay the action "until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3; *see Collins v. Burlington N.R. Co.*, 867 F.2d 542, 545 (9th Cir. 1989) (remanding case where the district court failed to consider whether a stay was appropriate as a result of a binding arbitration agreement). Because Plaintiff must be compelled to arbitrate her claims, the instant action should be stayed pending completion of arbitration, with entry of a revised scheduling order in the unlikely event that arbitration is not enforced.

## V. CONCLUSION

For the foregoing reasons, PAR respectfully requests that the Court grant this Motion and enter an Order (1) directing Plaintiff to arbitrate her claims on an individual basis; and (2) staying this action pending completion of arbitration proceedings.

Dated: January 27, 2017

VEDDER PRICE (CA), LLP
BLAINE C. KIMREY
JEANAH PARK
CHRISTOPHER R. RAMOS

By: */s/ Christopher R. Ramos*
Christopher R. Ramos

*Attorneys for Defendant PAR, Inc.*

## CERTIFICATE OF SERVICE

I, hereby certify that on January 27, 2017, a copy of the foregoing **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT PAR, INC. DBA PAR NORTH AMERICA'S MOTION TO COMPEL ARBITRATION AND STAY ACTION** was filed electronically and served by U.S. Mail on anyone unable to accept electronic filing.

Notice of this filing will be sent by email to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's EM/ECF system.

*/s/ Christopher R. Ramos*