VEDDER PRICE (CA), LLP
CHRISTOPHER R. RAMOS (SB #301556)
cramos@vedderprice.com
1925 Century Park East, Suite 1900
Los Angeles, California 90067
T: +1 424 204 7700
F: +1 424 204 7702

VEDDER PRICE P.C.
BLAINE C. KIMREY *(Pro hac vice pending)*
bkimrey@vedderprice.com
JEANAH PARK *(Pro hac vice pending)*
jpark@vedderprice.com
222 North LaSalle Street
Chicago, Illinois 60601
T: +1 312 609 7500
F: +1 312 609 5005

*Attorneys for Defendant PAR, Inc.*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

BARBARA A. CLARK,

Plaintiff,

v.

PAR, INC. dba PAR NORTH AMERICA, COUNTRYWIDE TOWING, INC. dba RELIABLE RECOVERY SOLUTIONS, and DOES 1 through 10, inclusive,

Defendants.

Case No. 2:15-CV-02322 MWF (FFM)

**DECLARATION OF JOHN SCHWARTZ IN SUPPORT OF DEFENDANT PAR, INC. DBA PAR NORTH AMERICA'S MOTION TO COMPEL ARBITRATION AND STAY ACTION**

Hon. Michael W. Fitzgerald

Date: February 27, 2017
Time: 10:00 a.m.
Courtroom: 5A

Trial Date: September 26, 2017
Action Filed: March 28, 2015

# DECLARATION OF JOHN SCHWARTZ

I, John Schwartz, hereby declare and state as follows:

1. I am a Sr. Legal Analyst at Wilshire Consumer Credit, LLC ("Wilshire"). Wilshire is a privately-held financing company with its main office in Los Angeles, California. Wilshire is a wholly-owned subsidiary of Westlake Services, LLC.

2. I have worked for Wilshire for approximately 16 years. As relevant here, in connection with my employment, I support the Wilshire legal department in connection with litigation involving Wilshire, and I am authorized to provide this Declaration for Wilshire. I submit this declaration in support of PAR, Inc.'s Motion to Compel Arbitration and Stay Action in the above action.

3. In connection with my employment, I have personal knowledge of the general business practices of Wilshire with respect to the maintaining and accessing of Promissory Notes and Security Agreements ("SA") executed by Wilshire as well as accessing documents created and maintained within customer accounts. My responsibilities include identifying and accessing SAs and other documents contained within customer accounts in connection with litigation involving Wilshire, and I am authorized to provide this declaration for Wilshire. I have access to the business records relating to SAs and customer accounts.

4. The exhibits to this declaration are all true and correct business records created and maintained by Wilshire, or its affiliates, in the course of regularly conducted business activity, and as part of the regular practice of Wilshire to create and maintain such records, and also were made at the time of the act, transaction, occurrence or event, or within a reasonable time thereafter. The statements set forth in this declaration are true and correct to the best of my knowledge, information and belief. Except where based upon information provided by persons working under my direction and supervision, the statements contained herein are based on my

personal knowledge or review of Wilshire's records, including records pertaining to the SA identified in the above action. If called as a witness, I am competent to testify to the statements contained herein.

5. Wilshire's records reflect that Barbara A. Clark executed a Promissory Note and Security Agreement with Wilshire on July 1, 2013.

6. Attached as Exhibit A is true and correct copy of the SA signed by Barbara Clark.

I declare under penalty of perjury under the laws of the United States that the foregoing statements are true and correct.

Dated: January 27, 2017

John Schwartz

# EXHIBIT A

# CALIFORNIA PROMISSORY NOTE AND SECURITY AGREEMENT
## CONSUMER GOODS DIRECT – CONSUMER PURPOSE

| Name and Address of Lender | Name and Address of Borrower(s) |
|---|---|
| Wilshire Consumer Credit<br>4751 Wilshire Blvd, Ste 100 - CA<br>Los Angeles, CA 90010 | Barbara Arlene Clark<br>5807 Topanga Canyon Blvd. #F<br>Woodland Hills, CA 91367 |

CA License No. License #: 603-8329

Loan No. 20188335 Loan Date: 07/01/2013

PAID

**FEDERAL TRUTH IN LENDING ACT DISCLOSURES**

| ANNUAL PERCENTAGE RATE<br>The cost of any credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost me. | AMOUNT FINANCED<br>The amount of credit provided to me or on my behalf. | TOTAL OF PAYMENTS<br>The amount I will have paid after I have made all scheduled payments. |
|---|---|---|---|
| 79.99% | $6389.82 | $3020.90 | $9410.72 |

All numerical disclosures except the Amount Financed and the late payment disclosure are estimates.

