VEDDER PRICE (CA), LLP
CHRISTOPHER R. RAMOS (SB# 301556)
cramos@vedderprice.com
1925 Century Park East, Suite 1900
Los Angeles, California 90067
T: +1 424 204 7700
F: +1 424 204 7702

VEDDER PRICE P.C.
BLAINE C. KIMREY *(Pro hac vice pending)*
bkimrey@vedderprice.com
JEANAH PARK *(Pro hac vice pending)*
jpark@vedderprice.com
222 North LaSalle Street
Chicago, Illinois 60601
T: +1 312 609 7500
F: +1 312 609 5005

*Attorneys for Defendant PAR, Inc.*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| BARBARA A. CLARK,<br>Plaintiff,<br>v.<br>PAR, INC. dba PAR NORTH AMERICA, COUNTRYWIDE TOWING, INC. dba RELIABLE RECOVERY SOLUTIONS, and DOES 1 through 10, inclusive,<br>Defendants. | Case No. 2:15-cv-02322-MWF-FFM<br>**DECLARATION OF DONALD E. BRADLEY IN SUPPORT OF DEFENDANT PAR, INC. DBA PAR NORTH AMERICA'S MOTION TO COMPEL ARBITRATION AND STAY ACTION**<br>Hon. Michael W. Fitzgerald<br>Date: February 27, 2017<br>Time: 10:00 a.m.<br>Courtroom: 5A<br>Trial Date: September 26, 2017<br>Action Filed: March 28, 2015 |

# DECLARATION OF DONALD E. BRADLEY

I, Donald E. Bradley, hereby declare and state as follows:

1. I am an attorney at law, duly licensed to practice in all the courts of the State of California, and I am partner in the law firm of Musick, Peeler & Garrett LLP. I was attorney of record and counsel for defendant PAR, Inc. dba PAR North America ("PAR") until January 4, 2017. I have personal knowledge of the facts set forth herein and, if called as a witness, I could and would competently testify thereto under oath.

2. From April 22, 2015 through January 4, 2017, I was counsel for PAR and was involved in all aspects of PAR's defense, including its efforts to obtain discovery from Plaintiff.

3. PAR issued its initial written discovery requests to Plaintiff on January 4, 2016. (A copy of PAR's Request for Production of Documents to Plaintiff ("Requests") is attached hereto as Exhibit A.) Among other things, PAR requested "All DOCUMENTS that constitute, memorialize, or otherwise RELATE TO the allegation in the first cause of action of YOUR COMPLAINT that PAR violated the Federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (Exhibit A, Request No. 2.) PAR also requested "All DOCUMENTS that support or RELATE TO the allegation in Paragraph 18 of your COMPLAINT that 'there is a community of interest among the members of the proposed class in that there are questions of law and fact common to them that predominate over questions affecting only individual members.'" (*Id.*, Request No. 7.) PAR also requested "All DOCUMENTS that support or RELATE TO the allegation contained in Paragraph 19 of the COMPLAINT that 'Plaintiffs claims are typical of those of the class she represents.'" (*Id.*, Request No. 8.)

4. After PAR served its initial Requests, counsel for Plaintiff, Brandon Block, sent me an email on January 27, 2016, and requested a 60-day extension to

respond to PAR's requests. (A copy of Mr. Block's January 27, 2016 email to me is attached hereto as Exhibit B.) On January 27, 2016, I responded to Mr. Block by email and indicated I agreed to give Plaintiff a 30-day extension, to March 7, 2016. (*See* Ex. B.)

5. On March 5, 2016, Mr. Block sent me an email in which he requested an additional 30-day extension to respond to PAR's Requests. (A copy of Mr. Block's March 5, 2016 email to me is attached hereto as Exhibit C.) In response, I agreed to give Plaintiff a 15-day extension to respond to PAR's Requests. (*See* Ex. C.)

6. On March 22, 2016, Plaintiff served PAR with her responses to PAR's Requests and her answers to PAR's First Set of Interrogatories. (A copy of Plaintiff's Responses to Defendant PAR North America's First Set of Document Demands is attached hereto as Exhibit D.) Plaintiff's Responses to PAR's Requests consisted almost entirely of objections. Plaintiff produced no documents in response to PAR's Requests.

7. Consequently, on April 12, 2016, in accordance with my duty to meet and confer with Plaintiff, I sent a letter to Plaintiff's counsel detailing all of the deficiencies and improprieties in Plaintiff's objections to PAR's Requests and answers to PAR's Interrogatories. (A copy of my April 12, 2016 letter is attached hereto as Exhibit E.)

8. From April 12, 2016 through May 20, 2016, I exchanged several letters and emails with counsel for Plaintiff to try to resolve the parties' discovery disputes. (Copies of emails and letters exchanged with Plaintiff's counsel are attached hereto as Exhibit F.) Throughout this time, Plaintiff still did not produce any documents.

9. On May 31, 2016, counsel for Plaintiff produced Plaintiff's supplemental responses to PAR's Requests and stated he would produce documents

responsive to the Requests as soon as possible. (A copy of Plaintiff's Supplemental Responses to PAR's Requests is attached hereto as Exhibit G.)

10. From June 1, 2016 through August 30, 2016, I continued to engage in meet and confer efforts with Plaintiff's counsel to obtain documents responsive to PAR's requests. On July 12, 2016, I sent another letter to counsel for Plaintiff noting that Plaintiff still had not produced *any* documents despite numerous promises to do so. (A copy of my July 12, 2016 letter to Alexander Trueblood is attached hereto as Exhibit H.) I requested that Plaintiff produce supplemental Interrogatory answers and documents by July 22, 2016. (Ex. H.) I informed Mr. Trueblood that if Plaintiff did not comply, I would file a motion to compel with this Court and seek all available relief. (*Id.*)

11. On July 28, 2016, I held a lengthy meet and confer call with Mr. Trueblood. During that call, Mr. Trueblood agreed to produce supplemental responses to PAR's Requests by August 1, 2016. Because Mr. Trueblood agreed to produce documents responsive to PAR's Requests, I did not file a motion to compel with the Court. From August 1, 2016 through August 30, 2016, counsel for Plaintiff continued to request extensions on the time to produce documents. Because of, among other reasons, Plaintiff's many delays in producing documents and answers to PAR's Requests, I agreed to stipulate to an extension of the discovery cut-off deadline, which was scheduled for September 30, 2016. (*See* Dkt. 47.)

12. On January 19, 2016, Plaintiff served her Initial Disclosures pursuant to Rule 26(a)(1). (A copy of Plaintiff's Initial Disclosures is attached hereto as Exhibit I.) In her Initial Disclosures, Plaintiff identified as a potentially relevant document the "retail installment sales contract between plaintiff and dealership." (Ex. I p. 2.) Plaintiff also identified "Westlake Services, LLC dba Wilshire Credit," as a witness with knowledge of "the security interest in the vehicle, the

repossession of the vehicle, the charges made to plaintiff after repossession of the vehicle, its contractual relationship with Par, Inc., Par, Inc.'s policies and procedures with respect to locating and repossessing the vehicles, and damages to the class." (*Id.*)

13. Even though she identified her contract with Wilshire/Westlake as a relevant document in her Initial Disclosures, Plaintiff did not produce the contract or *any* documents identified in her January 19, 2016 Initial Disclosures or that were responsive to PAR's January 4, 2016 Requests until November 29, 2016. (A copy of A. Trueblood's November 29, 2016 transmittal email containing a link to Plaintiff's only first document production is attached hereto as Exhibit J.)

14. On November 29, 2016, Plaintiff produced the Promissory Note and Security Agreement she executed with Wilshire Consumer Credit on July 1, 2013 ("Security Agreement"). (A copy of the July 1, 2013 Security Agreement that Plaintiff produced on November 29, 2016 is attached hereto as Exhibit K.) Neither I nor David Lester, the other attorney primarily involved in the defense of this case, had ever seen the Security Agreement before November 29, 2016.

15. Before November 29, 2016, Plaintiff noticed the depositions of seven PAR employees or former employees. As counsel for PAR, my firm produced each of the seven PAR employees or former employees for their deposition. PAR noticed Plaintiff's deposition, which I took on December 14, 2016.

16. I took Plaintiff's deposition on December 14, 2016 because the current fact discovery cut-off date, December 22, 2016, was imminent and PAR needed to take Plaintiff's deposition before the close of fact discovery. I also intended to have Plaintiff authenticate several documents she produced on November 29, 2016, including the Wilshire/Westlake Security Agreement.

17. During the December 14, 2016 deposition, Ms. Clark lost her glasses and could no longer read documents comfortably or reliably, particularly

documents with small print. (*See* Barbara Clark's December 14, 2016 deposition transcript, attached hereto as Exhibit L, pp. 210-15.) I was not finished with the deposition, but because Ms. Clark could no longer read, I agreed to continue her deposition to a mutually agreeable date and time. I was therefore unable to ask Ms. Clark to authenticate the Security Agreement.

18. During her deposition, Ms. Clark testified that she fell behind in her payments to Wilshire/Westlake, which caused Wilshire/Westlake to order the repossession of Plaintiff's vehicle. (*See* Ex. L pp. 35, 41-42.)

19. On March 7, 2016, in response to Plaintiff's Requests for Production, PAR produced to Plaintiff the number of repossessions forwarded by PAR from March 28, 2011 through March 28, 2015.

I declare under penalty of perjury under the laws of the United States that the foregoing statements are true and correct.

Dated: January 27, 2017

DONALD E. BRADLEY

# EXHIBIT A

MUSICK, PEELER & GARRETT LLP
ATTORNEYS AT LAW
650 TOWN CENTER DRIVE, SUITE 1200
COSTA MESA, CALIFORNIA 92626-1925
TELEPHONE (714) 668-2400
FACSIMILE (714) 668-2490

David M. Lester (State Bar No. 119966)
*d.lester@mpglaw.com*
Donald E. Bradley (State Bar No. 145037)
*d.bradley@mpglaw.com*

Attorneys for Defendant PAR, INC. dba PAR NORTH AMERICA

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

| | |
|---|---|
| BARBARA A. CLARK,<br><br>Plaintiff,<br><br>vs.<br><br>PAR, INC. dba PAR NORTH AMERICA, COUNTRY WIDE TOWING, INC. dba RELIABLE RECOVERY SOLUTIONS, and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 2:15-CV-02322 MWF (FFMx)<br><br>Hon. Michael W. Fitzgerald, Crtrm. 1600<br><br>**DEFENDANT PAR, INC. DBA PAR NORTH AMERICA'S REQUEST FOR PRODUCTION OF DOCUMENTS TO PLAINTIFF BARBARA CLARK** |

PROPOUNDING PARTY: DEFENDANT PAR, INC. DBA PAR NORTH AMERICA

RESPONDING PARTY: PLAINTIFF BARBARA A. CLARK

SET NO.: ONE

TO PLAINTIFF BARBARA A. CLARK AND HER ATTORNEYS OF RECORD:

Request is hereby made pursuant to Federal Rules of Civil Procedure Rule 34 by Defendant PAR, Inc. dba PAR North America that Plaintiff Barbara A. Clark (hereinafter "Responding Party") respond *under oath* and in writing to the following Requests for Production of Documents within 30 days after the service hereof and identify and produce within 30 days after the service hereof the original documents and/or other tangible items requested herein or, if the originals are not available, copies for inspection and photocopying at the offices of Musick, Peeler & Garrett, LLP, 650 Town Center Drive, Suite 1200, Costa Mesa, California 92626.

This request seeks documents and/or other tangible items that are believed to be in Responding Party's possession, custody and/or control or in the possession, custody and/or control of Responding Party's representatives or agents, including Responding Party's attorneys of record herein. If any such documents and/or other tangible items were, but are no longer, in Responding Party's possession, custody and/or control, Responding Party must state the name, address, and telephone number of the present custodian of each document or thing or state whatever disposition was made of each document or thing.

Each document or thing produced by Responding Party shall be produced in its original folder or other container with all file labels intact.

## INSTRUCTIONS

With respect to the request for documents described and listed below, the following instructions apply:

1. Responding Party is required to identify and produce all those documents in her possession, custody and/or control and those documents in the possession, custody and/or control of her representatives, agents, attorneys, investigators, accountants and persons and/or entities acting together, for, or on Responding Party's behalf.

2. If any requested document is known to have existed, but no longer exists or is no longer in the possession, custody or control of Responding Party, Responding Party shall identify the name, address and telephone of its last known custodian and state the date upon which it was lost, destroyed or became unavailable. If the document still exists, Responding Party shall identify its present custodian and location.

3. Whenever appropriate, the singular form of the word "shall" be interpreted in the plural and, similarly, the plural form shall be interpreted in the singular.

4. If the Responding Party claims privilege as a ground for refusing to produce any document or other tangible thing, describe the factual basis for such claim of privilege and sufficient detail to permit adjudication of validity of that claim, including but not limited to the following:

a. a brief description of the type of the document or other tangible things;

b. the date of the document;

c. the name, title and job description of the author of the document or other tangible things;

d. the name, title and job description of the addressee(s) and recipient(s) of the document or other tangible things;

e. the name, title and job description of all other persons who received the document or other tangible things;

f. a brief description of the subject matter of the document or other tangible things; and

g. the nature of the privileged claim with respect to each document or other tangible things.

The identification must be sufficient to enable the document or other tangible thing to be identified in a subpoena *duces tecum* or in any subsequent motion that may be brought to compel its production and/or challenge the assertion of any such

privilege or protection.

## DEFINITIONS

1. "YOU" and "YOUR" shall refer to Plaintiff BARBARA A. CLARK and all others acting on or for her behalf.

2. "PAR" shall refer to Defendant PAR, Inc. dba PAR North America and all others acting on or for its behalf.

3. "RELIABLE" shall refer to "Defendant Countrywide Towing, Inc. dba Reliable Recovery Solutions" as alleged in Paragraph 11 of the complaint.

4. "COMPLAINT" shall mean YOUR Complaint filed on or about March 28, 2015 in United States District Court for the Central District of California, Case No. 2:15-CV-02322 MWF (FFMx), entitled Barbara A. Clark v. PAR, Inc. dba PAR North America, et al.

5. "DOCUMENT" shall mean and refer to any printed, written, tape recorded, graphic, computerized printout, or other tangible matter, from whatever source, however produced or reproduced, whether in draft or otherwise, whether sent or received, or neither, including, but not limited to, the original, a copy (if the original is not available) and all non-identical copies (whether different from the original because of notes made on or attached to such copy or otherwise) of any and all writings, correspondence, letters, proposals, agreement, minutes, acknowledgments, books, notes, memoranda, analyses, projections, work papers, forecasts or appraisals, papers, records, reports, diaries, statements, questionnaires, schedules, computer programs or data, books of account, calendars, graphs, charts, transcripts, tapes, transcripts or recordings, photographs, pictures or film, ledgers, registers, worksheets, summaries, digests, financial statements, and all other information or data, records or compilations, including all underlying or preparatory material now in your possession, custody or control, or available to you, your counsel accountants, agents, representatives or associates. "DOCUMENT" or "DOCUMENTS" specifically includes documents kept by individuals in their desks,

at home or elsewhere.

6. "RELATE TO" and "RELATES TO" shall mean disclose, discuss, support, evidence, constitute, identify, indicate, involve, reference or reflect the subject matter referred to.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

**REQUEST FOR PRODUCTION NO. 1:**

All DOCUMENTS that constitute, memorialize, or otherwise RELATE TO all communications between YOU and any employee or representative of PAR.

**REQUEST FOR PRODUCTION NO. 2:**

All DOCUMENTS that constitute, memorialize, or otherwise RELATE TO the allegation in the first cause of action of YOUR COMPLAINT that PAR violated the Federal Fair Debt Collection Practices Act, 15 U.S.C. §1692 *et seq.*

**REQUEST FOR PRODUCTION NO. 3:**

All DOCUMENTS that constitute, memorialize, or otherwise RELATE TO all communications between YOU and any employee or representative of RELIABLE.

**REQUEST FOR PRODUCTION NO. 4:**

All DOCUMENTS that constitute, memorialize, or otherwise RELATE TO all communications between YOU or YOUR counsel and any member of the putative class described in Paragraph 16 of the COMPLAINT.

**REQUEST FOR PRODUCTION NO. 5:**

All DOCUMENTS that support or otherwise RELATE TO the allegation contained in Paragraph 43 of the COMPLAINT that "Defendant PAR North is a repossession agency within the meaning of Business and Professions Code §7500.2" and is therefore required to have a repossession agency license.

**REQUEST FOR PRODUCTION NO. 6:**

All DOCUMENTS that support or otherwise RELATE TO YOUR allegations in the COMPLAINT that PAR is liable for any conduct on the part of RELIABLE.

**REQUEST FOR PRODUCTION NO. 7:**

All DOCUMENTS that support or otherwise RELATE TO the allegation in Paragraph 18 of your COMPLAINT that "there is a community of interest among the members of the proposed class in that there are questions of law and fact common to them that predominate over questions affecting only individual members."

**REQUEST FOR PRODUCTION NO. 8:**

All DOCUMENTS that support or otherwise RELATE TO the allegation contained in Paragraph 19 of the COMPLAINT that "Plaintiff's claims are typical of those of the class she represents."

**REQUEST FOR PRODUCTION NO. 9:**

All DOCUMENTS that support or otherwise RELATE TO the allegation contained in Paragraph 20 of the COMPLAINT that "a class action is superior to other methods for the fair and efficient adjudication of this controversy."

**REQUEST FOR PRODUCTION NO. 10:**

All DOCUMENTS that constitute, memorialize, or otherwise RELATE TO all damage that YOU claim to have incurred as a result of the action or inaction on the part of PAR.

**REQUEST FOR PRODUCTION NO. 11:**

All DOCUMENTS that constitute, memorialize, or otherwise RELATE TO all damage that YOU claim to have incurred as a result of the action or inaction on the part of RELIABLE.

**REQUEST FOR PRODUCTION NO. 12:**

All DOCUMENTS that support or otherwise RELATE TO the claim made in the COMPLAINT that any conduct on the part of PAR was willful or intentional.

**REQUEST FOR PRODUCTION NO. 13:**

All DOCUMENTS that support or otherwise RELATE TO the allegation contained in Paragraph 57 of the COMPLAINT that "Defendants have received and

collected substantial monies that they are not entitled to."

**REQUEST FOR PRODUCTION NO. 14:**

All DOCUMENTS that support or otherwise RELATE TO the allegation in the second cause of action of YOUR COMPLAINT that PAR violated the Rosenthal Fair Debt Collection Practices Act, California Civil Code §1788 *et seq.*

**REQUEST FOR PRODUCTION NO. 15:**

All DOCUMENTS that support or otherwise RELATE TO the allegation in the third cause of action of YOUR COMPLAINT that PAR violated the Collateral Recovery Act, Business and Professions Code §7500 *et seq.*

**REQUEST FOR PRODUCTION NO. 16:**

All DOCUMENTS that support or otherwise RELATE TO the allegation in the fifth cause of action of YOUR COMPLAINT that PAR violated the unfair competition law, Business and Professions Code §17200 *et seq.*

**REQUEST FOR PRODUCTION NO. 17:**

All DOCUMENTS that support or otherwise RELATE TO the allegation in Paragraph 7 of your COMPLAINT that the number of putative class members is "so numerous that joinder of all members would be impracticable."

