VEDDER PRICE (CA), LLP
CHRISTOPHER R. RAMOS (SB# 301556)
cramos@vedderprice.com
1925 Century Park East, Suite 1900
Los Angeles, California 90067
T: +1 424 204 7700
F: +1 424 204 7702

VEDDER PRICE P.C.
BLAINE C. KIMREY (*Admitted pro hac vice*)
bkimrey@vedderprice.com
JEANAH PARK (*Admitted pro hac vice*)
jpark@vedderprice.com
222 North LaSalle Street
Chicago, Illinois 60601
T: +1 312 609 7500
F: +1 312 609 5005

*Attorneys for Defendant PAR, Inc.*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

BARBARA A. CLARK,

Plaintiff,

v.

PAR, INC. dba PAR NORTH AMERICA, COUNTRYWIDE TOWING, INC. dba RELIABLE RECOVERY SOLUTIONS, and DOES 1 through 10, inclusive,

Defendants.

Case No. 2:15-CV-02322 MWF (FFMx)

**DECLARATION OF TIM MASSINGALE IN SUPPORT OF DEFENDANT PAR, INC. DBA PAR NORTH AMERICA'S MOTION TO COMPEL ARBITRATION AND STAY ACTION**

Date: February 27, 2017
Time: 10:00 a.m.
Courtroom: 5A
Judge: Hon. Michael W. Fitzgerald

Trial Date: September 26, 2017
Action Filed: March 28, 2015

I, Tim Massingale, hereby declare and state as follows:

1. At all times relevant to the facts set forth in this declaration, I served as Vice President, Compliance and Ancillary Services at Defendant PAR, Inc. dba PAR North America ("PAR"). Including my time in that position, I have worked in various positions at PAR over a period of sixteen years, and I have personal

knowledge of the facts set forth herein, and, if called as a witness, I could and would competently testify thereto.

2. PAR is an Indiana corporation headquartered in Carmel, Indiana.

3. PAR is in the business of "forwarding," that is, PAR contracts with creditors with prospective repossession needs and separately contracts with licensed repossession agents in various jurisdictions.

4. In connection with my employment at PAR, I have personal knowledge of the general business practices of PAR with respect to the maintaining and accessing of Client Repossession Services Agreements ("Client Agreements") executed by PAR as well as accessing documents created and maintained within customer accounts. My responsibilities include identifying and accessing Client Agreements and other documents contained within customer accounts in connection with litigation involving PAR, and I am authorized to provide this declaration for PAR. I have access to the business records relating to Client Agreements and client accounts.

5. The exhibits to this declaration are all true and correct business records created and maintained by PAR, or its affiliates, in the course of regularly conducted business activity, and as part of the regular practice of PAR to create and maintain such records, and also were made at the time of the act, transaction, occurrence or event, or within a reasonable time thereafter. The statements set forth in this declaration are true and correct to the best of my knowledge, information and belief. Except where based upon information provided by persons working under my direction and supervision, the statements contained herein are based on my personal knowledge or review of PAR's records, including records pertaining to the Client Agreements identified in the above action. If called as a witness, I am competent to testify to the statements contained herein.

6. PAR's records reflect that PAR executed a Client Agreement with Westlake Services, LLC dba Westlake Financial Services ("Westlake") on July 9, 2013.

7. Attached as Exhibit A is a true and correct copy of the Client Agreement signed by PAR and Westlake on July 9, 2013.

I declare under penalty of perjury under the laws of the United States that the foregoing statements are true and correct.

Dated: January 26 2017

TIM MASSINGALE

# **Exhibit A**

# Client Repossession Services Agreement

This Client Repossession Services Agreement (**"Agreement"**) is made as of the 9 day of July, 2013 by and between Westlake Services, LLC. d/b/a Westlake Financial Services a California limited liability company (**"Client"**), with its principal place of business located at 4751 Wilshire Blvd., Suite 100, Los Angeles, California 90010 and PAR, Inc., an Indiana corporation (**"PAR"**), with its principal place of business located at 13085 Hamilton Crossing Blvd, Carmel, IN 46032.