**My Payment Schedule will be:**

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 44 | $213.88 | Monthly, beginning 08/01/2013 |
| | | |

**SECURITY:** I am giving you a security interest in the motor vehicle described in the "Vehicle Description" section below.
**LATE PAYMENT:** If any portion of my payment is more than 10 days late, you will charge me $10.00.
**PREPAYMENT:** If I pay off my loan early, I will not have to pay a penalty, and I will not be entitled to a refund of part of the finance charge. I may refer to my contract documents for any additional information about nonpayment, default, any repayment in full before the scheduled date, and prepayment refunds and penalties.

The Annual Percentage Rate, Amount Financed and Payment Schedule shown above are part of this Promissory Note and Security Agreement ("Agreement"). In this Agreement, the words "I," "me" and "my" mean the Borrower and any Co-Signer who signs it, individually and together. The words "you," "your" and "Lender" mean the Lender named above.

**PROMISE TO PAY:** I promise to pay the Lender the principal amount of $3020.90 U.S. (the Amount Financed plus any Prepaid Finance Charge) plus interest at the rate of 78.00 % per year on the unpaid Amount Financed until paid in full. I agree to make payments each month as described in the Payment Schedule above. I agree to pay all other amounts which may become due under this Agreement. I will send my payments to Wilshire Commercial Capital, L.L.C. dba Wilshire Consumer Credit, P.O. Box 76809, Los Angeles, CA 90076-0809.

**PREPAYMENT:** I may pay all or any part of the unpaid balance on this loan at any time without any penalty. Any partial payment will be applied to the principal of the loan and will not be credited against my next payment(s) due. Prepayment of this loan in full may reduce the insurance charge of the loan, if applicable. If I prepay this loan in full, I will not receive a refund of the Administrative Fee.

**OTHER CHARGES: (1) Administrative Fee.** I agree to pay you a non-refundable administrative fee of $75.00. I agree that I will not be entitled to a refund of any part of the Administrative Fee if I pay off this loan early. **(2) Late Fee.** If any portion of my payment (other than a late fee that you charged on a previous late payment) is more than 10 days past due, I will pay you $10. I will not be charged a late fee more than once for the same payment. **(3) Returned Check Fee.** If permitted by applicable law, I agree to pay you a returned check fee of $15 if I make a payment with a check that is dishonored by the drawee.

**SECURITY AGREEMENT:** To secure payment of all sums due and the performance of all required obligations under this Agreement, I give you a security interest in the motor vehicle (Vehicle) described below. I also give a security interest in any substitution, in whole or in part, for the Vehicle or its substitute including insurance proceeds.

The within instrument or agreement is pledged as collateral to Wells Fargo Preferred Capital, Inc.

| ITEMIZATION OF AMOUNT FINANCED | |
|---|---|
| Amount Given to Me Directly | 1. $3,000.00 |
| **Amount Paid to Others on My Behalf*** | |
| Amount Paid on My Account | 2. |
| Pay Off to | 3. $0.00 |
| Motor Vehicle Fee to wcc f/b/o trivin | 4. $20.90 |
| Property Insurance to | 5. $0.00 |
| Check to | 6. $0.00 |
| **TOTAL AMOUNT FINANCED** (SUM OF 1 THROUGH 6 ABOVE) | $3020.90 |
| Administrative Fee to Lender (Prepaid Finance Charge) | $75.00 |

* Lender may retain a portion of these amounts.

**VEHICLE DESCRIPTION**

| YEAR | MAKE | MODEL | LICENSE NO. | NO. CYL. | BODY TYPE | COLOR | VEHICLE IDENTIFICATION NO. |
|---|---|---|---|---|---|---|---|
| 2004 | Chrysler | Town & Country | 5FFR674 | V6, 3.8 Liter | Van | Silver | 2C8GP54L24R509660 |

**PROPERTY INSURANCE:** I will insure the Vehicle as described in Section G of this Agreement. I may choose the person through whom insurance is obtained, subject to your reasonable approval, against loss or damage to the Vehicle and against liability arising from my use or ownership of the Vehicle. If I get insurance from or through you, it will cost me $0.00. I also promise to keep the Vehicle insured for as long as I owe you any money under this Agreement.