DATED: January 4, 2016 MUSICK, PEELER & GARRETT LLP

By: ______________________
Donald E. Bradley
Attorneys for Defendant PAR, INC. dba PAR NORTH AMERICA

# PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF ORANGE**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Orange, State of California. My business address is 650 Town Center Drive, Suite 1200, Costa Mesa, CA 92626-1925.

On January 4, 2016, I served true copies of the following document(s) described as **DEFENDANT PAR, INC. DBA PAR NORTH AMERICA'S REQUEST FOR PRODUCTION OF DOCUMENTS TO PLAINTIFF BARBARA CLARK** on the interested parties in this action as follows:

**SEE ATTACHED SERVICE LIST**

☒ **BY MAIL:** I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses listed in the Service List and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with the practice of Musick, Peeler & Garrett LLP for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid. I am a resident or employed in the county where the mailing occurred. The envelope was placed in the mail at Costa Mesa, California.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on January 4, 2016, at Costa Mesa, California.

April M. Yusay

## SERVICE LIST

Alexander B. Trueblood
TRUEBLOOD LAW FIRM
10940 Wilshire Boulevard, Suite 1600
Los Angeles, CA 90024
Phone: (310) 443-4139
Fax: (310) 943-2255
Email: alec@hush.com;
atrueblood@pacernotice.com
*Attorneys for Plaintiff*

Brandon A. Block
LAW OFFICES OF BRANDON A. BLOCK
433 North Camden Drive, Suite 600
Beverly Hills, CA 90210
Phone: (310) 887-1440
Fax: (310) 496-1420
Email: brandon@bblocklaw.com
*Attorneys for Plaintiff*

# EXHIBIT B

**From:** Brandon Block <brandon@bblocklaw.com>
**Sent:** Wednesday, January 27, 2016 7:05 PM
**To:** Bradley, Donald; Alec Trueblood
**Cc:** Lester, David
**Subject:** Re: Clark/PAR

Don,

While I don't believe I was involved in the communications between you and Alec, it's hard to believe that you or David would think that plaintiff's initial disclosures could provide the documents and information asked for in the requests, such as the specific interactions and contracts between PAR, WCC and Countrywide – all of which would be solely in the defense's possession, but none of which has been provided. Be that as it may, I appreciate the extension on plaintiff's responses to 3/7/16, and we'll send you a meet and confer letter on PAR's responses and then schedule a call.

Brandon A. Block
Law Offices of Brandon A. Block, APC
Tel: 310.887.1440 |Fax: 310.496.1420

---

**From:** "Bradley, Donald" <D.Bradley@MPGLAW.com>
**Date:** Wednesday, January 27, 2016 at 2:46 PM
**To:** Alec Trueblood <alec@hush.com>, Brandon Block <brandon@bblocklaw.com>
**Cc:** "Lester, David" <D.Lester@MPGLAW.com>
**Subject:** RE: Clark/PAR

Alec, had plaintiff's disclosures actually been served in time to incorporate into PAR's discovery responses, or contained information that could actually be used in the responses, you would have seen that information. Now let's quit sniping and move forward.

Don

**From:** Alec Trueblood [mailto:alec@hush.com]
**Sent:** Wednesday, January 27, 2016 2:41 PM
**To:** Bradley, Donald; Brandon Block
**Cc:** Lester, David
**Subject:** RE: Clark/PAR

Don,

I would like to point out that your requests for extra time to respond to our discovery were both disingenous. You pretended you needed more time to obtain the data we requested, yet after a full four weeks extension you served discovery "responses" that are all objections, and include not a single witness, document, or even an iota of information. So I am glad I did not give you another two weeks just to drop your boilerplate objections in the mail. You also justified your second extension request saying that you needed an additional extra two weeks to look at our responses and incorporate them into yours. This was untrue, as you only intended to serve objections. And now you say this justification is good enough for your extension, but not ours. Please give us some respect here, this is outrageous.

Sincerely,

Alexander Trueblood
Trueblood Law Firm

10940 Wilshire Blvd., Suite 1600
Los Angeles, CA 90024
310-443-4139
310-943-2255 fax
email: alec@hush.com

Sent using Hushmail

On 1/27/2016 at 2:12 PM, "Donald Bradley" <D.Bradley@MPGLAW.com> wrote:

While I generally am willing to grant extensions as a courtesy, Alec's refusal to grant two more weeks to us earlier this month makes me hesitate. Nevertheless, we will grant an extension, though April 8 (i.e., two months) is excessive and does not seem necessary. We don't agree that needing to address issues with PAR's responses justifies the extension. To quote Alec, "I don't want to delay your client's responses any further since time frames are so short in federal court." Accordingly, we will agree to a 30-day extension.

As to meeting and conferring, the week of February 8 is pretty flexible. If you propose a couple of dates/times we can find something that works. I don't think it's necessary to meet in person—telephone should be fine. But you can certainly come here if you like. Either way, in my experience it's never productive to have a verbal discussion until we have in writing what your concerns are. If you send a letter first, we can work from that, or possibly even resolve it short of a meeting.

Let me know. Thanks. Don

**Donald E. Bradley**

*Partner*

MUSICK PEELER

Musick, Peeler & Garrett LLP
650 Town Center Drive Suite 1200
Costa Mesa, CA 92626

Download V-Card
d.bradley@mpglaw.com
www.musickpeeler.com

T: 714.668.2447
F: 714.668.2490

The information contained in this communication is protected by the attorney-client and/or the attorney/work product privilege. It is intended only for the use of the addressee, and the privileges are not waived by virtue of this having been sent by e-mail. If the person actually receiving this communication or any other reader of the communication is not the named recipient, or the employee or agent responsible to deliver it to the recipient, any use, dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by return e-mail or by e-mail to administrator@mpglaw.com, and destroy this communication and all copies thereof, including all attachments.

INTERNATIONAL ALLIANCE OF LAW FIRMS

---

**From:** Brandon Block [mailto:brandon@bblocklaw.com]
**Sent:** Wednesday, January 27, 2016 9:39 AM
**To:** Bradley, Donald
**Cc:** Alec Trueblood
**Subject:** Clark/PAR

Don,

Would your client kindly agree to extend the deadline for plaintiff's discovery responses to 4/8/16? That will give us time to address the issues we have with PAR's responses, and obtain the additional information and documents from PAR which plaintiff will need to fully respond to PAR's requests. Along those lines, how is your availability the week of February 8th for an in-person meet and confer on PAR's responses to plaintiff's discovery requests? I'm fine doing it at your office, if you don't want to travel to my office. Let me know.

Thanks,

Brandon A. Block

Law Offices of Brandon A. Block, APC

Tel: 310.887.1440 |Fax: 310.496.1420

# EXHIBIT C

**From:** Bradley, Donald <D.Bradley@MPGLAW.com>
**Sent:** Monday, March 07, 2016 11:39 AM
**To:** Brandon Block; Lester, David
**Cc:** Alec Trueblood
**Subject:** RE: Clark/PAR

Brandon, we don't agree that receipt of PAR's discovery responses is a proper prerequisite to Plaintiff serving hers. Plaintiff is obligated to respond based on the information she possesses. If that information is nonexistent, she is obligated to say so.

We have already granted a generous extension (and plaintiff refused our prior request for an extension). Nevertheless, we will agree to another 15 days.

Don

**Donald E. Bradley**
*Partner*

MUSICK PEELER

Musick, Peeler & Garrett LLP
650 Town Center Drive Suite 1200
Costa Mesa, CA 92626

Download V-Card
d.bradley@mpglaw.com
www.musickpeeler.com

T: 714.668.2447
F: 714.668.2490

The information contained in this communication is protected by the attorney-client and/or the attorney/work product privilege. It is intended only for the use of the addressee, and the privileges are not waived by virtue of this having been sent by e-mail. If the person actually receiving this communication or any other reader of the communication is not the named recipient, or the employee or agent responsible to deliver it to the recipient, any use, dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by return e-mail or by e-mail to administrator@mpglaw.com, and destroy this communication and all copies thereof, including all attachments.

INTERNATIONAL ALLIANCE OF LAW FIRMS

**From:** Brandon Block [mailto:brandon@bblocklaw.com]
**Sent:** Saturday, March 05, 2016 4:53 PM
**To:** Bradley, Donald; Lester, David
**Cc:** Alec Trueblood
**Subject:** Clark/PAR

Don & David,

Plaintiff's discovery responses are due Monday. We are still getting discovery from PAR which we will need to fully respond to the interrogatories and document requests. We'd really appreciate an additional 30-day extension, to allow time for PAR to supplement its responses/production, and for plaintiff to finalize her responses/production. Please confirm whether this is acceptable.

Thanks so much,

Brandon A. Block
Law Offices of Brandon A. Block, APC
Tel: 310.887.1440 |Fax: 310.496.1420

# EXHIBIT D

TRUEBLOOD LAW FIRM
ALEXANDER B. TRUEBLOOD Bar No. 150897
10940 Wilshire Blvd., Suite 1600
Los Angeles, CA 90024
Telephone: (310) 443-4139
Facsimile: (310) 943-2255

LAW OFFICES OF BRANDON A. BLOCK
BRANDON A. BLOCK Bar No. 215888
433 North Camden Dr., Ste. 600
Beverly Hills, CA 90210
Telephone: (310) 887-1440
Facsimile: (310) 496-1420

Attorneys for Plaintiff
BARBARA CLARK

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BARBARA CLARK, individually, on behalf of all others similarly situated,<br>,<br><br>Plaintiff,<br><br>vs.<br><br>PAR, INC. dba PAR NORTH AMERICA, COUNTRY WIDE TOWING, INC. dba RELIABLE RECOVERY SOLUTIONS, and DOES 1 through 10, inclusive,<br>,<br><br>Defendants. | Case No: 15-CV-02322 MWF (FFMx)<br><br>**PLAINTIFF'S RESPONSES TO DEFENDANT PAR NORTH AMERICA'S FIRST SET OF DOCUMENT DEMANDS** |

TO ALL PARTIES HEREIN AND TO THEIR ATTORNEYS OF RECORD:

Plaintiff Barbara Clark hereby responds, pursuant to Federal Rule of Civil Procedure 34, to defendant Par, Inc.'s first set of document demands.

RESPONSES TO DOCUMENT DEMANDS

DEMAND NO. 1:

All DOCUMENTS that constitute, memorialize, or otherwise RELATE TO all communications between YOU and any employee or representative of PAR.

RESPONSE TO DEMAND NO. 1:

Plaintiff objects that the demand invades the attorney-client privilege and the work product doctrine.

Plaintiff will produce all non-privileged responsive documents that constitute or refer to communications between her and Par, Inc., to the extent they exist.

DEMAND NO. 2:

All DOCUMENTS that constitute, memorialize, or otherwise RELATE TO the allegation in the first cause of action of YOUR COMPLAINT that PAR violated the Federal Fair Debt Collection Practices Act, 15 U.S. C. § 1692 et seq.

RESPONSE TO DEMAND NO. 2:

Plaintiff objects that requesting all documents that "relate to" an allegation is vague and ambiguous, and unintelligible. Plaintiff further objects that this is a premature, burdensome, and harassing request, that much of the information necessary to answer is in Par's possession, and that Par has evaded responding to plaintiff's discovery on this topic. Plaintiff further objects that the demand invades the attorney-client privilege and the work product doctrine.

DEMAND NO. 3:

All DOCUMENTS that constitute, memorialize, or otherwise RELATE TO all communications between YOU and any employee or representative of RELIABLE.

RESPONSE TO DEMAND NO. 3:

Plaintiff objects that the demand invades the attorney-client privilege and the work product doctrine.

Plaintiff will produce all non-privileged responsive documents that constitute or refer to communications between her and Reliable, to the extent they exist.

DEMAND NO. 4:

All DOCUMENTS that constitute, memorialize, or otherwise RELATE TO all communications between YOU or YOUR counsel and any member of the putative class described in Paragraph 16 of the COMPLAINT.

RESPONSE TO DEMAND NO. 4:

Plaintiff objects that the demand invades the attorney-client privilege and violates the work-product doctrine. Plaintiff further objects that the demand seeks irrelevant information, and is burdensome and harassing.

DEMAND NO. 5:

All DOCUMENTS that support or otherwise RELATE TO the allegation contained in Paragraph 43 of the COMPLAINT that "Defendant PAR North is a repossession agency within the meaning of Business and Professions Code §7500.2" and is therefore required to have a repossession agency license.

RESPONSE TO DEMAND NO. 5:

Plaintiff objects that requesting all documents that “relate to” an allegation is vague and ambiguous, and unintelligible. Plaintiff further objects that this demand is premature, burdensome, and harassing, that much of the information necessary to answer is in Par’s possession, and that Par has evaded responding to plaintiff’s discovery on this topic. Plaintiff further objects that the demand invades the attorney-client privilege and the work product doctrine.

DEMAND NO. 6:

All DOCUMENTS that support or otherwise RELATE TO YOUR allegations in the COMPLAINT that PAR is liable for any conduct on the part of RELIABLE.

RESPONSE TO DEMAND NO. 6:

Plaintiff objects that requesting all documents that "relate to" an allegation is vague and ambiguous, and unintelligible. Plaintiff further objects that this demand is premature, burdensome, and harassing, that much of the information necessary to answer is in Par's possession, and that Par has evaded responding to plaintiff's discovery on this topic. Plaintiff further objects that the demand invades the attorney-client privilege and the work product doctrine.

DEMAND NO. 7:

All DOCUMENTS that support or otherwise RELATE TO the allegation in Paragraph 18 of your COMPLAINT that "there is a community of interest among the members of the proposed class in that there are questions of law and fact common to them that predominate over questions affecting only individual members."

RESPONSE TO DEMAND NO. 7:

Plaintiff objects that requesting all documents that "relate to" an allegation is vague and ambiguous, and unintelligible. Plaintiff further objects that this demand is premature, burdensome, and harassing, that much of the information necessary to answer is in Par's possession, and that Par has evaded responding to plaintiff's discovery on this topic. Plaintiff further objects that the demand invades the attorney-client privilege and the work product doctrine.

DEMAND NO. 8:

All DOCUMENTS that support or otherwise RELATE TO the allegation contained in Paragraph 19 of the COMPLAINT that "Plaintiffs claims are typical of those of the class she represents."

RESPONSE TO DEMAND NO. 8:

Plaintiff objects that requesting all documents that "relate to" an allegation is vague and ambiguous, and unintelligible. Plaintiff further objects that this demand is premature, burdensome, and harassing, that much of the information necessary to answer is in Par's possession, and that Par has evaded responding to plaintiff's discovery on this topic. Plaintiff further objects that the demand invades the attorney-client privilege and the work product doctrine.

DEMAND NO. 9:

All DOCUMENTS that support or otherwise RELATE TO the allegation contained in Paragraph 20 of the COMPLAINT that "a class action is superior to other methods for the fair and efficient adjudication of this controversy."

RESPONSE TO DEMAND NO. 9:

Plaintiff objects that requesting all documents that "relate to" an allegation is vague and ambiguous, and unintelligible. Plaintiff further objects that this demand is premature, burdensome, and harassing, that much of the information necessary to answer is in Par's possession, and that Par has evaded responding to plaintiff's discovery on this topic. Plaintiff further objects that the demand invades the attorney-client privilege and the work product doctrine.

DEMAND NO. 10:

All DOCUMENTS that constitute, memorialize, or otherwise RELATE TO all damage that YOU claim to have incurred as a result of the action or inaction on the part of PAR.

RESPONSE TO DEMAND NO. 10:

Plaintiff objects that requesting all documents that "relate to" damages is vague and ambiguous, and unintelligible. Plaintiff further objects that the demand seeks to invade the attorney-client privilege and work product doctrine.

Plaintiff states that she will produce all non-privileged documents that support her claim for damages in this action.

DEMAND NO. 11:

All DOCUMENTS that constitute, memorialize, or otherwise RELATE TO all damage that YOU claim to have incurred as a result of the action or inaction on the part of RELIABLE.

RESPONSE TO DEMAND NO. 11:

Plaintiff objects that requesting all documents that "relate to" damages is vague and ambiguous, and unintelligible. Plaintiff further objects that the demand seeks to invade the attorney-client privilege and work product doctrine.

Plaintiff states that she will produce all non-privileged documents that support her claim for damages in this action.

DEMAND NO. 12:

All DOCUMENTS that support or otherwise RELATE TO the claim made in the COMPLAINT that any conduct on the part of PAR was willful or intentional.

RESPONSE TO DEMAND NO. 12:

Plaintiff objects that requesting all documents that "relate to" an allegation is vague and ambiguous, and unintelligible. Plaintiff further objects that this demand is premature, burdensome, and harassing, that much of the information necessary to answer is in Par's possession, and that Par has evaded responding to plaintiff's discovery on this topic. Plaintiff further objects that the demand invades the attorney-client privilege and the work product doctrine.

DEMAND NO. 13:

All DOCUMENTS that support or otherwise RELATE TO the allegation contained in Paragraph 57 of the COMPLAINT that "Defendants have received and collected substantial monies that they are not entitled to."

RESPONSE TO DEMAND NO. 13:

Plaintiff objects that requesting all documents that "relate to" an allegation is vague and ambiguous, and unintelligible. Plaintiff further objects that this demand

is premature, burdensome, and harassing, that much of the information necessary to answer is in Par's possession, and that Par has evaded responding to plaintiff's discovery on this topic. Plaintiff further objects that the demand invades the attorney-client privilege and the work product doctrine.

DEMAND NO. 14:

All DOCUMENTS that support or otherwise RELATE TO the allegation in the second cause of action of YOUR COMPLAINT that PAR violated the Rosenthal Fair Debt Collection Practices Act, California Civil Code § 1788 et seq.

RESPONSE TO DEMAND NO. 14:

Plaintiff objects that requesting all documents that "relate to" an allegation is vague and ambiguous, and unintelligible. Plaintiff further objects that this demand is premature, burdensome, and harassing, that much of the information necessary to answer is in Par's possession, and that Par has evaded responding to plaintiff's discovery on this topic. Plaintiff further objects that the demand invades the attorney-client privilege and the work product doctrine.

DEMAND NO. 15:

All DOCUMENTS that support or otherwise RELATE TO the allegation in the third cause of action of YOUR COMPLAINT that PAR violated the Collateral Recovery Act, Business and Professions Code §7500 et seq.

RESPONSE TO DEMAND NO. 15:

Plaintiff objects that requesting all documents that "relate to" an allegation is vague and ambiguous, and unintelligible. Plaintiff further objects that this demand is premature, burdensome, and harassing, that much of the information necessary to answer is in Par's possession, and that Par has evaded responding to plaintiff's discovery on this topic. Plaintiff further objects that the demand invades the attorney-client privilege and the work product doctrine.