**Witnesseth:**

**Whereas**, Client is in the business of financing the purchase of motor vehicles and/or the taking of motor vehicles as security for loans (the "Vehicles");

**Whereas**, PAR is engaged in the business of providing various services, both through its own employees and through its network of agents, subcontractors and others (hereinafter "PAR" shall collectively refer to itself and its network of repossession contractors, subcontractors and their respective subcontractors and agents), including, but not limited to, the repossession, and transportation of vehicles;

**Whereas**, Client desires to engage PAR to provide repossession services, including, but not limited to, the location, repossession and temporary maintenance and safeguarding of that Property in which Client owns or possesses a security interest or such interest that enables Client to legally and equitably seek to exercise dominion and control over such Property; and

**Whereas**, PAR is willing to make such services available to Client;

**NOW, THEREFORE**, in consideration of the premises and the mutual covenants contained herein, the parties agree as follows:

1. **Term.** This Agreement shall commence as of the date noted above and shall continue in full force and effect until such time as it is terminated by either party by giving sixty (60) days prior written notice to the other.

2. **Service Request.** Following the commencement of this Agreement, Client shall request PAR's services hereunder with respect to one (1) or more units upon transmitting to PAR (by facsimile, telephone or a mutually acceptable electronic platform) such information as is necessary for PAR to repossess that Property in which Client owns or possesses a security or other interest (the "Property') on either a voluntary or involuntary basis ("Service Request").

(a) Voluntary Repossession. Within 24 hours of receiving a Service Request, PAR shall either (i) send Client a completed repossession notification, which shall include, among other data, the account number, customer's full name, full VIN, year/make /model of the Property, address vehicle was secured and is now stored, mileage, statement of general condition and time of transmittal, or (ii) notify Client that PAR has not been able to repossess the Property and the reasons therefore. In the event that PAR is unable to secure such Property, it will continue to use its best efforts to safeguard the same.

(b) Involuntary Repossession. PAR shall send Client a status report of PAR's efforts to repossess the Property within seventy-two (72) hours of receipt of the Service Request, and on a weekly basis thereafter until termination of the Service request. Upon repossession of the Property, PAR shall follow the procedure outlined in Paragraph 2(a)(i).

(c) Skip Tracing. In the event that the Property cannot be located at the address specified in the Service Request, PAR, at the written request and sole discretion of Client, may conduct such skip tracing services as it believes are reasonable and appropriate in an effort to locate the Property. PAR shall charge Client the fees as set forth on Exhibit A attached hereto and incorporated herein.

(d) Acquisition of Possession of Property. Upon gaining possession of the Property and notifying the Client via an electronic or facsimile transmittal of the repossession event, PAR shall promptly complete (1) a written inventory of all equipment, parts, accessories and personal property which is not an accession of the Property (the "Items") that are contained in the Property, and (2) a written condition report describing the physical condition of the Property, including mileage. The written account of inventory and condition report shall be transmitted via facsimile or electronically to the Client if allowable by law. Notwithstanding PAR's statement of mileage, Client assumes full responsibility for the mileage of the Property at time of sale or disposition. PAR shall not be responsible for undertaking a detailed mechanical inspection of the Property or determining the mechanical condition of the Property.

(e) Delivery of Repossessed Property. PAR shall promptly deliver and store the Property in a secure location. PAR may assess a fee for storage pursuant to the pricing parameters described in Exhibit A.