I have not requested confidentiality of my residence address and by signing this Agreement, I waive the provisions of Section 1808.21 of the California Vehicle Code. I authorize the Department of Motor Vehicles to furnish my current address to the holder of this Agreement until it is paid in full.

**FOR INFORMATION CONTACT THE DEPARTMENT OF CORPORATIONS, STATE OF CALIFORNIA.**

**THE ADDITIONAL PROVISIONS ON THE REMAINING PAGES ARE PART OF THIS AGREEMENT, BORROWER AND CO-SIGNER ACKNOWLEDGE RECEIPT OF A COMPLETELY FILLED-IN COPY OF THIS AGREEMENT AND I HAVE RECEIVED A COPY OF ALL DOCUMENTS SIGNED DURING CONTRACT NEGOTIATIONS.**

I agree to be legally bound by all the terms and conditions of this Agreement. I guarantee that my signature and the signature of any Co-Signer or Co-Owner is genuine.

**CHECK APPLICABLE STATEMENT AND INITIAL.**

☐ Borrower acknowledges that no person has performed any act as a broker in connection with the making of this loan. Borrower agrees to be legally bound by all the terms and conditions of this Agreement. B

☐ Borrower acknowledges that (1) a broker has performed services in connection with the making of this loan, and (2) receipt of a separate disclosure from the broker of the fee for performing these services. ______

Barbara Clark 7/1/13
Borrower's Signature Date

Borrower's Signature Date

**CO-OWNER'S SECURITY AGREEMENT**

The Co-Owner, together with the Borrower, gives the Lender a security interest in the Vehicle. Co-Owner agrees to the terms of the Security Agreement and all other parts of this Agreement except the "PROMISE TO PAY", "PREPAYMENT" and "OTHER CHARGES" sections. Co-Owner assumes no personal obligation to pay this loan.

Co-Owner's Name

Co-Owner's Signature Date

Initials: B

WCC CA v1.2

## ADDITIONAL TERMS AND CONDITIONS

**A. HOW THE TOTAL OF PAYMENTS IS COMPUTED:** The Total of Payments is the sum of the Amount Financed and the Finance Charge. The Finance Charge includes, but may not be limited to, interest computed daily on the outstanding balance of the Amount Financed plus an administrative fee and any other finance charges disclosed. The Finance Charge and Payment Schedule, shown in the federal Truth-in-Lending Disclosure, on the front side of this Agreement, are estimates based on the assumption that each payment will be made on its due date. Since interest is calculated on a daily basis, late payments will result in additional interest and early payments will result in less interest.

**B. INTEREST:** You will charge interest on a daily basis on the outstanding balance subject to interest on each day. The daily interest rate is equal to the yearly rate divided by the number of days in the calendar year.

**C. APPLICATION OF PAYMENTS:** You will apply my first payment to the Administrative Fee. You will apply the rest of my first payment, if any, and the remaining payments in the following order of priority: interest, Late Charges, Returned Check Fees, and then to principal. All payments will be applied to scheduled payments in the order in which they become due.

**D. FEES AND CHARGES:** Fees and charges payable in connection with this loan are disclosed in the "Itemization of Amount Financed" and "Other Charges" section on the front side of this Agreement. The Administrative Fee is non-refundable.

**E. BORROWER'S PROMISES ABOUT LENDER'S SECURITY INTEREST:** I will not permit anyone other than you to obtain a security interest or other rights to the Vehicle. I will pay all filing fees necessary for you to obtain and maintain your security interest in the Vehicle. I will assist you in having your security interest noted on the Certificate of Title to the Vehicle. I will not sell or give away the Vehicle. If someone puts a lien on the Vehicle, I will pay the obligation and clear the lien.

**F. BORROWER'S PROMISES ABOUT THE VEHICLE:** I will keep the Vehicle in good condition and repair. I will pay all taxes and charges on the Vehicle. I will pay all costs of maintaining the Vehicle. I will not abuse the Vehicle or permit anything to be done to the Vehicle which will reduce its value, other than for normal wear and use. I will not use the Vehicle for illegal purposes or for hire or lease. I will not move the Vehicle from my address shown on the front of this Agreement to a new permanent place of garaging without notifying you in advance. I will let you inspect the Vehicle upon reasonable notice.