DEMAND NO. 16:

All DOCUMENTS that support or otherwise RELATE TO the allegation in

the fifth cause of action of YOUR COMPLAINT that PAR violated the unfair competition law, Business and Professions Code § 17200 et seq.

RESPONSE TO DEMAND NO. 16:

Plaintiff objects that requesting all documents that "relate to" an allegation is vague and ambiguous, and unintelligible. Plaintiff further objects that this demand is premature, burdensome, and harassing, that much of the information necessary to answer is in Par's possession, and that Par has evaded responding to plaintiff's discovery on this topic. Plaintiff further objects that the demand invades the attorney-client privilege and the work product doctrine.

DEMAND NO. 17:

All DOCUMENTS that support or otherwise RELATE TO the allegation in Paragraph 7 of your COMPLAINT that the number of putative class members is "so numerous that joinder of all members would be impracticable.".

RESPONSE TO DEMAND NO. 17:

Plaintiff objects that requesting all documents that "relate to" an allegation is vague and ambiguous, and unintelligible. Plaintiff further objects that this demand is premature, burdensome, and harassing, that much of the information necessary to answer is in Par's possession, and that Par has evaded responding to plaintiff's discovery on this topic. Plaintiff further objects that the demand invades the attorney-client privilege and the work product doctrine.

Dated: November 22, 2015

TRUEBLOOD LAW FIRM

By: /s/
Alexander Trueblood

Attorneys for Plaintiff
BARBARA CLARK

# EXHIBIT E

MUSICK, PEELER & GARRETT LLP
ATTORNEYS AT LAW

DONALD E. BRADLEY
d.bradley@mpglaw.com
(714) 668-2447

650 TOWN CENTER DRIVE, SUITE 1200
COSTA MESA, CALIFORNIA 92626-1925

TELEPHONE: (714) 668-2400
FACSIMILE: (714) 668-2490
WWW.MUSICKPEELER.COM

LOS ANGELES
ORANGE COUNTY
SAN DIEGO
SAN FRANCISCO
SANTA BARBARA
WESTLAKE VILLAGE

FILE NO.: 71279.001

April 12, 2016

**<u>VIA E-MAIL AND U.S. MAIL</u>**

Alexander Trueblood, Esq.
Trueblood Law Firm
10940 Wilshire Boulevard, Suite 1600
Los Angeles, California 90024

Re: Clark v. PAR, Inc., et al.
<u>United States District Court Case No.: 2:15-CV-02322 MWF</u>

Dear Mr. Trueblood:

We have reviewed Plaintiff Barbara Clark's ("Clark") Responses to PAR, Inc.'s ("PAR") Special Interrogatories, Set One, and Requests for Production of Documents, Set One. Despite having an additional 45 days to respond, Clark's discovery responses are, for the most part, meritless, boilerplate objections. This letter is PAR's attempt to meet and confer in order to obtain responses that are compliant with Clark's discovery obligations as the Plaintiff in this matter.

**<u>Clark's Responses to Special Interrogatories, Set One</u>**

<u>Responses to Special Interrogatory Nos. 1 and 3</u>.

Special Interrogatory No. 1 asks Clark to describe all communications she had with any employee or representative of PAR. Similarly, Special Interrogatory No. 3 asks Clark to describe all communications she had with any employee or representative of Country Wide Towing, Inc., dba Reliable Recovery Solutions ("Reliable"). In response to these requests, Clark only states that she "identified the persons she spoke to …in her Initial Disclosures" These Responses are insufficient and must be supplemented, because they only reference other documents and are not complete in themselves. (*Mulero-Abreu v. Puerto Rico Police Dept.* (1st Cir. 2012) 675 F.3d 88, 93; *Scaife v. Boenne* (ND IN 2000) 191 F.R.D. 590, 594.) The Responses are also deficient, because they do not provide all information available to Clark. (Federal Rules of Civil Procedure ("FRCP"), Rule 33(b)(1)(B); *General Dynamics Corp. v. Selb Mfg. Co.* (8th Cir. 1973) 481 F.2d 1204, 1210.)

This case will turn in large part on Clark's communications with PAR and Reliable. PAR is entitled to a detailed description of those communications from Clark under oath. If there are none, PAR is entitled to that information from Clark under oath as well.

Accordingly, PAR requests that Clark supplement her Responses to Special Interrogatory Nos. 1 and 3 by describing in detail all of the communications she had with any employee or representative of PAR and Recovery. To be clear, Clark's supplemental responses must, to the best of her knowledge and the information available to her, identify the employees and/or representatives with whom she communicated and describe the dates, times and contents of the communications.

Responses to Special Interrogatory Nos. 2, 5, 6, 7, 8, 9, 12, 13, 17, 18, 19 and 20

These Special Interrogatories request Clark to "describe in detail all facts that support or otherwise RELATE TO" several of the allegations in Clark's operative Complaint. In her Responses to these requests, Clark only repeats the following objections: (1) "... requesting all facts that 'relate to' an allegation is vague and ambiguous, and unintelligible;" and (2) "this is a premature, burdensome, and harassing contention interrogatory, that much of the information necessary to answer is in Par's possession, and that Par has evaded responding to plaintiff's discovery on this topic." These objections have no merit and do not justify Clark's failure to provide substantive responses.

First, the defined term "RELATE TO" is not vague, ambiguous or unintelligible. PAR's Special Interrogatories, Set One, defined "RELATE TO" as "disclose, discuss, support, evidence, constitute, identify, indicate, involve, reference or reflect the subject matter referred to." Thus, these Interrogatories ask Clark to state all facts that support or "disclose, discuss, support, evidence, constitute, identify, indicate, involve, reference or reflect" the allegations in her Complaint. Additionally, Clark's concurrently-served Responses to Request for Production of Documents Nos. 1, 3, 10 and 11 (which provide substantive responses and do not object to the "RELATE TO") indicate that she sufficiently understands the meaning of "RELATE TO" to provide substantive responses. Furthermore, Clark is obligated to use reason and common sense in understanding the terms and phrases used in the Interrogatories in making her best efforts to substantively respond to the same. (*Pulsecard, Inc. v. Discover Card Services, Inc.* (D KS 1996) 168 F.R.D. 295, 310.)

Second, these Special Interrogatories are not premature, burdensome or harassing contention interrogatories. We have reviewed the cases you cited in your email of March 7, 2016 in support of this objection, *Fischer and Porter Company v. Tolson* (E.D.Penn. 1992) 143 F.R.D. 93 ("*Fischer*") and *In re Convergent Technologies Securities Litigation* (N.D. Cal. 1985) 108 F.R.D. 328 ("*Convergent*"). *Fischer* and *Convergent* stand for the proposition that contention interrogatories are premature in the early stages of discovery and are only appropriate

after a substantial amount of discovery has been conducted. As explained by the U.S. District Court, Central District of California in *Cable & Computer Technology, Inc. v. Lockheed Saunders, Inc.* (C.D. Cal. 1997) 175 F.R.D. 646 ("*Cable & Computer*"), the rule and the reasoning in *Fischer* and *Convergent* have been superseded and are no longer applicable in this District.

In *Cable & Computer*, the Court noted that the Judge that presided over and wrote the opinion in *Convergent* subsequently "modified his position" regarding contention interrogatories in a subsequent case. *Cable & Computer, supra,* 175 F.R.D. at p. 652. More importantly, the *Cable & Computer* opinion explained the current status of the law in the Central District of California regarding contention interrogatories as follows:

> … this Court prefers to consider contention interrogatories in the same manner it would consider any interrogatory, placing the burden on the party opposing discovery rather than shifting the burden to the proponent of the contention interrogatories to justify their propoundment. Thus, … plaintiff may … answer interrogatory no. 1 based on the information it has to date. Of course, plaintiff may later amend its answer with leave of Court or supplement it, as it has an obligation to do under Fed.R.Civ.P. 26(e). The other disputed interrogatories … are straightforward 'factual' contention interrogatories which plaintiff should also be able to answer now. Requiring the answer to these 'factual' contention interrogatories is 'consistent with Rule 11 of the Federal Rules of Civil Procedure, [which requires that] plaintiffs must have some factual basis for the allegations in their complaint …' *In re One Bancorp Securities Litigation,* 134 F.R.D. 4, 8 (D.Me. 1991). Accordingly, plaintiffs 'must answer [the] interrogatories with the information as they now possess…" *Id.* (Emphasis added.)

Accordingly, following *Cable & Computer*, the rule and reasoning stated in *Fischer* and *Convergent* no longer control. Instead, under *Cable & Computer* and FRCP, Rule 11, Clark is obligated to state all facts she presently has that support and/or "RELATE TO" the allegations in her Complaint that are referenced in these Interrogatories.

Additionally, these Interrogatories are not objectionable merely because an answer may involve an opinion or contention that relates to fact or requires the application of law to fact. (FRCP, Rule 33(a)(2); *O'Connor v. Boeing North American, Inc.* (C.D.Cal. 1999) 185 F.R.D. 272, 280-281; *Security Ins. Co. of Hartford v. Trustmark Ins. Co.* (D CT 2003) 218 F.R.D. 29, 34.)

Based on the foregoing, Clark's objections to Special Interrogatory Nos. 2, 5, 6, 7, 8, 9, 12, 13, 17, 18, 19 and 20 have no merit and do not justify her failure to provide substantive answers. Accordingly, PAR requests that Clark serve supplemental responses to Special Interrogatory Nos. 2, 5, 6, 7, 8, 9, 12, 13, 17, 18, 19 and 20 that (1) withdraw her objections to these Interrogatories and (2) state all facts that support and/or "RELATE TO" the allegations in her Complaint that are referenced in these Interrogatories.

Response to Special Interrogatory No. 4.

Special Interrogatory No. 4 asks Clark to describe all communications between her or her counsel and any member of the putative class described in her Complaint. Instead of stating the requested information, Clark objects as follows, "attorney-client privilege and … work-product doctrine" and "irrelevant." These objections are meritless and do not justify Clark's failure to substantively respond to Special Interrogatory No. 4.

First, Clark's "attorney-client privilege" objection has no merit, because, except for named plaintiffs/class representatives, before class certification (which has not yet occurred in this case), there is no attorney-client privilege between class counsel and class members. (*Hammond v. Junction City* (D.Kan. 2001) 167 F.Supp.2d 1271, 1286.)

Second, this Interrogatory does not request Clark's counsel's work product. It specifically asks for a description of communications with members of the putative class. In other words, it only asks for facts regarding communications with members of the putative class.

Third, Clark's "irrelevant" objection is nonsensical, because this matter is alleged to be a class action. As such, the contents of communications with members of the putative class are discoverable, because they could reveal facts relevant to Clark's claims, PAR's defenses and/or whether certain individuals should be members of the alleged putative class.

Accordingly, PAR requests that Clark supplement her response to Special Interrogatory No. 4 by (1) withdrawing her "irrelevant" objection and (2) describing in detail all of the communications between her or her counsel and any member of the putative class described in her Complaint, which description should include, without limitation, the persons to the communications, the date and time of the communications, the contents of the communications and how the communication occurred (i.e., in person, by telephone, by letter, by email, etc.).

Responses to Special Interrogatory Nos. 14 and 16.

Special Interrogatory No. 14 asks Clark to identify all persons that she believes have knowledge regarding any allegation in her Complaint. Special Interrogatory No. 16 asks Clark to identify all persons she believes are or may be members of the putative class described in her

Complaint. Clark's Responses to these Interrogatories only objected on the following grounds: (1) "this is a premature, burdensome, and harassing contention interrogatory, that much of the information necessary to answer is in Par's possession, and that Par has evaded responding to plaintiff's discovery on this topic;" (2) attorney client privilege; and (3) attorney work product. None of these objections have merit or justify Clark's failure to provide substantive responses.

First, for the reasons discussed immediately above regarding Clark's Responses to Special Interrogatory Nos. 2, 5, 6, 7, 8, 9, 12, 13, 17, 18, 19 and 20, Special Interrogatory Nos. 14 and 16 are not premature, burdensome or harassing, and Clark is legally obligated to provide all responsive information that is currently in her possession or accessible to her. See *Cable & Computer, supra,* 175 F.R.D. at p. 652. This objection is meritless for the additional reason that the now inapplicable rules regarding contention interrogatories stated in *Fischer* and *Convergent* do not apply to interrogatories that request the identification of people. (*Fischer, supra*, 143 F.R.D. at 96; *Convergent, supra*, 108 F.R.D. at 332-333.)

Second, Special Interrogatory Nos. 14 and 16 do not infringe on the attorney-client privilege, as they do not request Clark to identify or describe the content of attorney-client communications. Likewise, these Interrogatories do not request attorney work product, as they only ask for the identity of witness and class members.

For these reasons, PAR requests that Clark serve supplemental responses to Special Interrogatory Nos. 14 and 16 by (1) withdrawing her "premature, burdensome and harassing" objection and (2) providing all responsive information that she presently knows and to which she presently has access.

Response to Special Interrogatory No. 15

Special Interrogatory No. 15 asks Clark to identify all documents that "RELATE TO" any allegation in her Complaint. Clark's Response only objects as follows: (1) "requesting all documents that 'relate to' 'any allegation' is vague and ambiguous, and unintelligible;" and (2) "this is a premature, burdensome, and harassing contention interrogatory, that much of the information necessary to answer is in Par's possession, and that Par has evaded responding to plaintiff's discovery on this topic." Neither of these objections have merit, and they do not justify Clark's failure to provide a substantive response.

First, for the reasons discussed above regarding Clark's objections to the defined term "RELATE TO" as used in Special Interrogatory Nos. 2, 5, 6, 7, 8, 9, 12, 13, 17, 18, 19 and 20, Clark's same objection here is baseless. Again, Clark is obligated to use reason and common sense in understanding the terms and phrases used in the Interrogatories in making her best efforts to substantively respond to the same. (*Pulsecard, Inc. v. Discover Card Services, Inc.* (D KS 1996) 168 F.R.D. 295, 310.)

Second, and again for the reasons discussed above regarding Special Interrogatory Nos. 2, 5, 6, 7, 8, 9, 12, 13, 17, 18, 19 and 20, Clark's "contention interrogatory" objection to Special Interrogatory No. 15 is not supported by current law and thus, does not justify her refusal to provide a substantive response. See *Cable & Computer, supra,* 175 F.R.D. at p. 652. Additionally, the now inapplicable rules regarding contention interrogatories stated in *Fischer* and *Convergent* do not apply to interrogatories that request the identification of documents. (*Fischer, supra*, 143 F.R.D. at 96; *Convergent, supra*, 108 F.R.D. at 332-333.)

Accordingly, PAR requests that Clark serve a supplemental response thereto that (1) withdraws her objections to this Interrogatory and (2) provides all responsive information that she presently knows and to which she presently has access.

**Clark's Responses to Requests for Production of Documents, Set One**

Responses to Request for Production Nos. 1 and 3.

Request No. 1 asks Clark to produce all documents that "constitute, memorialize, or otherwise RELATE TO" all communications between her and any employee or representative of PAR. Similarly, Request No. 3 asks Clark to produce all documents that "constitute, memorialize, or otherwise RELATE TO" all communications between her and any employee or representative of" Reliable. In response, Clark objects based on attorney-client privilege and work product and responds by agreeing to produce all responsive documents that "constitute or refer to communications between her" and Par or Reliable. Clark's Responses are insufficient.

First, Clark's objections are meritless, because these two Requests do not ask for attorney-client communications or work product. However, to the extent that Clark believes that there are privileged documents that are responsive to these Requests that are being withheld from production, PAR requests that Clark prepare and provide PAR with a privilege log for those documents.

Second, Clark's Responses are only partially responsive. Clark was not asked only to produce documents that "constitute or refer to communications between her" and Par or Reliable. She was asked to produce all documents that "constitute, memorialize, or otherwise RELATE TO all communications between her and any employee or representative" of PAR or Reliant. Accordingly, PAR requests that Clark supplement her Responses to Request Nos. 1 and 3 by agreeing to provide all non-privileged, responsive documents that are in her possession, custody or control. (FRCP, Rule 34)

Additionally, if Clark is withholding any documents from production based on any objection, PAR requests that her supplemental responses also specifically state that documents

are being withheld and identify such documents. (FRCP, Rule 34; *Aikens v. Delux Fin'l Services, Inc.* (D KS 2003) 217 F.R.D. 533, 539.)

Responses to Request for Production Nos. 2, 5, 6, 7, 8, 9, 12, 13, 14, 15, 16 and 17.

These Requests for Production ask Clark to produce all documents that "constitute, memorialize, or otherwise RELATE TO" various allegations in her Complaint. Clark's responses to these Requests only state the following objections: (1) "requesting all documents that 'relate to' an allegation is vague, ambiguous, and unintelligible;" (2) "this is a premature, burdensome, and harassing request, that much of the information necessary to answer is in Par's possession, and that Par has evaded responding to plaintiff's discovery on this topic;" and (3) "the demand invades the attorney-client privilege and the work product doctrine." None of these objections relieve Clark of her obligation to substantively respond to these Requests and produce all non-privileged, responsive documents.

First, for the reasons discussed above with regard to Clark's objections to PAR's Special Interrogatories and because Clark's Responses to Request Nos. 1, 3, 10 and 11 indicate that Clark understands the meaning of "RELATE TO," Clark's objection to use of this defined term is meritless and does not relieve Clark from her obligation to substantively respond and produce documents.

Second, and again for the for the reasons discussed above with regard to Clark's objections to PAR's Special Interrogatories, Clark's "premature, burdensome, and harassing" objection is insufficient to justify Clark's refusal to provide substantive responses and produce documents. In particular, to the extent that this objection relies on the *Fischer* and *Convergent* cases, Clark's reliance is misplaced. Not only did those cases only apply to interrogatories (and not requests for production of documents), but, for the reasons stated above, those cases have been superseded in the Central District of California and replaced by the rule that a plaintiff must respond with all information presently in her possession.

Third, these Requests do not ask for attorney-client communications or work product. However, to the extent that Clark believes that there are privileged documents that are responsive to these Requests that are being withheld from production, PAR requests that Clark prepare and provide PAR with a privilege log for those documents.

Based on the foregoing, PAR requests that Clark supplement her responses to Requests for Production Nos. 2, 5, 6, 7, 8, 9, 12, 13, 14, 15, 16 and 17 by (1) withdrawing her objection to the defined term "RELATE TO" and her "premature, burdensome and harassing" objection, (2) stating that she will produce all responsive, non-privileged documents in her possession, custody or control (FRCP, Rule 34), and (3) for any documents that are being withheld from production based on any objection, specifically stating that documents are being withheld and identifying

such documents. (FRCP, Rule 34; *Aikens v. Delux Fin'l Services, Inc.* (D KS 2003) 217 F.R.D. 533, 539.)

Request for Production of Documents No. 4.

This Request asks Clark to produce all documents that "constitute, memorialize, or otherwise RELATE TO" all communications between her or her counsel and any member of the putative class described in her Complaint. In Response, Clark only objects on the grounds that the demand (1) "invades the attorney-client and violates the work product doctrine," (2) "seeks irrelevant information" and (3) "is burdensome and harassing." These objections do not warrant Clark's refusal to substantively respond to this Request and produce responsive documents.