(f) Incidental Matters Related to Repossession of the Property.

a. Keys. If PAR has no key for the Property, PAR shall request a written authorization from Client to make a key to the Property and assess the appropriate fee as listed in Exhibit A. Client has sole discretion in deciding whether or not it will use PAR's agent or Client's own agent for this service. Should Client allow PAR to make a key, PAR shall deliver the same to the secure facility listed on the Service Request.

b. Storage of Items. PAR shall store the Items in a secure manner at PAR's local location and shall make such Items available for redemption by the owner(s) of such Items. PAR shall hold such Items for thirty (30) days from the date of repossession or the number of days required by law, whichever is less. If the Items are not claimed by the customer within the specified time frame, unless prohibited by law, PAR shall promptly dispose of the items in conformance with local laws and practices.

c. License Plates. Unless otherwise required by the state that issued the license plates attached to the Property, PAR shall hold the license plates for thirty (30) days or the number of days required by law from the date of repossession, whichever is less. If the license plates are not claimed by customer within the specified time period, PAR shall dispose of the plates in conformance with local laws and practices.

 Initial: Client AC PAR JK

d. Relocation of the Property. Should Client request that PAR transport the Property to some other secure location, Client may provide PAR with a written or oral transport request.

(g) Additional Terms. PAR shall:

a. Protect, preserve and maintain the repossessed Property and Items in the same condition as when they were repossessed;

b. Designate primary and secondary employees who will serve as points of contact for all services offered to Client;

c. Maintain an accurate inventory of all Property in its possession and report such inventory to Client upon Client's request;

d. Immediately cease a Service Request when: (i) instructed to do so by any party in control of the Property; or (ii) any party in control of the Property contests or objects to the repossession in any manner. Upon the interruption of a Service Request under the aforementioned circumstances, PAR is to notify the Client of said interruption in the manner provided in Paragraph 2(a);

e. Never use the Property or permit its use by any party other than Client except in furtherance of its obligations contained herein and as permitted under the Agreement;

f. Never sell, mortgage, pledge, encumber, convey or transfer any interest in the Property or Items or attempt to so act without the prior written consent of Client;

g. Never surrender possession of the Property without Client's prior consent or as permitted under the Agreement;

h. Maintain all written memoranda related to any repossession or attempted repossession for five years or for a period required by law, whichever is less;

i. Make available all such written memoranda for inspection by Client during reasonable business hours; and

j. Immediately forward to Client any matter resulting in the assertion of an adverse claim against Client or PAR by way of counterclaim or otherwise.

3. **Payment for PAR's Services.** PAR's compensation for services rendered hereunder shall be calculated and paid pursuant to the fees and charges set forth in Exhibit A attached hereto.

Any amounts due to PAR (including fees and payments) shall be invoiced at least monthly to CLIENT. CLIENT agrees to pay all invoices in full upon receipt. Failure to pay within thirty (30) days from the date of the invoice will result in interest accruing at the rate of one and one-half percent (1-1/2%) per month, or the maximum rate permitted by law. Amounts payable to PAR hereunder are exclusive of all sales, use, or other taxes or duties whatsoever. CLIENT shall timely pay all applicable taxes and duties, however designated or levied, based upon amounts payable to PAR hereunder, excluding federal, state, and local taxes assessed on the net income of PAR.

Neither party has the right to set off and recoup outstanding obligations owed to the other party by applying proceeds held against any and all of the obligations of the indebted party now or hereafter existing under this Agreement or any other service agreements with CLIENT or PAR.

 Initial: Client JM PAR JK

4. **PAR's Agents and Subcontractors.** PAR shall ensure each PAR agent and subcontractor (including any subcontractor of a PAR subcontractor, each, a "Subcontractor") complies with all relevant terms of this Agreement, including all provisions relating to Confidential Information of Customer. Client's consent to any such Subcontractor shall not relieve PAR of its representations, warranties or obligations under this Agreement. PAR shall remain responsible and liable for any and all: (i) performance required hereunder, including the proper supervision, coordination and performance of the services; and (ii) acts and omissions of each Subcontractor (including, such Subcontractor's employees and agents, who, to the extent they are involved in providing any services, are deemed PAR Personnel) to the same extent as if such acts or omissions were by PAR. Any noncompliance by any Subcontractor or its employees or agents with the provisions of this Agreement or any Service Request will constitute a breach by PAR.