**G. BORROWER'S PROMISES ABOUT INSURANCE:** I will keep the Vehicle insured against fire, theft and collision until all sums due you are paid in full. The insurance coverage must be satisfactory to you with a minimum deductible of $1,000, and protect my interest and your interests at the time of any insured loss. The insurance policy must name you as "loss-payee." The insurance must be written by an insurance company licensed to sell insurance in the state where the Vehicle is permanently garaged. The insurance policy must provide you with at least 10 days prior to written notice of any cancellation or reduction in coverage. On request, I must deliver the policy or other evidence of insurance coverage to you.

In the event of any loss or damage to the Vehicle, I will immediately notify you in writing and file a proof of loss with the insurer. You may file a proof of loss on my behalf if I fail or refuse to do so. You may endorse my name to any check, draft or other instrument you receive in payment of an insured loss or return insurance premiums. You may apply any insurance proceeds you receive to repair or replace the Vehicle if, in your opinion, it is economically feasible and I am not then in default under this Agreement. Otherwise, you will apply the insurance proceeds to reduce the unpaid balance due you.

**H. LENDER'S RIGHTS IF I BREAK MY PROMISES ABOUT THE SECURITY INTEREST, VEHICLE OR INSURANCE:** If I fail to pay the filing fees, taxes, or amounts necessary to keep the Vehicle in good condition and repair, you may, if you choose, advance the sums necessary to protect your interest.
If I fail to keep in force the required insurance and/or fail to provide evidence of such insurance to you, you may notify me that I should purchase the required insurance at my expense. If I fail to purchase the insurance within the time stated in the notice and/or fail to provide evidence of such insurance to you, you may purchase coverage under a Lender's Collateral Protection Policy to protect your interest in the balance due under this Agreement, to the extent permitted by applicable law, and charge me the cost of the premiums and any other amounts you incur in purchasing the insurance. THE INSURANCE YOU PURCHASE MAY BE SIGNIFICANTLY MORE EXPENSIVE AND PROVIDE ME LESS COVERAGE THAN INSURANCE I COULD PURCHASE MYSELF. If permitted by applicable law, any sums you advance will be payable by me, as you alone may direct.
If you advance any amounts on my behalf, it will not cure my default. The rights stated in this section are in addition to your rights stated in other sections of this Agreement for my failure to keep my promises to you.

You may receive reasonable compensation for the services which you provide in obtaining any required insurance on my behalf. In certain states, the required insurance may be obtained through a licensed insurance agency affiliated with you. This agency will receive a fee for providing the required insurance. In addition, an affiliate may be responsible for some or all of the underlying insurance risks and may receive compensation for assuming such risks.

**I. DEFAULT:** I will be in "Default" on this Agreement if any one or more of the following things happen:

(1) I do not make any payment on or before the day it is due;

(2) I do not keep any promises made in this Agreement;

(3) I do not keep any promise I made in another contract, note, loan or agreement with you;

(4) I committed any forgery in connection with this Agreement;

(5) The Vehicle is lost, stolen, destroyed or damaged beyond economical repair, and not fixed or found within a reasonable time;

(6) I take the Vehicle outside the United States without your written consent;

(7) I file bankruptcy or insolvency proceedings, or anyone files bankruptcy or insolvency proceedings against me;

(8) I do something that causes the Vehicle to be subject to confiscation by government authorities;

(9) I use the Vehicle or allow someone else to use it in a way that causes it not to be covered by insurance,

(10) Another creditor tries to take the Vehicle by legal process, or

(11) I die, am convicted of a crime involving fraud or dishonesty, or am found by a court with valid jurisdiction to be incapacitated.

**J. YOUR RIGHTS IF I AM IN DEFAULT OF THIS AGREEMENT:** If I am in Default of this Agreement, you may enforce your rights according to law. You may also do the things specifically mentioned in this Agreement. As permitted by applicable law and subject to any required notice, you may do one of these things and at the same time or later do another. Some of the things you may do are the following:

(1) Acceleration: You can demand that I pay to you the entire unpaid balance owing on the Agreement and all unpaid Finance Charges and other money due. I agree that I will pay this money to you in one single payment immediately upon receiving your demand.