First, Clark's "attorney-client privilege" objection has no merit, because, except for named plaintiffs/class representatives, before class certification (which has not yet occurred in this case), there is no attorney-client privilege between class counsel and class members. (*Hammond v. Junction City* (D.Kan. 2001) 167 F.Supp.2d 1271, 1286.) Additionally, by this Request, PAR does not seek nor expect the production of Clark's counsel's work product. However, to the extent that Clark believes that there are privileged documents that are responsive to these Requests and are being withheld from production, PAR requests that Clark prepare and provide PAR with a privilege log for those documents. Furthermore, even if some of the responsive documents are privileged and justify an objection, Clark is still required to produce all non-privileged, non-objectionable documents. (FRCP, Rule 34; *Aikens v. Delux Fin'l Services, Inc.* (D KS 2003) 217 F.R.D. 533, 539.)

Second, Clark's relevance objection is meritless. Clark initiated this matter as an alleged class action and, thus, it is indisputable that documents regarding communications with members of the putative class could reveal discoverable facts relevant to, among other issues, Clark's claims, PAR's defenses and/or whether certain individuals should be members of the alleged putative class.

Third, Clark's "burdensome and harassing" objection is also unjustifiable, as Clark's production of such documents cannot be unreasonably difficult and expensive (FRCP, Rule 26(b)) assuming that, since the initiation of this lawsuit, if not before, Clark and her counsel have been making efforts to compile members of the alleged putative class. Thus, there must be documents responsive to this Request that are in Clark's possession, custody and/or control and readily available for production. (FRCP, Rule 34)

Based on the foregoing, PAR requests that Clark supplement her response to Request for Production No. 4 by (1) withdrawing her "burdensome and harassing" and relevance objections, (2) stating that she will produce all responsive, non-privileged documents in her possession, custody or control (FRCP, Rule 34), and (3) for any documents that are being withheld from

production based on any objection, specifically stating that documents are being withheld and identifying such documents. (FRCP, Rule 34; *Aikens v. Delux Fin'l Services, Inc.* (D KS 2003) 217 F.R.D. 533, 539.)

Responses to Request for Production of Documents Nos. 10 and 11.

Request No. 10 asks Clark to produce all documents that "constitute, memorialize, or otherwise RELATE TO all damage" she claims to have incurred as a result of the action or inaction of PAR. Similarly, Request No. 11 asks Clark to produce all documents that "constitute, memorialize, or otherwise RELATE TO all damage" she claims to have incurred as a result of the action or inaction of Reliant. Clark's Responses object that "RELATE TO" is vague, ambiguous and unintelligible and that the demand "seeks to invade the attorney-client privilege and work product doctrine." Clark's Responses also state that Clark "will produce all non-privileged documents that support her claim for damages in this action." Clark's objections are unjustified, and her responses are evasive.

First, for the reasons discussed repeatedly above, Clark's objections to the use of the defined term "RELATE TO" have no support, and PAR hereby requests that it be withdrawn in Clark's supplemental responses.

Second, these two Requests do not ask for attorney-client communications or work product. However, to the extent that Clark believes that there are privileged documents that are responsive to these Requests and are being withheld from production, PAR requests that Clark prepare and provide PAR with a privilege log for those documents.

Third, Clark's Responses are only partially responsive. Clark was not asked to produce documents that only "support" her claim for damages. She was asked to produce all documents that "constitute, memorialize, or otherwise RELATE TO" her claims for damages. Accordingly, PAR requests that Clark supplement her Responses to Request Nos. 10 and 11 by agreeing to provide all non-privileged, responsive documents that are in her possession, custody or control. (FRCP, Rule 34)

Additionally, if Clark is withholding any documents from production based on any objection, PAR requests that her supplemental responses also specifically identify the documents that are being withheld and identify such documents. (FRCP, Rule 34; *Aikens v. Delux Fin'l Services, Inc.* (D KS 2003) 217 F.R.D. 533, 539.)

PAR requests that Clark serve (1) the above-requested supplemental responses to Special Interrogatory Nos. 1-9 and 12-20 and Requests for Production of Document Nos. 1-17, (2) the above-requested privilege log and (3) all non-privileged documents responsive to any and all of

the Requests for Production of Documents no later than **April 26, 2016**. Otherwise, PAR will have no choice but to file all necessary motions to compel and seek all available relief.

PAR hopes to resolve the deficiencies raised in this letter without filing discovery motions with the Court. As such, if you want to further discuss the issues raised in this letter, please do not hesitate to contact me.

Very truly yours,

Donald E. Bradley
for MUSICK, PEELER & GARRETT LLP

DEB:ay

cc: Brandon A. Block, Esq., Law Offices of Brandon A. Block
David M. Lester, Esq., Musick, Peeler & Garrett, LLP

987416.1

# EXHIBIT F

**From:** Bradley, Donald <D.Bradley@MPGLAW.com>
**Sent:** Friday, May 06, 2016 1:08 PM
**To:** Alec Trueblood; Lester, David
**Cc:** brandon
**Subject:** RE: Clark v. Par, Response to meet and confer
**Attachments:** Clark v_ PAR - 5616 Further Meet and Confer Letter to Mr_ Tru001.pdf

See attached.

**Donald E. Bradley**
*Partner*

MUSICK PEELER

Musick, Peeler & Garrett LLP
650 Town Center Drive Suite 1200
Costa Mesa, CA 92626

Download V-Card
d.bradley@mpglaw.com
www.musickpeeler.com

T: 714.668.2447
F: 714.668.2490

The information contained in this communication is protected by the attorney-client and/or the attorney/work product privilege. It is intended only for the use of the addressee, and the privileges are not waived by virtue of this having been sent by e-mail. If the person actually receiving this communication or any other reader of the communication is not the named recipient, or the employee or agent responsible to deliver it to the recipient, any use, dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by return e-mail or by e-mail to administrator@mpglaw.com, and destroy this communication and all copies thereof, including all attachments.

INTERNATIONAL ALLIANCE OF LAW FIRMS

**From:** Alec Trueblood [mailto:alec@hush.com]
**Sent:** Monday, May 02, 2016 10:10 AM
**To:** Lester, David
**Cc:** Bradley, Donald
**Subject:** Clark v. Par, Response to meet and confer

Dear Mr. Bradley,

This email will respond to your April 12, 2016 meet and confer letter, concerning plaintiff's responses to Par's first set of interrogatories, and first set of document demands.

First Set of Interrogatories

Nos. 1, 3, 14. Plaintiff will provide a supplemental response.

Nos. 2, 5, 13, 17, 18, 19. Plaintiff is willing to provide a supplemental response if the words "or otherwise RELATE TO" are stricken from the interrogatories. Under the FRCP, the scope of discovery is limited to information relevant to a claim or defense, and this language encompasses far more than that. We also cannot decipher what such broad language actually means when answering these interrogatories, and the explanations in your letter do not help.

Nos. 6, 7, 8, 9, 12, 16, 20 We disagree with the analysis in the Cable & Computer case, or that a single district court decision could "set a rule" for the district or circuit, when there is substantial opposing caselaw. The facts necessary to fully answer these interrogatories are particularly within the knowledge of defendants, and are also the subject of

discovery which plaintiff has propounded, and Par has refused to answer. Accordingly, per Convergent Technologies and Fischer and Porter Company v. Tolson, the interrogatories are burdensome and oppressive and designed to harass. We also reiterate that the "RELATE TO" language in the interrogatories violates the current discovery standard under the FRCP, which is limited to information relevant to a claim or defense. You don't address our objection that it is unfair to ask plaintiff to identify information which is exclusively within Par's control, when Par has refused to provide that information in its interrogatory responses.

No. 4. The interrogatory invades the attorney-client privilege by asking for communications between counsel and putative class members. The class definition includes all consumers whose vehicles were repossessed in the last four years with Par's involvement. Counsel actively practice in the area of wrongful repossessions, and accordingly have many existing and former clients who are putative class members. The communications with, and even the identities, of these clients are clearly protected by the attorney-client privilege, regardless of whether these persons are considered "clients" in this action. The interrogatory also invades the work-product doctrine, attempting to uncover plaintiff's counsel's investigation of the case, by uncovering contacts with putative class members. Finally, the interrogatory is overbroad, and seeks information irrelevant to any claim or defense. The FRCP now limits discovery to that relevant to claims or defenses, and the interrogatory is not limited to communications which concern the issues in this case, or Par's conduct. Finally, the interrogatory is burdensome and would require counsel to search their old case files and review all communications they had with their own clients, to find information that has nothing to do at all with this lawsuit.

No. 15. Plaintiff stands on her objections to this interrogatory. We note that Par itself refused to respond to any interrogatory we propounded asking it to identify documents. Moreover, plaintiff will be producing documents in the near future, which render this interrogatory superfluous. The "RELATE TO" language in this interrogatory is also unintelligible and renders the interrogatory extremely overbroad, and in violation of the FRCP.

First Set of Document Demands

Demand Nos. 1 and 3. These demands are couched in such broad language ("RELATE TO"), that they encompass any communications between plaintiff and her counsel, which might in any way concern plaintiff's communications with Par. This is objectionable on attorney-client and work product grounds, and under the FRCP discovery standard. Further, requiring us to go through our file to produce a privilege log of all communications with our client, would be harassing and unnecessary. We stand by our objections and the current response, which will give you all writings which constitute any communications between plaintiff and Par or Reliable.

Demand No. 2. This demand seeks any documents which "memorialize, constitute, or relate to" an allegation. We don't understand how a document could "memorialize" or "constitute" an allegation, and view the demand as nonsensical in this respect. The "relate to" language is excessively overbroad given the new discovery standard under the FRCP, i.e. relevant to a claim or defense. We stand by our objections.

Demand No 4. We stand by our objections. Please see discussion under the interrogatories.

Demand Nos. 5, 6, 12, 13, 14, 15, and 16. We would be willing to provide supplemental responses to these document demands, provided that Par withdraws the "or otherwise RELATE TO" language, and also states that it is not seeking any attorney-client communications.

Demand Nos. 7, 8, 9, and 17. We stand by our objections to these premature contention demands, which seek documents relating to class certification which are almost exclusively within Par's custody or control. However, we would be willing to provide supplemental responses after the opportunity to take discovery on class certification matters, and provided Par withdraws the "or otherwise RELATE TO" language, and also states that it is not seeking any attorney-client communications.

Demand Nos. 10 and 11. The demands are nonsensical in asking for documents which "constitute" damages. As discussed previously, the "RELATE TO" language is overbroad given the current FRCP discovery standard, and the demands invade the attorney-client privilege and work product doctrine by asking for any attorney-authored documents that relate to damages in this case. We believe the current responses are adequate.

Sincerely,

Alexander Trueblood
Trueblood Law Firm
10940 Wilshire Blvd., Suite 1600
Los Angeles, CA 90024

310-443-4139
310-943-2255 fax
email: alec@hush.com

Sent using Hushmail

MUSICK, PEELER & GARRETT LLP
ATTORNEYS AT LAW

DONALD E. BRADLEY
d.bradley@mpglaw.com
(714) 668-2447

650 TOWN CENTER DRIVE, SUITE 1200
COSTA MESA, CALIFORNIA 92626-1925

TELEPHONE: (714) 668-2400
FACSIMILE: (714) 668-2490
WWW.MUSICKPEELER.COM

LOS ANGELES
ORANGE COUNTY
SAN DIEGO
SAN FRANCISCO
SANTA BARBARA
WESTLAKE VILLAGE

FILE NO.: 71279.001

May 6, 2016

**VIA E-MAIL AND U.S. MAIL**

Alexander Trueblood, Esq.
Trueblood Law Firm
10940 Wilshire Boulevard, Suite 1600
Los Angeles, California 90024

Re: Clark v. PAR, Inc., et al.
United States District Court Case No.: 2:15-CV-02322 MWF

Dear Mr. Trueblood:

This letter is in response to your May 2, 2016 email (which responded to our April 12, 2016 meet and confer letter) regarding Plaintiff Barbara Clark's ("Clark") deficient responses to PAR, Inc.'s ("PAR") Special Interrogatories, Set One (the "Interrogatories"), and Requests for Production of Documents, Set One (the "RFPs"). Please be advised that, except as otherwise stated below, this will be PAR's last attempt to obtain compliant discovery responses from Clark without involving the Court.

**PAR's Discovery Requests That Include the Term "RELATE TO" Are Within The Permissible Scope of Discovery**

Clark's discovery responses and your letter repeatedly take issue with the use of the defined term "RELATE TO" in PAR's discovery requests. This letter will explain, again and in greater detail, why PAR is entitled to all information and documents that "RELATE TO" Clark's allegations and claims for damages.

First, Clark's discovery responses only objected to the term "RELATE TO" on the ground that it is "vague and ambiguous, and unintelligible." After explaining why that objection is meritless in our April 12th letter, Clark now takes the untenable position that "RELATE TO" is outside the scope of permissible discovery. As Clark failed to raise the "scope" objection in her initial responses, she has waived it (FRCP 33(b)(4)) and may not now rely on it to support her refusal to provide substantive responses.

Despite her waiver of this objection and for the sake of reaching an agreeable resolution, we will further explain why "RELATE TO" is within the scope of permissible discovery. FRCP

26(b) provides that discovery may relate to "any nonprivileged matter that is relevant to any party's claim or defense. … Information within this scope of discovery need not be admissible in evidence to be discoverable." (Emphasis added.) PAR's Interrogatories and Requests for Production of Documents ("RFPs") define "RELATE TO" as "disclose, discuss, support, evidence, constitute, identify, indicate, involve, reference or reflect the subject matter referred to," and thus, the term demands all information and documents that may disclose information that both supports or contradicts Clark's allegations.

Accordingly, the Interrogatories and RFPs that use "RELATE TO" are well within the scope of discovery defined by FRCP 26, and your demands that the term be stricken from PAR's discovery requests are hereby rejected.

**First Set of Special Interrogatories**

Clark's Responses to Interrogatory Nos. 2, 5, 13, 17, 18 and 19

In your email, Clark offered to respond to these Interrogatories if PAR agrees to strike the words "or otherwise RELATE TO." For the reasons indicated above, PAR will not agree to strike "RELATE TO." As you stated in your email, the scope of discovery includes information relevant to claims and defenses. Striking "RELATE TO" will leave these Interrogatories requesting only information that "supports" Clark's claim, which is only part of what Clark is obligated to disclose. PAR included "RELATE TO" in these Interrogatories to ensure that Clark would provide all information that either supports or contradicts her claims. Accordingly, while PAR will not agree to strike "RELATE TO," it will agree that these Interrogatories are to be interpreted as asking for all information relevant to Clark's allegations referenced therein and all information relevant to any defenses to those allegations. Please advise by May 13, 2016, whether, with this understanding as to the meaning of "RELATE TO," Clark will agree to supplement her responses to these Interrogatories.

Clark's Responses to Interrogatory Nos. 6, 7, 8, 9, 12, 16 and 20

Clark claims that she should not have to substantively respond to these Interrogatories at this time, because some of the responsive information has not been provided to her by PAR. Contrary to her position and as stated in *Cable & Computer Technology, Inc. v. Lockheed Saunders, Inc.* (C.D. Cal. 1997) 175 F.R.D. 646, Clark "must answer the interrogatories with the information [she] now possesses." Clark's obligation to respond to these Interrogatories with the information she has is consistent with FRCP 11, which requires that Clark have some factual basis for the allegations in her complaint. *Cable & Computer, supra,* at p. 652; *In re One Bancorp Securities Litigation* (D.Me. 1991) 134 F.R.D. 4, 8. Accordingly, for the last time, PAR requests that Clark respond to these Interrogatories under oath with all responsive information she now possesses, even if the only response she can provide states that she currently has no

responsive information. In considering this request, please remember that, even if Clark currently has no responsive information, she may and, under FRCP 26(e), is obligated to supplement her responses with responsive information that she obtains as her investigation and discovery proceed.

Clark's Response to Interrogatory No. 4

Contrary to your contention, Interrogatory No. 4 does not request privileged attorney-client communications. First, communications between Plaintiff Clark and alleged class members are not attorney-client communications for the obvious reason that Clark is not an attorney.

Second, the scope of the attorney-client privilege is limited to communications relating to the purpose of the representation. *United States v. Martin* (9th Cir. 2002) 278 F.3d 988, 999. Thus, communications regarding this case between Clark's counsel and alleged class members who were purportedly counsel's clients in previous matters are not communications within the scope of the privilege that arose from the previous matters. Accordingly, and because there is currently no attorney-client relationship with alleged members of the uncertified class (*Hammond v. Junction City* (D.Kan. 2001) 167 F.Supp.2d 1271, 1286), the communications between counsel and alleged class members regarding this case are not privileged and are discoverable.

Third, even if this Interrogatory demands privileged attorney-client communications, Clark must respond to the remainder of the Interrogatory that does not call for privileged communications, which includes communications between Plaintiff or her counsel and alleged members of the uncertified class. See FRCP 33(b)(3).

Fourth, and contrary to your unsupported contention, the identity of an alleged class member is not a privileged communication. *In re Grand Jury Subpoena Served Upon Doe* (2nd Cir. 1986) 781 F.2d 238, 247; *Lefcourt v. United States* (2d Cir. 1997) 125 F.3d 79, 86.

Additionally, this Interrogatory does not demand information protected by the attorney work product doctrine, because it does not request trial preparation materials (i.e., documents or tangible things) that reveal counsel's strategy, intended lines of proof, evaluation of strengths and weaknesses and/or inferences drawn from facts. (FRCP 26(b)(3); *Hickman v. Taylor* (1947) 329 U.S. 495, 511.) The purpose of the work product protection is to preserve the privacy of attorneys' thought processes and prevent parties from "borrowing the wits of their adversaries." (*Hickman, supra*; *Holmgren v. State Farm Mut. Auto Ins. Co.* (9th Cir. 1992) 976 F.2d 573, 576; *United States ex rel. Bagley v. TRW, Inc.* (CD CA 2003) 212 FRD 554, 559.) Interrogatory No. 4 only demands facts regarding the communications with putative class members and not

materials that disclose Clark's counsel's strategy or thought process. Thus, the facts requested by Interrogatory No. 4 are discoverable and must be disclosed by Clark.

Furthermore, this Interrogatory requests information within the scope of discovery and is not unduly burdensome, because information regarding the alleged class's claims and PAR's defenses thereto is relevant and discoverable under FRCP 26. To be clear, Clark, the Plaintiff herein, made the allegations that put the class's claims at issue and, thereby, made information regarding those claims discoverable.

In the spirit of compromise and to be consistent with the law discussed above, PAR will accept a supplemental response to Interrogatory No. 4 that only describes all communications between Clark or counsel and members of the alleged putative class that relate to the claims and defenses at issue in this case.