5. **Power of Attorney.** Client shall provide to PAR a Power of Attorney in the form attached hereto as Exhibit B authorizing PAR and its designees to take all reasonable and necessary action authorized by contract and law to repossess a Vehicle.

6. **Indemnity (PAR).**

(a) Theft, Conversion or Damage -- PAR shall be responsible to Client for, and indemnify and hold it harmless for and against, any conversion, theft, loss or damage to any Vehicle possessed by PAR at the time of such conversion, theft, loss or damage and serviced under this Agreement, unless such theft, conversion, loss or damage occurs, in whole or in part, as a proximate result of: (a) fire, storm, flood, war, civil disturbance, riot, act of God, lightning, earthquake, or other similar casualty, which is not within the control of PAR; or (b) any act or omission of Client or its officers, employees, or agents. In accordance with the immediately preceding sentence, in the event a Vehicle is deemed a total loss or is not recovered within thirty (30) days after its theft, conversion, loss or damage, PAR will promptly pay Client amounts owed in accordance with Paragraph 7 below by substituting for Gross Price the national Black Book "average" wholesale value of the Vehicle less variance for condition and mileage.

(b) Breach of Peace – PAR shall be responsible to Client for, and indemnify and hold it harmless against, any breach of peace claims resulting from the efforts or PAR, its agents, representatives and those acting on its behalf in repossessing a vehicle.

7. **Indemnity (Client).** Liens, Judgments, Titles, Defects, Wrongful Repossession. Client shall defend, indemnify and hold PAR and each of its subcontractors harmless from and against any and all actions, claims, damages, fees and expenses (including reasonable attorney's fees), suits and demands arising out of, based upon, resulting from, or in connection with, any judgments, liens or citations that were placed on the Vehicle prior to its repossession by PAR, or defects in the Vehicle's title, or any claim challenging Client's right to repossess the Property or from any allegations of wrongful repossession, conversion or any improper exercise of dominion and/or control over the Property relating to acts or omissions by Client. However, should any of these allegations arise from the acts or omissions by PAR and/or each of its subcontractors, PAR shall remain liable and shall hold Client harmless and indemnify Client from such losses, damage or expenses.

8. **PAR Insurance.** PAR shall procure and maintain statutory worker's compensation insurance, employer's liability insurance for not less than $100,000, general public liability and property damage liability insurance, including contractual liability, with limits of $1,000,000 single limit per occurrence of loss or damage and any other insurance coverage required by state law in which PAR conducts business.

 Initial: Client______ PAR JK

9. **Customer Information (Privacy)**. (For purposes of the Agreement, Customer Information is defined as any information about Client's customers (i.e., Debtors) or their accounts)

(a) PAR agrees that it will not sell, disclose, provide or exchange Customer Information received from Client or otherwise to any third party, other than Client's designees, and then only for the purpose of assisting PAR in performing its services pursuant to the Agreement. PAR will not disclose Customer Information in violation of, or in a manner inconsistent with (i) Title V of the Gramm-Leach-Biley Act ("GLB") and its implementing regulations, as either or both may be amended from time to time, and (ii) other applicable federal and state laws and regulations regarding privacy;

(b) PAR will implement and maintain appropriate administrative, technical and physical safeguards to (i) protect the security, confidentiality and integrity of all provided Customer Information in accordance with applicable law; and (ii) ensure against any anticipated threats or hazards to the security or integrity of the Customer Information which could result in substantial harm or inconvenience to the Debtor;

(c) PAR will ensure that any third party to whom PAR is permitted to transfer or provide access to the Customer Information under Paragraph 9 (a) signs a written agreement with PAR in which the third party agrees to (i) restrict its use of the information to the use specified in the agreement between PAR and the third party (the use of which must be in conjunction with PAR's performance of its obligations hereunder; (ii) comply with all applicable laws and PAR's and Client's privacy notices; and (iii) implement and maintain appropriate administrative, technical and physical safeguards to protect the security, confidentiality and integrity of the Customer information as provided in Paragraph 9(b). PAR will be responsible for the acts and omissions of any third party to whom it transfers or provides access to Customer information provided hereunder;