(2) Repossession: You can repossess the Vehicle, unless prohibited by law. You can do this yourself, have a qualified person do it for you, or have a government official (by replevin) do it for you. I agree that you can peaceably come on to my property to do this. Subject to the notice and inventory requirements provided by applicable law, you may take any personal property found in the Vehicle, but will return these things to me if I ask. If I want these things back, I agree to reclaim them within 60 days. If I do not reclaim my things within the time for doing so, I give up my claim to them. I agree that you may use my license plates to repossess the Vehicle and take it to a place for storage.

(3) Voluntary Delivery: You can ask me to give you the Vehicle at a reasonable convenient place. I agree to give you the Vehicle if you ask.

(4) Delay in Enforcement: You can delay in doing any of these things without losing any rights.

**K. SOME THINGS I SHOULD KNOW IF THE LENDER REPOSSESSES THE VEHICLE:** If you repossess without using a governmental official:

(1) Notice: You will send me a notice that tells me how to buy back (redeem) the Vehicle. Subject to the limitations of California law, I may also have the right to reinstate the Agreement by paying only the delinquent installments, satisfying all liens that I have allowed to be placed on the Vehicle, or obtaining insurance, as the case may be, and by paying your costs of repossession, as described below. The notice you send me will tell me other information required by law.

(2) Redemption: I have the right to buy back (redeem) the Vehicle at any time before you sell the Vehicle. If I do not redeem, I give up all claims to the Vehicle.

(3) Sale: If I do not redeem, you will sell the Vehicle. The money received at sale will be used to pay costs and expenses I owe, and then to pay the amount I owe on the Agreement.

(4) Surplus or Deficiency: If there is money left, you will pay it to the Borrower. If there is not enough money from the sale to pay what I owe, Borrower and Co-Signer agree to pay what is still owed to you.

(5) Expenses: I agree to pay the actual and necessary fees, not in excess of $500, of repossessing the Vehicle, and the costs of storing, repairing, preparing for sale and selling the Vehicle as may be allowed by law.

**L. COMMUNICATIONS CONCERNING DISPUTED DEBTS:** All communications concerning disputed debts, including any payments made by check and marked "payment in full" or with other restrictive endorsements or notices, tendered as full satisfaction of my balance must be sent to: **Wilshire Consumer Credit, 4751 Wilshire Blvd., Suite 100, Los Angeles, CA 90010.** I WILL NOT SEND COMMUNICATIONS CONCERNING DISPUTED DEBTS TO THE PLACE WHERE I SEND REGULAR MONTHLY PAYMENTS.

**M. COLLECTION COSTS:** I may have to pay you reasonable collection costs, including, but not limited to, attorney's fees, court costs, collection agency fee, and fees for other reasonable collection efforts, to the extent permitted by law.

**N. TIME OF THE ESSENCE:** Time is of the essence with respect to all provisions of this Agreement.

**O. NOTICE AND CHANGE OF ADDRESS Any notice you send me concerning this Agreement or the Vehicle will be sent to my current mailing address as shown in your records. I will notify you if my mailing address changes within a reasonable time. Unless otherwise required by applicable law, you may send notices to me by regular mail. Any notice I send or deliver to you concerning this Agreement must be in writing and must be sent or delivered to Wilshire Consumer Credit, 4751 Wilshire Blvd. Suite 100, Los Angeles, CA 90010, (800) 589-0290, or to any other address you may later specify.**

**P. CONTINUED EFFECTIVENESS.** If any part of this Agreement is determined by a court to be invalid, the rest will remain in effect.

**Q. ASSIGNMENT:** I may not assign or other transfer my rights under this Agreement to anyone else. You may sell, transfer or assign this Agreement, and any security agreement given to secure this Agreement, and my rights and obligations under this Agreement will continue unchanged.

**R. HEIRS AND PERSONAL REPRESENTATIVES BOUND.** The provisions of this Agreement will be binding upon the Borrower, Co-Signer and Co-Owner, individually and together, and the heirs and personal representatives of each.

**S. GOVERNING LAW PROVISION:** This loan is made pursuant to the California Finance Lenders law, Division 9 of the Financial Code, Ca. Fin. Code §§ 22000 et seq. This Agreement and its validity, construction, and enforceability will be governed by the laws of California, except to the extent that such laws have been preempted or superseded by federal law.

**T. NOTICE** - IF A SUBSTANTIAL PORTION OF THE PROCEEDS OF THIS LOAN IS USED FOR THE PURCHASE OF CONSUMER GOODS, ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST SELLER OF GOODS OR SERVICES OBTAINED WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

**U. ENTIRE AGREEMENT:** The terms and conditions set forth in this Agreement constitute the entire agreement between me and Lender.