Clark's Response to Interrogatory No. 15

In your email, you state that Clark "stands on her objections to this interrogatory," because "Par itself refused to respond to any interrogatory ... asking to identify documents," and because "plaintiff will be producing documents in the near future." PAR did not refuse to respond to interrogatories requesting the identification of documents. PAR had already produced the responsive documents and invoked FRCP 33(d). Unlike PAR, Clark has not produced the responsive documents and cannot invoke FRCP 33(d). Nevertheless, PAR will agree to wait until it has had the opportunity to review the documents that will be produced by Clark before deciding whether to move to compel a further response to Interrogatory No. 15, so long as Clark produces the responsive documents by May 18, 2016. Please advise whether this is acceptable by May 13, 2016.

**First Set of Requests for Production of Documents**

Clark's Responses to RFP Nos. 1 and 3

By RFP Nos. 1 and 3, PAR does not seek and does not expect Clark to produce attorney-client communications or attorney work product. PAR only demands all non-privileged documents that "constitute, memorialize, or otherwise RELATE TO" all communications between Clark and any employee or representative of PAR or Reliant. As explained in our prior letter, Clark's Responses to these RFPs are evasive by stating that she would only produce documents that "constitute or refer to communications between her" and PAR or Reliable. While the statement in your email that Clark "will give [PAR] all writings which constitute any communications between [her] and Par or Reliable" is a step in the right direction, it is, nevertheless, insufficient. Clark must supplement her responses to RFP Nos. 1 and 3 by stating that she will produce all non-privileged, responsive documents, including those non-privileged

documents that memorialize or "RELATE TO" communications between Clark and any employee or representative of PAR or Reliant.

Clark's Responses to RFP No. 2, 5, 6, 12, 13, 14, 15 and 16

Please see the discussion above regarding "RELATE TO" as being within the scope of permissible discovery. As the term "RELATE TO" was used in these RFPs only to demand all documents that are relevant to Clark's allegations and any defenses thereto, PAR, again and for the last time, demands that Clark supplement her response to these RFPs with an agreement to produce the requested documents. With this understanding of the meaning and purpose of "RELATE TO," please advise by May 13, 2016, whether Clark will supplement her responses to RFP Nos. 2, 5, 6, 12, 13, 14, 15 and 16.

Clark's Response to RFP No. 4

Please see the discussion above regarding Clark's responses to the Interrogatories, and in particular Interrogatory No. 4. As there is no attorney-client privilege covering communications between Clark or her counsel and members of the uncertified class regarding this case, PAR requests that Clark supplement her response to RFP No. 4 by agreeing to provide all responsive documents that are not attorney work product or communications exclusively between Clark and her counsel.

Clark's Responses to RFP Nos. 7, 8, 9 and 17

Contrary to your position, these Requests are not premature contention demands subject to the restrictions that were applied only to contention interrogatories (not requests for production) in the *Fischer* and *Convergent* cases. There is no restriction on PAR requesting documents that are relevant to Clark's claims and any defenses thereto at this time.

Second, for the reasons stated above, PAR rejects Clark's request to strike "RELATE TO" from these RFPs.

Third, PAR rejects Clark's request that she be permitted to "provide supplemental responses after the opportunity to take discovery on class certification matters." The Court did not phase discovery in this matter, and therefore, all matters relevant to Clark's claims and any defenses are discoverable, including matters relevant to Clark's class allegations.

Thus, Clark must supplement her responses to RFP Nos. 7, 8, 9 and 17 by stating that she will produce all responsive documents in her possession, custody or control, or alternatively, if she does not have possession, custody or control of responsive documents, she must so state. FRCP 34; *Schwartz v. Mktg. Pub. Co.* (D. Conn. 1994) 153 F.R.D. 16, 21.

Clark's Responses to RFP Nos. 10 and 11

Clark's Responses to these RFPs are inadequate and evasive. As explained in our prior letter, while Clark was requested to produce all documents that "constitute, memorialize, or otherwise RELATE TO all [of her] damages," her responses state that she will only produce documents that "support her claim for damages." The scope of discovery goes well beyond matters that support Clark's claims. Under FRCP 26, Clark is obligated to produce all non-privileged documents that both support and undercut or defeat her claims. That is why the use of the term "RELATE TO" in the RFPs is proper. Accordingly, PAR requests that Clark supplement her responses to RFP Nos. 10 and 11 by stating that she will produce all responsive documents in her possession, custody or control, or alternatively, if she does not have possession, custody or control of responsive documents, she must so state. FRCP 34; *Schwartz v. Mktg. Pub. Co.* (D. Conn. 1994) 153 F.R.D. 16, 21.

**Deadline for Clark to Provide Supplemental Responses and Produce Documents**

In your email, Clark unequivocally agreed to provide supplemental responses to Interrogatory Nos. 1, 3 and 14, but she failed to state when she would serve them. Accordingly, PAR requests that Clark serve her supplemental responses to Interrogatory Nos. 1, 3 and 14 and all other supplemental discovery responses that she agrees to provide in response to this letter no later than **May 18, 2016**.

Clark has also represented that she will produce certain requested documents, but she has not produced any documents to date. Additionally, our prior letter and this letter demand that Clark produce all other requested documents that she has previously refused to produce. Accordingly, PAR requests that Clark produce all requested, non-privileged documents no later than **May 18, 2016**.

While PAR is hopeful that the deficiencies with Clark's discovery responses and her failure to produce documents will be resolved informally, if the parties cannot come to an agreement following this correspondence, PAR will file all necessary motions to compel and seek all available relief.

Very truly yours,

Donald E. Bradley
for MUSICK, PEELER & GARRETT LLP

DEB:ay

cc: Brandon A. Block, Esq., Law Offices of Brandon A. Block
David M. Lester, Esq., Musick, Peeler & Garrett, LLP

991838.1

**From:** Alec Trueblood <alec@hush.com>
**Sent:** Thursday, May 19, 2016 12:17 PM
**To:** Bradley, Donald
**Subject:** RE: Clark v. Par, Response to meet and confer

Don,

I am working on a response and some proposals that may resolve at least some issues. I will have that for you by tomorrow. We could do a phone call next week if there are any issues remaining.

Sincerely,

Alexander Trueblood
Trueblood Law Firm
10940 Wilshire Blvd., Suite 1600
Los Angeles, CA 90024
310-443-4139
310-943-2255 fax
email: alec@hush.com

Sent using Hushmail

On 5/19/2016 at 10:08 AM, "Donald Bradley" <D.Bradley@MPGLAW.com> wrote:

We have received no response to this letter. When are you available for a call under LR 37-1 and 2 to discuss the issues and a joint stipulation?

Thanks. Don

---

**From:** Bradley, Donald
**Sent:** Friday, May 06, 2016 11:08 AM
**To:** Alec Trueblood; Lester, David
**Cc:** brandon
**Subject:** RE: Clark v. Par, Response to meet and confer

See attached.

**Donald E. Bradley**

*Partner*

MUSICK PEELER

Musick, Peeler & Garrett LLP
650 Town Center Drive Suite 1200
Costa Mesa, CA 92626

Download V-Card
d.bradley@mpglaw.com
www.musickpeeler.com

T: 714.668.2447
F: 714.668.2490

The information contained in this communication is protected by the attorney-client and/or the attorney/work product privilege. It is intended only for the use of the addressee, and the privileges are not waived by virtue of this having been sent by e-mail. If the person actually receiving this communication or any other reader of the communication is not the named recipient, or the employee or agent responsible to deliver it to the recipient, any use, dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by return e-mail or by e-mail to administrator@mpglaw.com, and destroy this communication and all copies thereof, including all attachments.

INTERNATIONAL ALLIANCE OF LAW FIRMS

**From:** Alec Trueblood [mailto:alec@hush.com]
**Sent:** Monday, May 02, 2016 10:10 AM
**To:** Lester, David
**Cc:** Bradley, Donald
**Subject:** Clark v. Par, Response to meet and confer

Dear Mr. Bradley,

This email will respond to your April 12, 2016 meet and confer letter, concerning plaintiff's responses to Par's first set of interrogatories, and first set of document demands.

First Set of Interrogatories

Nos. 1, 3, 14. Plaintiff will provide a supplemental response.

Nos. 2, 5, 13, 17, 18, 19. Plaintiff is willing to provide a supplemental response if the words "or otherwise RELATE TO" are stricken from the interrogatories. Under the FRCP, the scope of discovery is limited to information relevant to a claim or defense, and this language encompasses far more than that. We also cannot decipher what such broad language actually means when answering these interrogatories, and the explanations in your letter do not help.

Nos. 6, 7, 8, 9, 12, 16, 20 We disagree with the analysis in the Cable & Computer case, or that a single district court decision could "set a rule" for the district or circuit, when there is substantial opposing caselaw. The facts necessary to fully answer these interrogatories are particularly within the knowledge of defendants, and are also the subject of discovery which plaintiff has propounded, and Par has refused to answer. Accordingly, per Convergent Technologies and Fischer and Porter Company v. Tolson, the interrogatories are burdensome and oppressive and designed to harass. We also reiterate that the "RELATE TO" language in the interrogatories violates the current discovery standard under the FRCP, which is limited to information relevant to a claim or defense. You don't address our objection that it is unfair to ask plaintiff to identify information which is exclusively within Par's control, when Par has refused to provide that information in its interrogatory responses.

No. 4. The interrogatory invades the attorney-client privilege by asking for communications between counsel and putative class members. The class definition includes all consumers whose vehicles were repossessed in the last four years with Par's

involvement. Counsel actively practice in the area of wrongful repossessions, and accordingly have many existing and former clients who are putative class members. The communications with, and even the identities, of these clients are clearly protected by the attorney-client privilege, regardless of whether these persons are considered "clients" in this action. The interrogatory also invades the work-product doctrine, attempting to uncover plaintiff's counsel's investigation of the case, by uncovering contacts with putative class members. Finally, the interrogatory is overbroad, and seeks information irrelevant to any claim or defense. The FRCP now limits discovery to that relevant to claims or defenses, and the interrogatory is not limited to communications which concern the issues in this case, or Par's conduct. Finally, the interrogatory is burdensome and would require counsel to search their old case files and review all communications they had with their own clients, to find information that has nothing to do at all with this lawsuit.

No. 15. Plaintiff stands on her objections to this interrogatory. We note that Par itself refused to respond to any interrogatory we propounded asking it to identify documents. Moreover, plaintiff will be producing documents in the near future, which render this interrogatory superfluous. The "RELATE TO" language in this interrogatory is also unintelligible and renders the interrogatory extremely overbroad, and in violation of the FRCP.

First Set of Document Demands

Demand Nos. 1 and 3. These demands are couched in such broad language ("RELATE TO"), that they encompass any communications between plaintiff and her counsel, which might in any way concern plaintiff's communications with Par. This is objectionable on attorney-client and work product grounds, and under the FRCP discovery standard. Further, requiring us to go through our file to produce a privilege log of all communications with our client, would be harassing and unnecessary. We stand by our objections and the current response, which will give you all writings which constitute any communications between plaintiff and Par or Reliable.

Demand No. 2. This demand seeks any documents which "memorialize, constitute, or relate to" an allegation. We don't understand how a document could "memorialize" or "constitute" an allegation, and view the demand as nonsensical in this respect. The "relate to" language is excessively overbroad given the new discovery standard under the FRCP, i.e. relevant to a claim or defense. We stand by our objections.

Demand No 4. We stand by our objections. Please see discussion under the interrogatories.

Demand Nos. 5, 6, 12, 13, 14, 15, and 16. We would be willing to provide supplemental responses to these document demands, provided that Par withdraws the "or otherwise RELATE TO" language, and also states that it is not seeking any attorney-client communications.

Demand Nos. 7, 8, 9, and 17. We stand by our objections to these premature contention demands, which seek documents relating to class certification which are almost exclusively within Par's custody or control. However, we would be willing to provide supplemental responses after the opportunity to take discovery on class certification matters, and provided Par withdraws the "or otherwise RELATE TO" language, and also states that it is not seeking any attorney-client communications.

Demand Nos. 10 and 11. The demands are nonsensical in asking for documents which "constitute" damages. As discussed previously, the "RELATE TO" language is overbroad given the current FRCP discovery standard, and the demands invade the attorney-client privilege and work product doctrine by asking for any attorney-authored documents that relate to damages in this case. We believe the current responses are adequate.

Sincerely,

Alexander Trueblood
Trueblood Law Firm
10940 Wilshire Blvd., Suite 1600
Los Angeles, CA 90024
310-443-4139
310-943-2255 fax
email: alec@hush.com

Sent using Hushmail

**From:** Xerox_7775@mpglaw.com
**Sent:** Friday, May 20, 2016 1:51 PM
**To:** Yusay, April; Bradley, Donald
**Subject:** Trueblood 5/20/16 fax
**Attachments:** Scan from OC Xerox_7775001.pdf

Attachment File Type: pdf

For more information on Xerox products and solutions, please visit http://www.xerox.com

# Trueblood Law Firm

10940 Wilshire Boulevard, Suite 1600
Los Angeles, California 90024

Telephone (310) 443-4139
Facsimile (310) 943-2255

May 20, 2016

Via Facsimile (714) 668-2490

Musick Peeler & Garrett LLP
Attention: Don Bradley
650 Town Center Drive, Suite 1200
Costa Mesa, CA 92626

Re: Barbara Clark v. Country Wide Towing, Inc. dba Reliable Recovery, United States District Court, Central District of California, Case No. 15-CV-02322 MWF

Dear Mr. Bradley:

This letter responds to your letter dated May 6, 2016, regarding plaintiff's responses to Par's first set of interrogatories and document demands.

First Set of Document Demands

Demand Nos. 1, 2, 3, 5, 6, 7-17. With your clarification that you are not seeking any privileged or work-product documents, plaintiff will provide a supplemental response stating that she is producing all non-privileged responsive documents in her possession, except such documents which defendant has produced already to plaintiff. This should not be considered an admission that your "relate to" language is within the scope of permissible discovery; however, we plan to respond to the demands as written.

Demand No. 4. We stand by our objections to this demand. The demand clearly seeks privileged communications, i.e. communications with our current and former clients whose vehicles were repossessed by Par. The demand is also not limited to information regarding this case and we are not aware of any authority that you could re-write it in the meet and confer process.

First Set of Interrogatories

Interrogatory Nos. 2, 5, 12, 13, 17, 18, 19. We will agree to provide supplemental responses which state all relevant facts supporting the various allegations in the complaint. We can't agree to provide facts that support your *defenses*, because we don't know what your defenses are, and don't think you have any. The request to analyze your defenses and summarize the

facts supporting them also invades the work product doctrine. In addition, these demands don't ask anything about defenses, but only mention affirmative allegations in the complaint.

Interrogatory 6. We will provide a supplemental response if you will produce the communication log (presumably on the RDN software/system) between Par and Reliable, as well as Par's own internal communications/actions log. If not, we stand by our objection that this interrogatory is premature, and asks us for contentions based on facts exclusively within your client's control, and which we have requested unsuccessfully in discovery.

Interrogatories 7, 8, 9, 20. We will provide supplemental responses to these interrogatories which state all relevant facts supporting our contentions that the class certification criteria are met.

Interrogatory No. 16. You are asking for a class list which is exclusively within Par's possession, and which Par has refused to produce in discovery. We will provide a supplemental response if Par produces the class list we have requested. Otherwise, we stand on our objections.

Interrogatory 4. We stand by our objections, for the reasons explained under Document Demand No. 4. The interrogatory specifically asks for communications between plaintiff's counsel and our existing and former clients. Indeed, the interrogatory even seeks confidential and privileged communications between Clark herself, and plaintiff's counsel.

Interrogatory 15. We agree with your proposal to provide the document production, and wait for you to advise us if a further response is needed. We can then further discuss the objections in light of the document production.

We intend to produce the documents and the supplemental responses to you by May 31, 2016. Please let me know if there is anything further we need to discuss, or if a personal meeting would be helpful.

Sincerely,

Alexander B. Trueblood

cc: Brandon Block, Esq.

# EXHIBIT G

TRUEBLOOD LAW FIRM
ALEXANDER B. TRUEBLOOD Bar No. 150897
10940 Wilshire Blvd., Suite 1600
Los Angeles, CA 90024
Telephone: (310) 443-4139
Facsimile: (310) 943-2255

LAW OFFICES OF BRANDON A. BLOCK
BRANDON A. BLOCK Bar No. 215888
433 North Camden Dr., Ste. 600
Beverly Hills, CA 90210
Telephone: (310) 887-1440
Facsimile: (310) 496-1420

Attorneys for Plaintiff
BARBARA CLARK

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BARBARA CLARK, individually, on behalf of all others similarly situated,<br>,<br>Plaintiff,<br>vs.<br>PAR, INC. dba PAR NORTH AMERICA, COUNTRY WIDE TOWING, INC. dba RELIABLE RECOVERY SOLUTIONS, and DOES 1 through 10, inclusive,<br>,<br>Defendants. | Case No: 15-CV-02322 MWF (FFMx)<br><br>**PLAINTIFF'S SUPPLEMENTAL RESPONSES TO DEFENDANT PAR NORTH AMERICA'S FIRST SET OF DOCUMENT DEMANDS** |

TO ALL PARTIES HEREIN AND TO THEIR ATTORNEYS OF RECORD:

Plaintiff Barbara Clark hereby supplementally responds, pursuant to Federal Rule of Civil Procedure 34, to defendant Par, Inc.'s first set of document demands.

RESPONSES TO DOCUMENT DEMANDS

DEMAND NO. 1:

All DOCUMENTS that constitute, memorialize, or otherwise RELATE TO all communications between YOU and any employee or representative of PAR.

RESPONSE TO DEMAND NO. 1:

Plaintiff objects that the demand invades the attorney-client privilege and the work product doctrine.

Plaintiff will produce all non-privileged responsive documents in her possession, except such documents which defendant has already produced to plaintiff.

DEMAND NO. 2:

All DOCUMENTS that constitute, memorialize, or otherwise RELATE TO the allegation in the first cause of action of YOUR COMPLAINT that PAR violated the Federal Fair Debt Collection Practices Act, 15 U.S. C. § 1692 et seq.

RESPONSE TO DEMAND NO. 2:

Plaintiff objects that requesting all documents that "relate to" an allegation is vague and ambiguous, and unintelligible. Plaintiff further objects that this is a premature, burdensome, and harassing request, that much of the information necessary to answer is in Par's possession, and that Par has evaded responding to plaintiff's discovery on this topic. Plaintiff further objects that the demand invades the attorney-client privilege and the work product doctrine.

Plaintiff will produce all non-privileged responsive documents in her possession, except such documents which defendant has already produced to plaintiff.

DEMAND NO. 3:

All DOCUMENTS that constitute, memorialize, or otherwise RELATE TO all communications between YOU and any employee or representative of RELIABLE.

RESPONSE TO DEMAND NO. 3:

Plaintiff objects that the demand invades the attorney-client privilege and the work product doctrine.

Plaintiff will produce all non-privileged responsive documents in her possession, except such documents which defendant has already produced to plaintiff.

DEMAND NO. 4:

All DOCUMENTS that constitute, memorialize, or otherwise RELATE TO all communications between YOU or YOUR counsel and any member of the putative class described in Paragraph 16 of the COMPLAINT.