(d) PAR will not be in violation of its obligations hereunder when disclosure is required pursuant to (i) any federal or state law or regulation, or (ii) the rules or regulations of any governmental agency, provided, however, that PAR shall seek to provide pre-turnover notice, and in any event provide prompt notice, thereof to enable Client to seek a protective order to otherwise prevent such disclosure; and

(e) PAR agrees to cooperate with and to provide information to Client regarding PAR's compliance with the provisions of the Agreement. The parties further agree to modify the Agreement as necessary from time to time pursuant to Paragraph 10(d) for either party to comply with applicable federal or state laws, rules and regulations concerning privacy of the Customer Information.

10. **Miscellaneous.**

(a) For all purposes of this Agreement, PAR shall act as Client's agent and shall not be considered a bailee or consignee of Client. Except in strict performance of PAR's specific responsibilities expressly authorized by Client pursuant to this Agreement, PAR is not the express, implied, or apparent agent of Client for any other purpose. Under no circumstance shall PAR or PAR's employees or other persons performing work of PAR be considered Client employees, nor shall PAR represent or give the appearance of any agency authority beyond that specifically granted by this Agreement.

(b) Client represents and warrants that it has full power and authority to enter into this Agreement and to carry out the terms hereof and that the same has been duly authorized and that the person executing the same on behalf of Client has been duly authorized to act in the name and on behalf of Client.

 Initial: Client JM PAR JK

(c) All notices under this Agreement shall be deemed given when either hand delivered, delivered via courier or three (3) days after being deposited in the U.S. Mail, postage prepaid, by certified mail, return receipt requested, addressed to the other party at the addresses that said parties set forth hereinafter:

**To Client:** **Westlake Services, d/b/a Westlake Financial Services**
**4751 Wilshire Blvd., Suite 100**
**Los Angeles, CA 90010**

**Attn:** ~~Paul Kerwin~~ Jack Cohen
**Phone:** 323-889-9475
**Fax:**

**To PAR:** **PAR, Inc.**
**13085 Hamilton Crossing Blvd**
**Carmel, IN 46032**

**Attn:** **Jerry Kroshus**
**Phone:** **(317) 818-4500**
**Fax:** **(317) 843-3001**

(d) No modification or waiver of any of the terms hereof shall be valid or effective unless made in writing and executed by duly authorized officers of both parties. No waiver of any breach hereof or default hereunder shall be deemed a waiver of any subsequent breach or default of the same or similar nature.

(e) The Agreement and the attachments hereto constitute the entire understanding of the parties
and represent the entire and integrated agreement between them and supersedes all prior negotiations, representations, or agreements, either written or oral, with respect to the subject matter hereof.

(f) The Agreement may not be assigned by either party without the express written consent of the other party.

(g) If any term or provision of this Agreement is invalid, illegal or unenforceable in any jurisdiction, such invalidity, illegality or unenforceability does not affect any other term or provision of this Agreement or invalidate or render unenforceable such term or provision in any other jurisdiction. The remaining provisions of this Agreement remain in full force and effect.

(h) Any controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be settled by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules, and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof.

(i) This agreement and any and all other agreements or authorizations executed by Client and PAR in connection herewith shall be governed by the substantive laws of the state of California without resort to principles of conflicts of laws. By execution of this agreement, Client submits to the personal jurisdiction of the courts of the state of California and to venue in the circuit and superior courts of Los Angeles County, California or, if such courts do not have jurisdiction, any federal court located within California. Any action initiated by Client against PAR relating to this Agreement shall be filed and conducted in said courts.