**Initials:** [signature]

## MANDATORY ARBITRATION AGREEMENT

**1. Mandatory Arbitration:** Unless otherwise stated in this Agreement, any "Dispute" between the Borrower, Co-Signer, Co-Owner, Lender or Lender's Assignee ("the Parties") shall be resolved by a neutral, binding arbitration, and not by a court of law. This procedure includes any Dispute over the interpretation, scope, or validity of this Agreement, the arbitration agreement or the arbitrability of any issue, with the sole exception of the Parties' waiver of any right to bring a class action or to participate in a class action as provided under paragraph 7 shall be solely determined by the appropriate court, if necessary. The arbitration agreement applies to the Parties, including their respective employees or agents, as to all matters which arise out of or relate to this Agreement or any resulting transaction or relationship.

**2. Dispute:** The term "Dispute" means any action, dispute, claim, or controversy of any kind arising out of, in connection with or in any way related to the Agreement, financing, contracts, origination, servicing, collection, reporting, or any other aspect whatsoever of the past, present, or future relationship or conduct of the Parties. The term "Dispute," includes without limitation: claims under federal or state consumer protection laws, claims in tort or contract, claims under statutes or common law, claims at law or in equity; any other past, present or future claims, counterclaims, cross-claims, third party claims, interpleaders or otherwise.

**3. Facts about Arbitration:** Arbitration is a process in which a neutral arbitrator decides a dispute instead of a judge or jury. Each side has an opportunity to present evidence to the arbitrator. A Party's ability to discover things may be limited. Arbitration proceedings are private and less formal than court trials. Other rights that the Parties might have in court might not be available in arbitration. An arbitrator issues an award. A court may then enforce the award like a court judgment. Courts rarely overturn an arbitrator's award.

**4. Rules:** Written notice shall be given for any Dispute. Such notice shall be given by certified mail, return receipt requested. Notice to the Borrower shall be sent to the Borrower's address in the Agreement. Notice to the Lender or Lender's Assignee shall be sent to WILSHIRE CONSUMER CREDIT LLC., P.O. BOX 76809, LOS ANGELES, CA 90076-0809. The Party initiating the arbitration shall set forth in the notice the nature and factual basis of the Dispute, the names and addresses of all other Parties, the amount involved, and the specific relief requested. The Party responding to such a notice may answer and similarly set forth any counterclaims. The arbitration will be conducted by one neutral and impartial arbitrator mutually agreed upon by the Parties. The arbitrator shall be an attorney or retired judge. In the event the Parties cannot agree on an arbitrator, the Parties agree that an arbitrator may be appointed by a court in accordance with the Federal Arbitration Act (9 U.S.C. §1, *et seq.*). The arbitrator may conduct all necessary preliminary proceedings, provide for the exchange of information and/or discovery, and set the time, date and place of any hearing, after reasonable notice to and consultation with the Parties. The award shall be issued without a written opinion no later than 30 days from the date any hearing is completed.

**5. Standards and Law:** The Parties agree that the Agreement involves interstate commerce and that this arbitration agreement is governed by the Federal Arbitration Act, 9 U.S.C. Sections 1 through 16 as amended ("FAA"). The arbitrator shall strictly apply applicable substantive law and applicable statutes of limitation consistent with the FAA and shall honor claims of privilege recognized at law.

**6. Jury Trial Waiver:** The Parties hereby agree to give up their respective rights to a trial by a jury.

**7. Class Action Waiver:** The Parties agree to give up any rights they may have to bring a class action lawsuit or class arbitration, or to participate in either as a claimant. The Parties agree to give up any right to consolidate or join any arbitration proceeding with the arbitration of others. The Parties give up the right to serve as a private attorney general in any jurisdiction in which such procedure might be permitted. To the extent the Parties are permitted to file small claims under paragraph 11, the Parties agree that any small claim may only be brought on an individual basis and that no small claim may be brought on a class or representative basis.

**8. Punitive Damage Waiver:** The Parties waive any right to seek or recover punitive damages in any Dispute. No arbitrator shall have the power or authority to award punitive damages.