RESPONSE TO DEMAND NO. 4:

Plaintiff objects that the demand invades the attorney-client privilege and violates the work-product doctrine. Plaintiff further objects that the demand seeks irrelevant information, and is burdensome and harassing.

DEMAND NO. 5:

All DOCUMENTS that support or otherwise RELATE TO the allegation contained in Paragraph 43 of the COMPLAINT that "Defendant PAR North is a repossession agency within the meaning of Business and Professions Code §7500.2" and is therefore required to have a repossession agency license.

RESPONSE TO DEMAND NO. 5:

Plaintiff objects that requesting all documents that "relate to" an allegation is vague and ambiguous, and unintelligible. Plaintiff further objects that this demand is premature, burdensome, and harassing, that much of the information necessary to answer is in Par's possession, and that Par has evaded responding to plaintiff's

discovery on this topic. Plaintiff further objects that the demand invades the attorney-client privilege and the work product doctrine.

Plaintiff will produce all non-privileged responsive documents in her possession, except such documents which defendant has already produced to plaintiff.

DEMAND NO. 6:

All DOCUMENTS that support or otherwise RELATE TO YOUR allegations in the COMPLAINT that PAR is liable for any conduct on the part of RELIABLE.

RESPONSE TO DEMAND NO. 6:

Plaintiff objects that requesting all documents that "relate to" an allegation is vague and ambiguous, and unintelligible. Plaintiff further objects that this demand is premature, burdensome, and harassing, that much of the information necessary to answer is in Par's possession, and that Par has evaded responding to plaintiff's discovery on this topic. Plaintiff further objects that the demand invades the attorney-client privilege and the work product doctrine.

Plaintiff will produce all non-privileged responsive documents in her possession, except such documents which defendant has already produced to plaintiff.

DEMAND NO. 7:

All DOCUMENTS that support or otherwise RELATE TO the allegation in Paragraph 18 of your COMPLAINT that "there is a community of interest among the members of the proposed class in that there are questions of law and fact common to them that predominate over questions affecting only individual members."

RESPONSE TO DEMAND NO. 7:

Plaintiff objects that requesting all documents that "relate to" an allegation is vague and ambiguous, and unintelligible. Plaintiff further objects that this demand ~~is premature, burdensome, and harassing,[3]that much of the information necessary~~

to answer is in Par's possession, and that Par has evaded responding to plaintiff's discovery on this topic. Plaintiff further objects that the demand invades the attorney-client privilege and the work product doctrine.

Plaintiff will produce all non-privileged responsive documents in her possession, except such documents which defendant has already produced to plaintiff.

DEMAND NO. 8:

All DOCUMENTS that support or otherwise RELATE TO the allegation contained in Paragraph 19 of the COMPLAINT that "Plaintiffs claims are typical of those of the class she represents."

RESPONSE TO DEMAND NO. 8:

Plaintiff objects that requesting all documents that "relate to" an allegation is vague and ambiguous, and unintelligible. Plaintiff further objects that this demand is premature, burdensome, and harassing, that much of the information necessary to answer is in Par's possession, and that Par has evaded responding to plaintiff's discovery on this topic. Plaintiff further objects that the demand invades the attorney-client privilege and the work product doctrine.

Plaintiff will produce all non-privileged responsive documents in her possession, except such documents which defendant has already produced to plaintiff.

DEMAND NO. 9:

All DOCUMENTS that support or otherwise RELATE TO the allegation contained in Paragraph 20 of the COMPLAINT that "a class action is superior to other methods for the fair and efficient adjudication of this controversy."

RESPONSE TO DEMAND NO. 9:

Plaintiff objects that requesting all documents that "relate to" an allegation is vague and ambiguous, and unintelligible. Plaintiff further objects that this demand is premature, burdensome, and harassing, that much of the information necessary to answer is in Par's possession, and that Par has evaded responding to plaintiff's

discovery on this topic. Plaintiff further objects that the demand invades the attorney-client privilege and the work product doctrine.

Plaintiff will produce all non-privileged responsive documents in her possession, except such documents which defendant has already produced to plaintiff.

DEMAND NO. 10:

All DOCUMENTS that constitute, memorialize, or otherwise RELATE TO all damage that YOU claim to have incurred as a result of the action or inaction on the part of PAR.

RESPONSE TO DEMAND NO. 10:

Plaintiff objects that requesting all documents that "relate to" damages is vague and ambiguous, and unintelligible. Plaintiff further objects that the demand seeks to invade the attorney-client privilege and work product doctrine.

Plaintiff will produce all non-privileged responsive documents in her possession, except such documents which defendant has already produced to plaintiff.

DEMAND NO. 11:

All DOCUMENTS that constitute, memorialize, or otherwise RELATE TO all damage that YOU claim to have incurred as a result of the action or inaction on the part of RELIABLE.

RESPONSE TO DEMAND NO. 11:

Plaintiff objects that requesting all documents that "relate to" damages is vague and ambiguous, and unintelligible. Plaintiff further objects that the demand seeks to invade the attorney-client privilege and work product doctrine.

Plaintiff will produce all non-privileged responsive documents in her possession, except such documents which defendant has already produced to plaintiff.

DEMAND NO. 12:

All DOCUMENTS that support or otherwise RELATE TO the claim made in the COMPLAINT that any conduct on the part of PAR was willful or intentional.

RESPONSE TO DEMAND NO. 12:

Plaintiff objects that requesting all documents that "relate to" an allegation is vague and ambiguous, and unintelligible. Plaintiff further objects that this demand is premature, burdensome, and harassing, that much of the information necessary to answer is in Par's possession, and that Par has evaded responding to plaintiff's discovery on this topic. Plaintiff further objects that the demand invades the attorney-client privilege and the work product doctrine.

Plaintiff will produce all non-privileged responsive documents in her possession, except such documents which defendant has already produced to plaintiff.

DEMAND NO. 13:

All DOCUMENTS that support or otherwise RELATE TO the allegation contained in Paragraph 57 of the COMPLAINT that "Defendants have received and collected substantial monies that they are not entitled to."

RESPONSE TO DEMAND NO. 13:

Plaintiff objects that requesting all documents that "relate to" an allegation is vague and ambiguous, and unintelligible. Plaintiff further objects that this demand is premature, burdensome, and harassing, that much of the information necessary to answer is in Par's possession, and that Par has evaded responding to plaintiff's discovery on this topic. Plaintiff further objects that the demand invades the attorney-client privilege and the work product doctrine.

Plaintiff will produce all non-privileged responsive documents in her possession, except such documents which defendant has already produced to plaintiff. However, plaintiff is unable to produce responsive documents that relate

to class members other than herself, until such time as Par properly responds to plaintiff's discovery.

DEMAND NO. 14:

All DOCUMENTS that support or otherwise RELATE TO the allegation in the second cause of action of YOUR COMPLAINT that PAR violated the Rosenthal Fair Debt Collection Practices Act, California Civil Code § 1788 et seq.

RESPONSE TO DEMAND NO. 14:

Plaintiff objects that requesting all documents that "relate to" an allegation is vague and ambiguous, and unintelligible. Plaintiff further objects that this demand is premature, burdensome, and harassing, that much of the information necessary to answer is in Par's possession, and that Par has evaded responding to plaintiff's discovery on this topic. Plaintiff further objects that the demand invades the attorney-client privilege and the work product doctrine.

Plaintiff will produce all non-privileged responsive documents in her possession, except such documents which defendant has already produced to plaintiff.

DEMAND NO. 15:

All DOCUMENTS that support or otherwise RELATE TO the allegation in the third cause of action of YOUR COMPLAINT that PAR violated the Collateral Recovery Act, Business and Professions Code §7500 et seq.

RESPONSE TO DEMAND NO. 15:

Plaintiff objects that requesting all documents that "relate to" an allegation is vague and ambiguous, and unintelligible. Plaintiff further objects that this demand is premature, burdensome, and harassing, that much of the information necessary to answer is in Par's possession, and that Par has evaded responding to plaintiff's discovery on this topic. Plaintiff further objects that the demand invades the attorney-client privilege and the work product doctrine.

Plaintiff will produce all non-privileged responsive documents in her possession, except such documents which defendant has already produced to plaintiff.

DEMAND NO. 16:

All DOCUMENTS that support or otherwise RELATE TO the allegation in the fifth cause of action of YOUR COMPLAINT that PAR violated the unfair competition law, Business and Professions Code § 17200 et seq.

RESPONSE TO DEMAND NO. 16:

Plaintiff objects that requesting all documents that "relate to" an allegation is vague and ambiguous, and unintelligible. Plaintiff further objects that this demand is premature, burdensome, and harassing, that much of the information necessary to answer is in Par's possession, and that Par has evaded responding to plaintiff's discovery on this topic. Plaintiff further objects that the demand invades the attorney-client privilege and the work product doctrine.

Plaintiff will produce all non-privileged responsive documents in her possession, except such documents which defendant has already produced to plaintiff.

DEMAND NO. 17:

All DOCUMENTS that support or otherwise RELATE TO the allegation in Paragraph 7 of your COMPLAINT that the number of putative class members is "so numerous that joinder of all members would be impracticable.".

RESPONSE TO DEMAND NO. 17:

Plaintiff objects that requesting all documents that "relate to" an allegation is vague and ambiguous, and unintelligible. Plaintiff further objects that this demand is premature, burdensome, and harassing, that much of the information necessary to answer is in Par's possession, and that Par has evaded responding to plaintiff's discovery on this topic. Plaintiff further objects that the demand invades the attorney-client privilege and the work product doctrine.

Plaintiff will produce all non-privileged responsive documents in her possession, except such documents which defendant has already produced to plaintiff.

Dated: May 31, 2016

TRUEBLOOD LAW FIRM

By: /s/
Alexander Trueblood

Attorneys for Plaintiff
BARBARA CLARK

# EXHIBIT H

MUSICK, PEELER & GARRETT LLP
ATTORNEYS AT LAW

650 TOWN CENTER DRIVE, SUITE 1200
COSTA MESA, CALIFORNIA 92626-1925

TELEPHONE (714) 668-2400
FACSIMILE (714) 668-2490
WWW.MUSICKPEELER.COM

DONALD E. BRADLEY
d.bradley@mpglaw.com
(714) 668-2447

LOS ANGELES
ORANGE COUNTY
SAN DIEGO
SAN FRANCISCO
SANTA BARBARA
WESTLAKE VILLAGE

FILE NO.: 71279.001

July 12, 2016

**VIA E-MAIL AND U.S. MAIL**

Alexander Trueblood, Esq.
Trueblood Law Firm
10940 Wilshire Boulevard, Suite 1600
Los Angeles, California 90024

Re: Clark v. PAR, Inc., et al.
United States District Court Case No.: 2:15-CV-02322 MWF

Dear Mr. Trueblood:

We reviewed Plaintiff Barbara Clark's ("Clark") Supplemental Responses (the "Responses") to PAR, Inc.'s ("PAR") Special Interrogatories, Set One ("Interrogatories"), and found that several supplemental responses that Clark agreed to provide are missing.

In your email dated May 2, 2016, you stated that "Plaintiff will provide a supplemental response" to Interrogatory Nos. 1, 3 and 14. However, Clark's Responses do not include these promised supplemental responses.

Similarly, in your letter dated May 20, 2016, you stated that Clark "will provide a supplemental response [to Interrogatory No. 6] if [PAR] will produce a communication log … between Par and Reliable, as well as Par's own internal communications/actions log." PAR has produced those documents to Clark, but Clark's Responses do not include a supplemental response to Interrogatory No. 6.

Based on the foregoing, PAR requests that Clark provide supplemental responses to Interrogatory Nos. 1, 3, 6 and 14 no later than **July 22, 2016**. PAR has been reasonable, accommodating and patient in its meet and confer efforts with Clark regarding her deficient responses to the Interrogatories and other discovery requests. PAR initially gave Clark an additional 45 days to serve her original responses and has been meeting and conferring with Clark since mid-April. Accordingly, it is now time for Clark to satisfy her discovery obligations as agreed. If she fails to meet the July 22nd deadline, PAR will file all necessary motions to compel and seek all available relief.

Your immediate attention to the requests made in this letter is appreciated.

Very truly yours,

Donald E. Bradley
for MUSICK, PEELER & GARRETT LLP

DEB:ay

cc: Brandon A. Block, Esq., Law Offices of Brandon A. Block
David M. Lester, Esq., Musick, Peeler & Garrett, LLP

999659.1

# EXHIBIT I

TRUEBLOOD LAW FIRM
ALEXANDER B. TRUEBLOOD Bar No. 150897
10940 Wilshire Blvd., Suite 1600
Los Angeles, CA 90024
Telephone: (310) 443-4139
Facsimile: (310) 943-2255

LAW OFFICES OF BRANDON A. BLOCK
BRANDON A. BLOCK Bar No. 215888
433 North Camden Dr., Ste. 600
Beverly Hills, CA 90210
Telephone: (310) 887-1440
Facsimile: (310) 496-1420

Attorneys for Plaintiff
BARBARA CLARK

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BARBARA CLARK, individually, on behalf of all others similarly situated,<br>,<br><br>Plaintiff,<br><br>vs.<br><br>PAR, INC. dba PAR NORTH AMERICA, COUNTRY WIDE TOWING, INC. dba RELIABLE RECOVERY SOLUTIONS, and DOES 1 through 10, inclusive,<br>,<br><br>Defendants. | Case No: 15-CV-02322 MWF (FFMx)<br><br>**PLAINTIFF'S INITIAL DISCLOSURES** |

Pursuant to Federal Rule of Civil Procedure 26(a)(1)(A), plaintiff hereby makes her initial discovery disclosures.

## WITNESSES

1. Barbara Clark, c/o Trueblood Law Firm, 10940 Wilshire Blvd., Ste. 1600, Los Angeles, CA 90024. This witness will have knowledge of the facts of the repossession, post-repossession communications, reinstatement, and damages.

2. Par, Inc., and its employees and officers, 13085 Hamilton Crossing Blvd, Ste 200, Carmel, Indiana 46032-1450; (317) 818-4500. Par, Inc. arranged and controlled the illegal repossession, and will have knowledge of that incident, in addition to its regular repossession and skip tracing practices, licensing, its contracts with lenders and local repossession companies, damages suffered by the class, and communications with the local repossession company, the lender, and plaintiff.

3. "Mr. Borne," a Par, Inc. employee who had responsibility for investigating the repossession in breach of the peace, and had communications with Karine Israelyan (below) and/or plaintiff concerning the repossession.

4. David Gould, a Par, Inc. employee who had communications with Karine Israelyan (below) and/or plaintiff concerning the repossession.

5. "Mr. Clark," a Par, Inc. employee who had communications with Karine Israelyan (below) and/or plaintiff concerning the repossession.

6. Joshua Jennings, a Par, Inc. employee who who had communications with Karine Israelyan (below) and/or plaintiff concerning the repossession.

7. Country Wide Towing, Inc., and its employees and officers. 130 West. Avenue J, Lancaster, CA 93534; (661) 726-5566. This witness conducted the illegal repossession, and will have knowledge of that incident, in addition to its regular repossession and skip tracing practices, licensing, its contracts with Par, Inc. and with lenders, the procedures and policies of Par, Inc., damages suffered by the class, and communications with the Par, Inc., the lender, and plaintiff.

8. Westlake Services, LLC dba Wilshire Credit, and its employees and officers, 4751 Wilshire Blvd., Suite 100, Los Angeles, California 90010. This witness will have knowledge of the security interest in the vehicle, the repossession order, the charges made to plaintiff after repossession of the vehicle, its contractual relationship with Par, Inc., Par, Inc.'s policies and procedures with respect to locating and repossessing vehicles, and damages to the class.

9. Karine Israelyn, L.A. Dept. of Consumer and Business Affairs; 323-881-7094. This witness will have knowledge of the complaints that plaintiff made concerning Westlake Services, LLC, and the other defendants, in regards to the repossession and aftermath.

10. "Ursula" at Wilshire Consumer Credit, 4727 Wilshire Blvd., Suite 100 Los Angeles, CA 90010; phone number 800-589-0290. This witness exchanged correspondence and/or phone calls with plaintiff about the release of plaintiff's vehicle.

11. Adesa Auto Auction. Address unknown. This auction is related to or a subsidiary of Par, Inc. and was involved in the repossession and sale of plaintiff's vehicle, including communications with plaintiff.

## DOCUMENTS

Plaintiff hereby discloses the following potentially relevant documents in her possession, custody or control, except those to be used solely for impeachment, which are identified subject to and without waiving the work product doctrine, the attorney-client privilege, the right of privacy, and any other applicable privileges:

1. Retail installment sales contract between plaintiff and dealership.
2. February 26, 2015 Notice of Intent To Sell Motor Vehicle.
3. Correspondence between plaintiff and Wilshire Credit.
4. Receipts for repossession related expenses, including cancelled check to Wilshire Credit re reinstatement.

## DAMAGES

Plaintiff makes the following preliminary computation of each category of damages claimed by her, which is subject to change upon further discovery or investigation. Plaintiff does not list here (but reserves the right to seek) claims for relief other than damages, such as for injunctive relief, declaratory relief, or restitution.

1. Actual damages to be determined by the jury, but including plaintiff's $390 repossession fee paid to Wilshire Credit, and the $15 law enforcement repossession fee.

2. Statutory damages of $500,000 or 1% of the net worth of Par, Inc., whichever is less, under the FDCPA.

3. Statutory damages of $500,000 or 1% of the net worth of Par, Inc., whichever is less, under the Rosenthal Fair Debt Collection Practices Act.

4. Civil fine of $10,000 against Par, Inc., pursuant to Bus. & Prof. Code § 7502.6(a).

5. Treble damages pursuant to Code of Civil Procedure § 1029.8.

6. The costs of the action and reasonable attorneys' fees, in amounts according to proof.

Dated: January 19, 2015

Respectfully Submitted,
TRUEBLOOD LAW FIRM

By: ______________________
Alexander B. Trueblood

Attorneys for Plaintiff
BARBARA CLARK

# EXHIBIT J

**From:** Alec Trueblood <alec@hush.com>
**Sent:** Tuesday, November 29, 2016 7:03 PM
**To:** Lester, David; Bradley, Donald; Victor Groia
**Cc:** brandon
**Subject:** e-Service of Plaintiff's Document Production, Clark v. Par et al

Dear Counsel,

Here is a link to plaintiff's document production, consisting of 179 pages.

https://www.dropbox.com/s/quzbo6e6fetyoim/Plaintiff%27s%20Doc%20Production.pdf?dl=0

Sincerely,

Alexander Trueblood
Trueblood Law Firm
email: alec@hush.com

Los Angeles Office
10940 Wilshire Blvd., Suite 1600
Los Angeles, CA 90024
Telephone: 310-443-4139
Facsimile: 310-943-2255

# EXHIBIT K

# CALIFORNIA PROMISSORY NOTE AND SECURITY AGREEMENT
## CONSUMER GOODS DIRECT – CONSUMER PURPOSE

| Name and Address of Lender | Name and Address of Borrower(s) |
|---|---|
| Wilshire Consumer Credit<br><br>4751 Wilshire Blvd, Ste 100 - CA<br>Los Angeles, CA 90010 | Barbara Arlene Clark<br>5807 Topanga Canyon Blvd. #F<br>Woodland Hills, CA 91367 |

CA License No. License #: 603-8329

Loan No. 20188335  Loan Date: 07/01/2013

**PAID**

**FEDERAL TRUTH IN LENDING ACT DISCLOSURES**

| ANNUAL PERCENTAGE RATE<br>The cost of any credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost me. | AMOUNT FINANCED<br>The amount of credit provided to me or on my behalf. | TOTAL OF PAYMENTS<br>The amount I will have paid after I have made all scheduled payments. |
|---|---|---|---|
| 79.99% | $6389.82 | $3020.90 | $9410.72 |

All numerical disclosures except the Amount Financed and the late payment disclosure are estimates.