 Initial: Client JM PAR JK

(j) Client and PAR each acknowledge that the right to trial by jury is a constitutional one, but that it may be waived. Therefore, each party, after consulting, or having had the opportunity to consult, with counsel of their choice, hereby knowingly, voluntarily, and intentionally, for their mutual benefit, waives any right to trial by jury in respect to any litigation arising out of or in connection with this agreement and related agreement(s), instruments or transactions, or any aspect of the past, present, or future relationship of the parties.

**IN WITNESS WHEREOF,** the parties have executed the Agreement, each by its duly authorized officer as of the day and year first above written.

**Westlake Services, LLC.,**
**d/b/a Westlake Financial Services**
~~Paul Kerwin~~ Jack Cohen
~~CFO~~ General Counsel & SVP, Administration

Signature

**PAR, Inc.**

Jerry Kroshus
President & COO

Signature

 Initial: Client______ PAR JK

ACCEPTED AND AGREED TO:

Westlake Financial Services

| | |
|---|---|
| Westlake Financial Services | [Contractor] |
| By: [signature] | By: [signature] |
| Printed Name: JACK COHEN | Printed Name: Jerry Kroshus |
| Title: General Counsel + SVP, Admin | Title: President & COO |
| Date: 7/10/2013 | Date: 6/28/2013 |

## EXHIBIT A: FEE SCHEDULE

Fees: The following fees are agreed to by Client and Contractor:

| FEE TYPE | AMOUNT | FEE TYPE | AMOUNT |
|---|---|---|---|
| Involuntary Repossession (includes DRN & Skip) | $725 | Redemption Fee | $75 |
| Voluntary Repossession | $200 | Agent Redemption, Storage & Personal Property Fee | $150 Max |
| Impound Repo Fee | $300 | Storage to Client **15 days free | At local rates |
| Close Fee | $50 | Key Fee - Standard | Cost |
| Field Call / Vehicle Appraisal | $15 | Cure | $75 |

** Client vehicle storage charges will not apply until the sixteenth day after the Recovery Contractor takes possession of the Collateral.

**Exhibit B**

PAR North America
VEHICLE TRANSITION SERVICES
An ADESA, Inc. company

# LIMITED POWER OF ATTORNEY

***KNOW ALL MEN BY THESE PRESENTS** that:*

***Westlake FinancialServices**, "Principal". hereby authorizes **PAR, Inc. (DBA PAR North America),** to act as their attorney-in-fact, to sign all paperwork needed to perform the following:*

1. *Repossess vehicles on behalf of the "Principal."*

*The "Principal" authorizes the attorney in fact to delegate, through written instrument, to one (1) or more persons any and all powers given to the attorney in fact by this Limited Power of Attorney.*

*Not withstanding the foregoing, nothing contained herein shall be construed to require "Principal" to indemnify PAR, Inc from any loss resulting from the gross negligence or willful misconduct of PAR, Inc or its employees or agents.*

*The appointment under this Limited Power of Attorney shall be effective as of the date hereof and shall continue in force; until the party relying on this Limited Power of Attorney receives written notice of revocation.*

*A printed facsimile or photocopy of this Limited Power of Attorney shall be an acceptable substitute of this Limited Power of Attorney.*

*This Limited Power of Attorney is limited to the foregoing and does not permit any action used otherwise.*

______________________

Date ______________________________

Signature of Company Agent: ______________________________
Printed Name of Company Agent:
Title of Company Agent:

*Subscribed and Sworn before me this_________day of_______________, __________*

NOTARY PUBLIC PRINTED NAME: ______________________________

NOTARY PUBLIC SIGNATURE: ______________________________

DATE COMMISSION EXPIRES: ______________________________

**FEDERAL ID NUMBER:** __________________________

# CERTIFICATE OF SERVICE

I hereby certify that on January 27, 2017, a copy of the foregoing DECLARATION OF TIM MASSINGALE IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND STAY ACTION was filed electronically and served by U.S. Mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's EM/ECF System.

*/s/ Christopher Ramos*