**9. Fees and Costs:** If Borrower files for arbitration first, Borrower will pay the first $250 of the arbitrator's fees and expenses; Lender or Lender's Assignee will pay any additional fees or expenses of the arbitrator. Lender or Lender's Assignee will pay all of the arbitrator's fees and expenses if Lender or Lender's Assignee files arbitration first. The Parties shall be responsible for their own attorneys' fees associated with any arbitration, unless otherwise allowed for under applicable substantive law and awarded by the arbitrator.

**10. Self-Help:** Notwithstanding this arbitration agreement, the Parties retain the right to exercise self-help remedies and to seek provisional remedies from a court, pending final determination of the Dispute by the arbitrator. No Party waives the right to elect arbitration of a Dispute by exercising self-help remedies, filing suit, or seeking or obtaining provisional remedies from a court.

**11. Exceptions:** The Parties agree that this arbitration agreement is not applicable to "small claims" meaning those claims that either Party is entitled to file and maintain in an appropriate small claims court or any action where the total amount in controversy is no greater than $10,000, including any claims for attorney's fees and non-monetary relief.

**12. Severability:** If it is determined that any paragraph or provision in this arbitration agreement is illegal, invalid, or unenforceable, such illegality, invalidity or unenforceability shall not affect the other paragraphs and provisions of this arbitration agreement. The remainder of this arbitration agreement shall continue in full force and effect as if the severed paragraph or provision had not been included. Notwithstanding this severability provision, if a court of competent jurisdiction determines paragraph 7 to be illegal, invalid, or unenforceable, the Parties agree that such waiver shall not be severed and that this arbitration agreement shall be void in its entirety.

**13. Survival of Arbitration Agreement:** This arbitration agreement will survive and continue in full force and effect notwithstanding cancellation, termination, amendment, payment in full, discharge in bankruptcy, or other expiration or conclusion of the Agreement or any other contract or transaction between the Parties, unless otherwise agreed in writing. In addition, Borrower understands and acknowledges that the rights and responsibilities afforded to Lender under this arbitration agreement survive any assignment of the Agreement by Lender and that Lender can enforce this arbitration agreement in the event a Dispute arises after the assignment of the Agreement.

**14. Right to Reject Arbitration:** Borrower/Co-Borrower has 5 calendar days to opt-out of this binding arbitration provision of this agreement. Borrower/Co-Borrower must send a letter to Lender requesting to opt-out of the binding arbitration provision of this agreement by U.S. Mail Registered Certified Return Receipt to WILSHIRE CONSUMER CREDIT LLC., P.O. BOX 76809, LOS ANGELES, CA 90076-0809. Letter must be post marked no later than 5 days after the signing of this contract.

**15. Read and Understand this Agreement:** Borrower/Co-Borrower hereby acknowledges that they have read and understand all provisions of this arbitration agreement.

**FOR ALL DISPUTES COVERED BY THIS ARBITRATION AGREEMENT, THE PARTIES HAVE AGREED TO WAIVE THEIR RIGHT TO A TRIAL BY JURY, THEIR RIGHT TO PARTICIPATE IN CLASS ACTIONS, AND THEIR RIGHT TO SEEK PUNITIVE DAMAGES, EXCEPT FOR DISPUTES AND CLAIMS NOT SUBJECT TO THIS ARBITRATION AGREEMENT, ARBITRATION SHALL BE IN PLACE OF ANY CIVIL LITIGATION IN ANY COURT AND IN PLACE OF ANY TRIAL BY JURY.**

**THE TERMS OF THIS ARBITRATION AGREEMENT AFFECT MY LEGAL RIGHTS. IF I DO NOT UNDERSTAND ANY TERMS OF THIS ARBITRATION AGREEMENT OR THE COST, ADVANTAGES OR DISADVANTAGES OF ARBITRATION, I SHOULD SEEK INDEPENDENT ADVICE BEFORE SIGNING THIS AGREEMENT. BY SIGNING THIS AGREEMENT, I ACKNOWLEDGE THAT I HAVE READ, UNDERSTAND AND AGREE TO BE BOUND BY EACH OF THE PROVISIONS, COVENANTS, STIPULATIONS AND AGREEMENTS SET FORTH ABOVE.**

**Initials:**

# CERTIFICATE OF SERVICE

I hereby certify that on January 27, 2017, a copy of the foregoing **DECLARATION OF JOHN SCHWARTZ IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND STAY** ACTION was filed electronically and served by U.S. Mail on anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's EM/ECF System.

*/s/ Christopher R. Ramos*