**My Payment Schedule will be:**

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 44 | $213.88 | Monthly, beginning 08/01/2013 |
| | | |

**SECURITY:** I am giving you a security interest in the motor vehicle described in the "Vehicle Description" section below.
**LATE PAYMENT:** If any portion of my payment is more than 10 days late, you will charge me $10.00.
**PREPAYMENT:** If I pay off my loan early, I will not have to pay a penalty, and I will not be entitled to a refund of part of the finance charge. I may refer to my contract documents for any additional information about nonpayment, default, any repayment in full before the scheduled date, and prepayment refunds and penalties.

The Annual Percentage Rate, Amount Financed and Payment Schedule shown above are part of this Promissory Note and Security Agreement ("Agreement"). In this Agreement, the words "I," "me" and "my" mean the Borrower and any Co-Signer who signs it, individually and together. The words "you," "your" and "Lender" mean the Lender named above.

**PROMISE TO PAY:** I promise to pay the Lender the principal amount of $3020.90 U.S. (the Amount Financed plus any Prepaid Finance Charge) plus interest at the rate of 78.00 % per year on the unpaid Amount Financed until paid in full. I agree to make payments each month as described in the Payment Schedule above. I agree to pay all other amounts which may become due under this Agreement. I will send my payments to Wilshire Commercial Capital, L.L.C. dba Wilshire Consumer Credit, P.O. Box 76809, Los Angeles, CA 90076-0809.

**PREPAYMENT** I may pay all or any part of the unpaid balance on this loan at any time without any penalty. Any partial payment will be applied to the principal of the loan and will not be credited against my next payment(s) due. Prepayment of this loan in full may reduce the insurance charge of the loan, if applicable. If I prepay this loan in full, I will not receive a refund of the Administrative Fee.

**OTHER CHARGES** (1) **Administrative Fee.** I agree to pay you a non-refundable administrative fee of $75.00. I agree that I will not be entitled to a refund of any part of the Administrative Fee if I pay off this loan early. (2) **Late Fee.** If any portion of my payment (other than a late fee that you charged on a previous late payment) is more than 10 days past due, I will pay you $10. I will not be charged a late fee more than once for the same payment. (3) **Returned Check Fee.** If permitted by applicable law, I agree to pay you a returned check fee of $15 if I make a payment with a check that is dishonored by the drawee.

**SECURITY AGREEMENT** To secure payment of all sums due and the performance of all required obligations under this Agreement, I give you a security interest in the motor vehicle (Vehicle) described below. I also give a security interest in any substitution, in whole or in part, for the Vehicle or its substitute including insurance proceeds.

This within instrument or agreement is pledged as collateral to Wells Fargo Preferred Capital, Inc.

**ITEMIZATION OF AMOUNT FINANCED**

Amount Given to Me Directly
1. $3,000.00

**Amount Paid to Others on My Behalf***

Amount Paid on My Account
2.

Pay Off to
3. $0.00

Motor Vehicle Fee to WCC f/b/o trivin
4. $20.90

Property Insurance to
5. $0.00

Check to
6. $0.00

**TOTAL AMOUNT FINANCED**
**(SUM OF 1 THROUGH 6 ABOVE)**

$3020.90

Administrative Fee to Lender (Prepaid Finance Charge)
$75.00

* Lender may retain a portion of these amounts.

**VEHICLE DESCRIPTION**

| YEAR | MAKE | MODEL | LICENSE NO. | NO. CYL. | BODY TYPE | COLOR | VEHICLE IDENTIFICATION NO. |
|---|---|---|---|---|---|---|---|
| 2004 | Chrysler | Town & Country | 5FFR674 | V6, 3.8 Liter | Van | Silver | 2C8GP54L24R509660 |

**PROPERTY INSURANCE:** I will insure the Vehicle as described in Section G of this Agreement. I may choose the person through whom insurance is obtained, subject to your reasonable approval, against loss or damage to the Vehicle and against liability arising from my use or ownership of the Vehicle. If I get insurance from or through you, it will cost me $0.00. I also promise to keep the Vehicle insured for as long as I owe you any money under this Agreement.

I have not requested confidentiality of my residence address and by signing this Agreement, I waive the provisions of Section 1808.21 of the California Vehicle Code. I authorize the Department of Motor Vehicles to furnish my current address to the holder of this Agreement until it is paid in full.

**FOR INFORMATION CONTACT THE DEPARTMENT OF CORPORATIONS, STATE OF CALIFORNIA.**

**THE ADDITIONAL PROVISIONS ON THE REMAINING PAGES ARE PART OF THIS AGREEMENT, BORROWER AND CO-SIGNER ACKNOWLEDGE RECEIPT OF A COMPLETELY FILLED-IN COPY OF THIS AGREEMENT AND I HAVE RECEIVED A COPY OF ALL DOCUMENTS SIGNED DURING CONTRACT NEGOTIATIONS.**

I agree to be legally bound by all the terms and conditions of this Agreement. I guarantee that my signature and the signature of any Co-Signer or Co-Owner is genuine.

**CHECK APPLICABLE STATEMENT AND INITIAL.**

☐ Borrower acknowledges that no person has performed any act as a broker in connection with the making of this loan. Borrower agrees to be legally bound by all the terms and conditions of this Agreement. B

☐ Borrower acknowledges that (1) a broker has performed services in connection with the making of this loan, and (2) receipt of a separate disclosure from the broker of the fee for performing these services. ________

Barbara Clark 7/1/13
Borrower's Signature Date

Borrower's Signature Date

**CO-OWNER'S SECURITY AGREEMENT**

The Co-Owner, together with the Borrower, gives the Lender a security interest in the Vehicle. Co-Owner agrees to the terms of the Security Agreement and all other parts of this Agreement except the "PROMISE TO PAY", "PREPAYMENT" and "OTHER CHARGES" sections. Co-Owner assumes no personal obligation to pay this loan.

Co-Owner's Name

Co-Owner's Signature Date

Initials: Bz

WCC CA v1.2

## ADDITIONAL TERMS AND CONDITIONS

**A. HOW THE TOTAL OF PAYMENTS IS COMPUTED:** The Total of Payments is the sum of the Amount Financed and the Finance Charge. The Finance Charge includes, but may not be limited to, interest computed daily on the outstanding balance of the Amount Financed plus an administrative fee and any other finance charges disclosed. The Finance Charge and Payment Schedule, shown in the federal Truth-in-Lending Disclosure, on the front side of this Agreement, are estimates based on the assumption that each payment will be made on its due date. Since interest is calculated on a daily basis, late payments will result in additional interest and early payments will result in less interest.

**B. INTEREST:** You will charge interest on a daily basis on the outstanding balance subject to interest on each day. The daily interest rate is equal to the yearly rate divided by the number of days in the calendar year.

**C. APPLICATION OF PAYMENTS:** You will apply my first payment to the Administrative Fee. You will apply the rest of my first payment, if any, and the remaining payments in the following order of priority: interest, Late Charges, Returned Check Fees, and then to principal. All payments will be applied to scheduled payments in the order in which they become due.

**D. FEES AND CHARGES:** Fees and charges payable in connection with this loan are disclosed in the "Itemization of Amount Financed" and "Other Charges" section on the front side of this Agreement. The Administrative Fee is non-refundable.

**E. BORROWER'S PROMISES ABOUT LENDER'S SECURITY INTEREST:** I will not permit anyone other than you to obtain a security interest or other rights to the Vehicle. I will pay all filing fees necessary for you to obtain and maintain your security interest in the Vehicle. I will assist you in having your security interest noted on the Certificate of Title to the Vehicle. I will not sell or give away the Vehicle. If someone puts a lien on the Vehicle, I will pay the obligation and clear the lien.

**F. BORROWER'S PROMISES ABOUT THE VEHICLE:** I will keep the Vehicle in good condition and repair. I will pay all taxes and charges on the Vehicle. I will pay all costs of maintaining the Vehicle. I will not abuse the Vehicle or permit anything to be done to the Vehicle which will reduce its value, other than for normal wear and use. I will not use the Vehicle for illegal purposes or for hire or lease. I will not move the Vehicle from my address shown on the front of this Agreement to a new permanent place of garaging without notifying you in advance. I will let you inspect the Vehicle upon reasonable notice.

**G. BORROWER'S PROMISES ABOUT INSURANCE:** I will keep the Vehicle insured against fire, theft and collision until all sums due you are paid in full. The insurance coverage must be satisfactory to you with a minimum deductible of $1,000, and protect my interest and your interests at the time of any insured loss. The insurance policy must name you as "loss-payee." The insurance must be written by an insurance company licensed to sell insurance in the state where the Vehicle is permanently garaged. The insurance policy must provide you with at least 10 days prior to written notice of any cancellation or reduction in coverage. On request, I must deliver the policy or other evidence of insurance coverage to you.

In the event of any loss or damage to the Vehicle, I will immediately notify you in writing and file a proof of loss with the insurer. You may file a proof of loss on my behalf if I fail or refuse to do so. You may endorse my name to any check, draft or other instrument you receive in payment of an insured loss or return insurance premiums. You may apply any insurance proceeds you receive to repair or replace the Vehicle if, in your opinion, it is economically feasible and I am not then in default under this Agreement. Otherwise, you will apply the insurance proceeds to reduce the unpaid balance due you.

**H. LENDER'S RIGHTS IF I BREAK MY PROMISES ABOUT THE SECURITY INTEREST, VEHICLE OR INSURANCE:** If I fail to pay the filing fees, taxes, or amounts necessary to keep the Vehicle in good condition and repair, you may, if you choose, advance the sums necessary to protect your interest.
If I fail to keep in force the required insurance and/or fail to provide evidence of such insurance to you, you may notify me that I should purchase the required insurance at my expense. If I fail to purchase the insurance within the time stated in the notice and/or fail to provide evidence of such insurance to you, you may purchase coverage under a Lender's Collateral Protection Policy to protect your interest in the balance due under this Agreement, to the extent permitted by applicable law, and charge me the cost of the premiums and any other amounts you incur in purchasing the insurance. THE INSURANCE YOU PURCHASE MAY BE SIGNIFICANTLY MORE EXPENSIVE AND PROVIDE ME LESS COVERAGE THAN INSURANCE I COULD PURCHASE MYSELF. If permitted by applicable law, any sums you advance will be payable by me, as you alone may direct.
If you advance any amounts on my behalf, it will not cure my default. The rights stated in this section are in addition to your rights stated in other sections of this Agreement for my failure to keep my promises to you.

You may receive reasonable compensation for the services which you provide in obtaining any required insurance on my behalf. In certain states, the required insurance may be obtained through a licensed insurance agency affiliated with you. This agency will receive a fee for providing the required insurance. In addition, an affiliate may be responsible for some or all of the underlying insurance risks and may receive compensation for assuming such risks.

**I. DEFAULT.** I will be in "Default" on this Agreement if any one or more of the following things happen:

(1) I do not make any payment on or before the day it is due;

(2) I do not keep any promises made in this Agreement,

(3) I do not keep any promise I made in another contract, note, loan or agreement with you;

(4) I committed any forgery in connection with this Agreement,

(5) The Vehicle is lost, stolen, destroyed or damaged beyond economical repair, and not fixed or found within a reasonable time;

(6) I take the Vehicle outside the United States without your written consent,

(7) I file bankruptcy or insolvency proceedings, or anyone files bankruptcy or insolvency proceedings against me,

(8) I do something that causes the Vehicle to be subject to confiscation by government authorities,

(9) I use the Vehicle or allow someone else to use it in a way that causes it not to be covered by insurance,

(10) Another creditor tries to take the Vehicle by legal process, or

(11) I die, am convicted of a crime involving fraud or dishonesty, or am found by a court with valid jurisdiction to be incapacitated.

**J. YOUR RIGHTS IF I AM IN DEFAULT OF THIS AGREEMENT:** If I am in Default of this Agreement, you may enforce your rights according to law. You may also do the things specifically mentioned in this Agreement. As permitted by applicable law and subject to any required notice, you may do one of these things and at the same time or later do another. Some of the things you may do are the following:

(1) Acceleration: You can demand that I pay to you the entire unpaid balance owing on the Agreement and all unpaid Finance Charges and other money due. I agree that I will pay this money to you in one single payment immediately upon receiving your demand.

(2) Repossession: You can repossess the Vehicle, unless prohibited by law. You can do this yourself, have a qualified person do it for you, or have a government official (by replevin) do it for you. I agree that you can peaceably come on to my property to do this. Subject to the notice and inventory requirements provided by applicable law, you may take any personal property found in the Vehicle, but will return these things to me if I ask. If I want these things back, I agree to reclaim them within 60 days. If I do not reclaim my things within the time for doing so, I give up my claim to them. I agree that you may use my license plates to repossess the Vehicle and take it to a place for storage.

(3) Voluntary Delivery: You can ask me to give you the Vehicle at a reasonable convenient place. I agree to give you the Vehicle if you ask.

(4) Delay in Enforcement: You can delay in doing any of these things without losing any rights.

**K. SOME THINGS I SHOULD KNOW IF THE LENDER REPOSSESSES THE VEHICLE:** If you repossess without using a governmental official:

(1) Notice: You will send me a notice that tells me how to buy back (redeem) the Vehicle. Subject to the limitations of California law, I may also have the right to reinstate the Agreement by paying only the delinquent installments, satisfying all liens that I have allowed to be placed on the Vehicle, or obtaining insurance, as the case may be, and by paying your costs of repossession, as described below. The notice you send me will tell me other information required by law.

(2) Redemption: I have the right to buy back (redeem) the Vehicle at any time before you sell the Vehicle. If I do not redeem, I give up all claims to the Vehicle.

(3) Sale: If I do not redeem, you will sell the Vehicle. The money received at sale will be used to pay costs and expenses I owe, and then to pay the amount I owe on the Agreement.

(4) Surplus or Deficiency: If there is money left, you will pay it to the Borrower. If there is not enough money from the sale to pay what I owe, Borrower and Co-Signer agree to pay what is still owed to you.

(5) Expenses: I agree to pay the actual and necessary fees, not in excess of $500, of repossessing the Vehicle, and the costs of storing, repairing, preparing for sale and selling the Vehicle as may be allowed by law.

**L. COMMUNICATIONS CONCERNING DISPUTED DEBTS:** All communications concerning disputed debts, including any payments made by check and marked "payment in full" or with other restrictive endorsements or notices, tendered as full satisfaction of my balance must be sent to: **Wilshire Consumer Credit, 4751 Wilshire Blvd., Suite 100, Los Angeles, CA 90010.** I WILL NOT SEND COMMUNICATIONS CONCERNING DISPUTED DEBTS TO THE PLACE WHERE I SEND REGULAR MONTHLY PAYMENTS.

**M. COLLECTION COSTS:** I may have to pay you reasonable collection costs, including, but not limited to, attorney's fees, court costs, collection agency fee, and fees for other reasonable collection efforts, to the extent permitted by law.

**N. TIME OF THE ESSENCE:** Time is of the essence with respect to all provisions of this Agreement.

**O. NOTICE AND CHANGE OF ADDRESS: Any notice you send me concerning this Agreement or the Vehicle will be sent to my current mailing address as shown in your records. I will notify you if my mailing address changes within a reasonable time. Unless otherwise required by applicable law, you may send notices to me by regular mail. Any notice I send or deliver to you concerning this Agreement must be in writing and must be sent or delivered to Wilshire Consumer Credit, 4751 Wilshire Blvd. Suite 100, Los Angeles, CA 90010, (800) 589-0290, or to any other address you may later specify.**

**P. CONTINUED EFFECTIVENESS:** If any part of this Agreement is determined by a court to be invalid, the rest will remain in effect.

**Q. ASSIGNMENT:** I may not assign or other transfer my rights under this Agreement to anyone else. You may sell, transfer or assign this Agreement, and any security agreement given to secure this Agreement, and my rights and obligations under this Agreement will continue unchanged.

**R. HEIRS AND PERSONAL REPRESENTATIVES BOUND:** The provisions of this Agreement will be binding upon the Borrower, Co-Signer and Co-Owner, individually and together, and the heirs and personal representatives of each.

**S. GOVERNING LAW PROVISION:** This loan is made pursuant to the California Finance Lenders law, Division 9 of the Financial Code, Ca. Fin. Code §§ 22000 et. seq. This Agreement and its validity, construction, and enforceability will be governed by the laws of California, except to the extent that such laws have been preempted or superseded by federal law.

**T. NOTICE - IF A SUBSTANTIAL PORTION OF THE PROCEEDS OF THIS LOAN IS USED FOR THE PURCHASE OF CONSUMER GOODS, ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST SELLER OF GOODS OR SERVICES OBTAINED WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

**U. ENTIRE AGREEMENT:** The terms and conditions set forth in this Agreement constitute the entire agreement between me and Lender.

Initials: ________

## MANDATORY ARBITRATION AGREEMENT

**1. Mandatory Arbitration:** Unless otherwise stated in this Agreement, any "Dispute" between the Borrower, Co-Signer, Co-Owner, Lender or Lender's Assignee ("the Parties") shall be resolved by a neutral, binding arbitration, and not by a court of law. This procedure includes any Dispute over the interpretation, scope, or validity of this Agreement, the arbitration agreement or the arbitrability of any issue, with the sole exception of the Parties' waiver of any right to bring a class action or to participate in a class action as provided under paragraph 7 shall be solely determined by the appropriate court, if necessary. The arbitration agreement applies to the Parties, including their respective employees or agents, as to all matters which arise out of or relate to this Agreement or any resulting transaction or relationship.

**2. Dispute:** The term "Dispute" means any action, dispute, claim, or controversy of any kind arising out of, in connection with or in any way related to the Agreement, financing, contracts, origination, servicing, collection, reporting, or any other aspect whatsoever of the past, present, or future relationship or conduct of the Parties. The term "Dispute," includes without limitation: claims under federal or state consumer protection laws, claims in tort or contract, claims under statutes or common law; claims at law or in equity, any other past, present or future claims, counterclaims, cross-claims, third party claims, interpleaders or otherwise.

**3. Facts about Arbitration:** Arbitration is a process in which a neutral arbitrator decides a dispute instead of a judge or jury. Each side has an opportunity to present evidence to the arbitrator. A Party's ability to discover things may be limited. Arbitration proceedings are private and less formal than court trials. Other rights that the Parties might have in court might not be available in arbitration. An arbitrator issues an award. A court may then enforce the award like a court judgment. Courts rarely overturn an arbitrator's award.

**4. Rules:** Written notice shall be given for any Dispute. Such notice shall be given by certified mail, return receipt requested. Notice to the Borrower shall be sent to the Borrower's address in the Agreement. Notice to the Lender or Lender's Assignee shall be sent to WILSHIRE CONSUMER CREDIT LLC., P.O. BOX 76809, LOS ANGELES, CA 90076-0809. The Party initiating the arbitration shall set forth in the notice the nature and factual basis of the Dispute, the names and addresses of all other Parties, the amount involved, and the specific relief requested. The Party responding to such a notice may answer and similarly set forth any counterclaims. The arbitration will be conducted by one neutral and impartial arbitrator mutually agreed upon by the Parties. The arbitrator shall be an attorney or retired judge. In the event the Parties cannot agree on an arbitrator, the Parties agree that an arbitrator may be appointed by a court in accordance with the Federal Arbitration Act (9 U.S.C. §1, *et seq.*). The arbitrator may conduct all necessary preliminary proceedings, provide for the exchange of information and/or discovery, and set the time, date and place of any hearing, after reasonable notice to and consultation with the Parties. The award shall be issued without a written opinion no later than 30 days from the date any hearing is completed.

**5. Standards and Law:** The Parties agree that the Agreement involves interstate commerce and that this arbitration agreement is governed by the Federal Arbitration Act, 9 U.S.C. Sections 1 through 16 as amended ("FAA"). The arbitrator shall strictly apply applicable substantive law and applicable statutes of limitation consistent with the FAA and shall honor claims of privilege recognized at law.

**6. Jury Trial Waiver:** The Parties hereby agree to give up their respective rights to a trial by a jury.

**7. Class Action Waiver:** The Parties agree to give up any rights they may have to bring a class action lawsuit or class arbitration, or to participate in either as a claimant. The Parties agree to give up any right to consolidate or join any arbitration proceeding with the arbitration of others. The Parties give up the right to serve as a private attorney general in any jurisdiction in which such procedure might be permitted. To the extent the Parties are permitted to file small claims under paragraph 11, the Parties agree that any small claim may only be brought on an individual basis and that no small claim may be brought on a class or representative basis.

**8. Punitive Damage Waiver:** The Parties waive any right to seek or recover punitive damages in any Dispute. No arbitrator shall have the power or authority to award punitive damages.

**9. Fees and Costs:** If Borrower files for arbitration first, Borrower will pay the first $250 of the arbitrator's fees and expenses. Lender or Lender's Assignee will pay any additional fees or expenses of the arbitrator. Lender or Lender's Assignee will pay all of the arbitrator's fees and expenses if Lender or Lender's Assignee files arbitration first. The Parties shall be responsible for their own attorneys' fees associated with any arbitration, unless otherwise allowed for under applicable substantive law and awarded by the arbitrator.

**10. Self-Help:** Notwithstanding this arbitration agreement, the Parties retain the right to exercise self-help remedies and to seek provisional remedies from a court, pending final determination of the Dispute by the arbitrator. No Party waives the right to elect arbitration of a Dispute by exercising self-help remedies, filing suit, or seeking or obtaining provisional remedies from a court.

**11. Exceptions:** The Parties agree that this arbitration agreement is not applicable to "small claims" meaning those claims that either Party is entitled to file and maintain in an appropriate small claims court or any action where the total amount in controversy is no greater than $10,000, including any claims for attorney's fees and non-monetary relief.

**12. Severability:** If it is determined that any paragraph or provision in this arbitration agreement is illegal, invalid, or unenforceable, such illegality, invalidity or unenforceability shall not affect the other paragraphs and provisions of this arbitration agreement. The remainder of this arbitration agreement shall continue in full force and effect as if the severed paragraph or provision had not been included. Notwithstanding this severability provision, if a court of competent jurisdiction determines paragraph 7 to be illegal, invalid, or unenforceable, the Parties agree that such waiver shall not be severed and that this arbitration agreement shall be void in its entirety.

**13. Survival of Arbitration Agreement:** This arbitration agreement will survive and continue in full force and effect notwithstanding cancellation, termination, amendment, payment in full, discharge in bankruptcy, or other expiration or conclusion of the Agreement or any other contract or transaction between the Parties, unless otherwise agreed in writing. In addition, Borrower understands and acknowledges that the rights and responsibilities afforded to Lender under this arbitration agreement survive any assignment of the Agreement by Lender and that Lender can enforce this arbitration agreement in the event a Dispute arises after the assignment of the Agreement.

**14. Right to Reject Arbitration:** Borrower/Co-Borrower has 5 calendar days to opt-out of this binding arbitration provision of this agreement. Borrower/Co-Borrower must send a letter to Lender requesting to opt-out of the binding arbitration provision of this agreement by U.S. Mail Registered Certified Return Receipt to WILSHIRE CONSUMER CREDIT LLC., P.O. BOX 76809, LOS ANGELES, CA 90076-0809. Letter must be post marked no later than 5 days after the signing of this contract.

**15. Read and Understand this Agreement:** Borrower/Co-Borrower hereby acknowledges that they have read and understand all provisions of this arbitration agreement.

**FOR ALL DISPUTES COVERED BY THIS ARBITRATION AGREEMENT, THE PARTIES HAVE AGREED TO WAIVE THEIR RIGHT TO A TRIAL BY JURY, THEIR RIGHT TO PARTICIPATE IN CLASS ACTIONS, AND THEIR RIGHT TO SEEK PUNITIVE DAMAGES, EXCEPT FOR DISPUTES AND CLAIMS NOT SUBJECT TO THIS ARBITRATION AGREEMENT, ARBITRATION SHALL BE IN PLACE OF ANY CIVIL LITIGATION IN ANY COURT AND IN PLACE OF ANY TRIAL BY JURY.**

**THE TERMS OF THIS ARBITRATION AGREEMENT AFFECT MY LEGAL RIGHTS. IF I DO NOT UNDERSTAND ANY TERMS OF THIS ARBITRATION AGREEMENT OR THE COST, ADVANTAGES OR DISADVANTAGES OF ARBITRATION, I SHOULD SEEK INDEPENDENT ADVICE BEFORE SIGNING THIS AGREEMENT. BY SIGNING THIS AGREEMENT, I ACKNOWLEDGE THAT I HAVE READ, UNDERSTAND AND AGREE TO BE BOUND BY EACH OF THE PROVISIONS, COVENANTS, STIPULATIONS AND AGREEMENTS SET FORTH ABOVE.**

Initials: ____

# EXHIBIT L

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| BARBARA A. CLARK,<br><br>Plaintiff,<br><br>vs.<br><br>PAR, INC. dba PAR NORTH AMERICA, COUNTRY WIDE TOWING, INC., dba RELIABLE RECOVERY SOLUTIONS, and DOES 1 through 10, inclusive,<br><br>Defendants. | CASE NO. 2:15-CV-02322 MWF (FFMx) |

VIDEOTAPED DEPOSITION OF BARBARA CLARK
VOLUME I

Date and Time: Wednesday, December 14, 2016
11:34 a.m. - 5:00 p.m.

Location: One Wilshire Boulevard
Suite 2000
Los Angeles, California

Reporter: Erika Kotteakos, RPR, CSR
Certificate No. 9698

Job No. 8471

payments?

A I did get behind on the payments.

Q More than once?

A No.

Q One time?

A One time that I recall.

Q How far behind did you get?

A Almost two months.

Q You were ultimately able to get caught up?

A Ultimately I did catch up.

Q Did the car ever get repossessed when you got behind on the payments that time?

A No.

Q Did you have to talk to the lender about getting caught up, do you remember that?

A Yeah, I did talk to him.

Q Okay.

A Directly.

Q Do you remember whether you ended up having to pay any late fees or any other kind of extraordinary payment?

A I think what they did is they --

MR. TRUEBLOOD: He's just asking you whether you had to pay late fees.

THE WITNESS: Oh, late fees? Probably. I

12:00
12:00
12:01
12:01
12:01

don't remember. It's so long ago.

BY MR. BRADLEY:

Q So after you paid that initial loan off, did you receive title to the car?

A Yes.

Q Okay. Can you recall whether, when you paid off that car, you were living at the Lancaster address, 43407, if you know?

A I wasn't living at the Lancaster --

Q You weren't living at Lancaster yet? Okay.

Have you ever owned any other car in the last five years?

A No.

Q Now, I understand at some point you got a title loan on that car through Wilshire Credit, and we'll be talking more about that.

But before we get to there, let me ask whether you ever got any other title loan taken out on that car between the time you paid off the original loan and the Wilshire Credit loan that we'll be talking about?

A No, sir.

Q Okay. Okay. Do you recall taking out the title loan with Wilshire Credit on the Town &

Country?

A Yes.

Q Can you recall when you did that?

A Yes. I believe it was July -- it was somewhere around -- sometime in July in 2013.

Q Do you recall how much you borrowed?

A I believe it was $3,000.

Q And do you recall what the terms of the loan were?

If you don't, that's fine.

A I can't remember. It was --

MR. TRUEBLOOD: Well, do you -- do you recall any of the terms, the length, the interest rate, anything?

THE WITNESS: I think that -- you know, all I know is that I was hoping to pay it back quickly. I knew it was outrageous. It was, like, 200 to 400 percent. And it took me a while to get a grasp on what was actually going to principal versus interest.

BY MR. BRADLEY:

Q Okay. Did you have a particular financial need at the time that was the reason you got the loan?

A Yes, sir.

12:03

Q What was that?
A We needed food.
Q Were you living at the 43407 address when you took out this loan?
A Yes, sir.
Q Is there a shorthand way that you describe the townhome that you live in, rather than me saying "43407"?
A Well, that's not the town- -- oh, yeah, that is the townhouse. So -- I don't know. You could just say the --
Q The townhouse?
A -- townhouse.
Q Okay. We'll say the townhouse.
A Because the other one's the apartment. That's the townhouse.
Q Okay. We'll call it the townhouse.
A Townhouse is fine.
Q That's 43407 30th Street --
A Right.
Q -- West in Lancaster?
A Okay.
Q Do you recall what the payment amounts were under that title loan?
A With Wilshire?

12:04
12:04
12:04
12:04
12:05

Q Yeah.
A 213.88.
Q Per month?
A Per month.
Q And you said you had hoped to be able to pay it off quickly.
Do you recall what the length of the loan would have been based on the minimum payments?
MR. TRUEBLOOD: If you recall.
THE WITNESS: No.
MR. BRADLEY: Okay.
THE WITNESS: I don't remember.
BY MR. BRADLEY:
Q How did you find Wilshire?
A Advertised on -- on the radio, or went online.
Q Did you talk to any other lenders before you entered into the title loan agreement with Wilshire?
A I can't remember.
Q All right. And can you recall for how long you were able to make the required monthly payments on the Wilshire title loan?
A Well, it was difficult to -- you know, I don't want --

MR. TRUEBLOOD: He's just asking you the length.

THE WITNESS: I -- I -- I know it was over two years where I was paying consecutively without missing any payments.

12:05

BY MR. BRADLEY:

Q Okay. So for two years, you didn't miss any payments?

A None.

12:05 Q Okay. Did you make any extra payments during that two-year period, do you recall?

A No.

Q Okay. All right. And at some point after that initial two years, you ultimately fell behind on those payments?

12:05

A Yes, sir.

Q Okay. And I imagine you were in communication with Wilshire at some point during the time you were behind on the payments?

12:05 A Yes.

Q Okay. Can you recall -- strike the question.

When you first got behind on the payments, was Wilshire the first company that you spoke to regarding the payments?

12:06

different files that exist that relate to the car.
A Right.
Q So you've got a folder that relates to maintenance of the --
12:10 A Right.
Q -- Town & Country; right?
Okay. And you have a folder that relates -- you said "WCC." Is that Wilshire?
A Yeah. Wilshire Westlake, yeah.
12:11 Q So you've got a file that relates to Wilshire Westlake?
A (No audible response.)
Q Correct?
A Yes, sir.
12:11 Q Okay. And if you have any documents that relate to the repossession of that car, would they be in the Wilshire Westlake folder or somewhere else?
A The -- the repossession initially would be
12:11 in the Wilshire Westlake file, prior to the actual repossession.
Q Okay. And how about after the repossession, any documents that relate to that, what file are they in?
12:11 A After the repossession was -- were

disputes regarding disputed -- and I had L.A. County Consumer of -- Business Affairs contacted, so I had a file with them directing what was going on next.

Q Okay. So there's a separate file folder for L.A. County Department of Consumer Affairs --

A Right.

Q -- items?

A Right.

Q Okay.

A And -- and -- and dispute -- dispute with Westlake.

Q Okay. Dispute with Westlake?

A Uh-huh.

Q What -- is this disputes with Westlake that took place after the repossession or before or both?

A I never got a chance to really dispute it with Westlake because they -- they -- right after I had the car fixed, they -- they repoed it.

Q Okay.

A They -- they --

MR. TRUEBLOOD: He's just asking you if the folders relating to the dispute are before or after the repossession.

THE WITNESS: The folders were after the

you referred to earlier.

THE WITNESS: Oh, this is the one -- okay. Okay, yeah. I did see it. I gather I did see it.

BY MR. BRADLEY:

16:53 Q You gather that or you know that?

A I'm pretty sure. It's hard for me because I can't see very well right now, but I'm --

Q Oh, we've got the glasses issue.

A I'm doing the best I can. I'm seeing a

16:54 bit, but --

Q Yeah, all right.

A I did read it. I did read it.

Q Can you do me a favor? Can you look at -- can you tell which page is Page 3 of the document?

16:54 A This is Page 3.

Q Okay. Can you please read for me the numbered Paragraph 11 at the top.

A "Defendant County" [sic] "Wide Towing, Incorporated, d/b/a Reliable Recovery Solutions is a

16:54 California corporation."

Q Okay. Is that pretty strenuous for you to do that?

A It is strenuous. It's strenuous. But I'm -- you know, I'll get through it.

16:54 Q Yeah, but it's going to go a lot faster if

we do that with her glasses. And most, if not all, of the rest of my questions are going to be with documents, and some of them have pretty fine print.

A Oh, lord.

16:55 Q Yeah.

A What were the odds of me losing my glasses?

Q Yeah.

A Great.

16:55 MR. BRADLEY: Well, I would propose that -- and I know you're not necessarily agreeing to coming back again, but this glasses issue, I think it might make sense to go ahead and break since we're going to have to come again at some 16:55 point anyway, at least that's my position.

What's your response to that?

MR. TRUEBLOOD: If everything else is documents, then I would say we should break.

MR. GROIA: Yeah. And I would add that a 16:55 lot of my questions will -- unless he covers the same documents -- will be documents also. So I think that's probably a good idea.

MR. BRADLEY: All right.

THE WITNESS: Great.

16:55 MR. BRADLEY: That's all right. It's not

16:55
16:56
16:56
16:57
16:57

your fault. It happens.

MR. TRUEBLOOD: Just knowing we -- we can't continue tomorrow, it's going to be at least a month from now.

MR. BRADLEY: Right. Understood.

MR. GROIA: Okay.

MR. BRADLEY: Understood. All right, then. Let's go off the record --

THE WITNESS: That's insane.

MR. BRADLEY: -- and discuss the transcript.

MR. TRUEBLOOD: Well, the question --

MR. BRADLEY: Do you want to stay for a second.

MR. TRUEBLOOD: Well, the question -- let's go off for a second.

MR. BRADLEY: Okay.

THE VIDEOGRAPHER: It's 4:55. Off the record.

(Discussion was held off the record.)

MR. BRADLEY: We don't need the video, but we can go back on the record.

Counsel and I have had a discussion about Miss Clark's vision issues and the fact that she lost her glasses, which has made reading very

16:57 16:58 16:58 16:58 16:58

strenuous at this point. And most, if not all, of my further questioning is going to be on documents, some of which have very fine print.

So we've made the determination that at least in Par's view, since this deposition is going to have to be reconvened at another time anyway, we're going to go ahead and suspend the deposition and give Miss Clark's eyes a break.

Mr. Trueblood will discuss possibly resuming earlier than Mr. Trueblood's schedule would otherwise allow if Mr. Block can cover the subsequent session.

And as far as handling of the transcript, I would propose that this original, when it's complete, be sent to Mr. Trueblood's office. He will thereafter have three weeks for him and his client to review the transcript, make any changes, and sign it under penalty of perjury, and to let my office know when that has been done and to return the original to my office for maintenance and production at trial, if necessary.

And that if the original has not been signed within those three weeks, that a certified, unsigned copy can be used in lieu of the original for all purposes in the case.

16:59 And that once the court reporter has sent the original to Mr. Trueblood's office, she's otherwise relieved of her duties under the CCP and the FRCPs with respect to supervision of the signature and maintenance of the original.

MR. TRUEBLOOD: Yeah, so stipulated.

Also, I just want to make the comment that as I sit here now, I don't know if Mr. Block can cover for the deposition while I'm out of the country in the next month. I will check with him. And I -- I think if he did that, he would -- for continuity purposes, it would be necessary for him to read the transcript first. And -- so Mr. Bradley's nodding his head.

16:59 16:59 I assume you agree that's appropriate?

MR. BRADLEY: Yeah, I think that makes sense.

MR. TRUEBLOOD: Yeah. So we'll discuss what the possible next date will be for the deposition. Otherwise, I'm stipulating -- I'm fine with the stipulation.

16:59 MR. BRADLEY: Do we need to put something on the video, closing out?

THE VIDEOGRAPHER: I normally do.

17:00 MR. BRADLEY: Well, let's go ahead.

That's fine.

THE VIDEOGRAPHER: Okay. The time is 5 o'clock. This concludes Volume I in the deposition of Barbara Clark in the matter of Clark versus Par, Inc. We're off the record.

17:00

(Deposition concluded at 5:00 p.m.)

REPORTER'S CERTIFICATE

I, Erika Kotteakos, Registered Professional Reporter, Certified Shorthand Reporter in and for the State of California, do hereby certify:

I am authorized to administer oaths or affirmations pursuant to California Code of Civil Procedure, Section 2093(b), and prior to being examined, the witness was first duly administered an oath by me.

That the testimony and proceedings were reported stenographically by me and later transcribed into typewriting under my direction; that the foregoing is a true record of the testimony and proceedings taken at that time.

Before completion of the deposition, review of the transcript [X] was [ ] was not requested. If requested, any changes made by the deponent (and provided to the reporter) during the period allowed are appended hereto.

In WITNESS WHEREOF, I have subscribed my name this date: December 21, 2016.

______________________________

Erika Kotteakos, CSR No. 9698

# CERTIFICATE OF SERVICE

I hereby certify that on January 27, 2017, a copy of the foregoing **DECLARATION OF DONALD E. BRADLEY IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND STAY ACTION** was filed electronically and served by U.S. Mail on anyone unable to accept electronic filing.

Notice of this filing will be sent by email to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's EM/ECF System.

*/s/ Christopher Ramos*